UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF LALIAH SWAYZER, *et al.*,

      Plaintiffs,

v.                                            Case No. 16-cv-1703-pp

DAVID A. CLARKE, JR., *et al.*,

      Defendants.

---

**ORDER DENYING DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES' MOTION FOR PROTECTIVE ORDER (DKT. NO. 45)**

---

On July 25, 2017, defendant Armor Correctional Health Services, Inc. filed a motion for a protective order, asking the court to forbid the disclosure or discovery of Armor's post-incident investigation and review. Dkt. No. 45. The plaintiffs responded on August 15, 2017, dkt. no. 50, and Armor replied on August 21, 2017, dkt. no. 52. The court will deny the motion.

**I.     Background**

    A.     <u>Underlying Facts</u>

Armor Correctional Health Services, Inc. "provides health care services to inmates at the Milwaukee County Jail under a contract between it and Milwaukee County." Dkt No. 46 at 2. According to the plaintiffs' second amended complaint, defendant Milwaukee County Jail housed plaintiff Shadé Swayzer in July of 2016. Dkt. No. 54 at 2. At the time of her incarceration, Shadé was almost nine months pregnant with a daughter, Laliah. <u>Id.</u> While in

1

her cell at the Milwaukee County Jail, Shadé gave birth to Laliah. Dkt. No. 50 at 1. Laliah died shortly after birth. Dkt. No. 54. In its brief in support of its motion for a protective order, Armor indicates that it later conducted a post-incident review of the care that Armor provided to Shadé, with the goal of the review being "continuous quality improvement." Dkt. No. 46 at 2.

On December 23, 2016, the plaintiffs filed a five-count complaint, alleging (a) Fifth, Eighth and Fourteenth Amendment claims under 42 U.S.C §1983; (b) Monell claims against Defendants Milwaukee County and Armor for failure to train and adequately supervise employees and for various allegedly deficient polices; (c) common-law negligence claims; and (d) a wrongful death claim under Wis. Stat. §895.03. Dkt. No. 1, at 22-42. The plaintiffs filed an amended complaint on April 10, 2017 that removed one count of common-law negligence. Dkt. No. 19. They filed a second amended complaint on August 28, 2017, naming previously unknown defendants. Dkt. No. 54.

B.   The Parties' Arguments

The parties are in the process of conducting discovery, and the plaintiffs seek the post-incident investigation review and report that Armor performed in the aftermath of the July 2016 events. Dkt. No. 45. Armor has filed this motion, asking the court to relieve it from the obligation of complying with the plaintiffs' request. Id. In support of the motion, Armor's chief executive officer, Bruce Teal, and its chief medical director, Dr. John May, submitted declarations in which they averred that if Armor's investigations and reviews

are disclosed, Armor will have no incentive to perform or document such investigations or reviews in the future. Dkt. Nos. 48, 49.

Armor asserts that because "'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy[,]'" the court should recognize Wisconsin's peer review privilege, provided in Wis. Stat. §146.38. Dkt. No. 45 at 2 (quoting <u>Doe v. Hudgins</u>, 175 F.R.D. 511, 513 (N.D. Ill. 1997)). In support of this argument, Armor identified several federal courts which have recognized a peer review privilege in cases that involve federal law claims. In addition, Armor asserts two bases for this court to recognize the peer review privilege: (a) the plaintiffs can obtain the information they seek through other means; and (b) if the court does not recognize the privilege here, Armor "has no incentive to conduct such investigations and reviews." Dkt. No. 46 at 8.

The plaintiffs responded that the court should not implement Wisconsin's peer review privilege. They argued that Federal Rule of Evidence 501 limits the application of state privilege law to situations where state law supplies the rule of decision for a claim or defense. Dkt. No. 50 at 4. Citing <u>Mem'l Hosp. for McHenry Cnty. v. Shadur.</u>, 664 F.2d 1058, 1059 (7th Cir. 1981), they argued that the Seventh Circuit requires courts to weigh the "need for truth" against the importance of any relationship or policy that the state evidentiary privilege might further, <u>id.</u>, and claim that under the circumstances

3

of this case, the need for truth outweighs the policies behind Wisconsin's peer review privilege.

The plaintiffs also argue that the "vast majority of Courts" have determined that state peer review does not apply in §1983 cases. Id. at 6. In support of this argument, they cite one case—Johnson v. Sprung, *et al.*, Case No. 14-cv-1408-LA, Dkt. No. 47 (E.D. Wis., May 19, 2016).

**II. Analysis**

A. Standard for Issuance of a Protective Order

Under Federal Rule of Civil Procedure 26(c)(1)(A), a court may issue a protective order forbidding the disclosure or discovery of litigation material if it finds good cause to do so. Armor argues that good cause exists for the court to issue the protective order because the post-investigation review and report fall under Wis. Stat. §146.38.

B. Application of Fed. R. Evid. 501

In determining whether to apply a state law privilege to litigation material sought in a federal case, the court starts with Federal Rule of Evidence 501. That rule provides:

> The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501. In other words, "[f]ederal courts . . . will apply state laws regarding privilege only when state law supplies the rule of decision, as in

4

diversity actions." Patt v. Family Health Systems, Inc., 189 F.R.D. 518, 523 (E.D. Wis. 1999).

This is not a diversity suit, and so state law does not supply the rule of decision. The plaintiffs have sued under 42 U.S.C. §1983, a federal statute, and so the question of whether this court should recognize that the Wisconsin peer review privilege is "governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience." Shadur, 664 F.2d at 1061. Nonetheless, the Seventh Circuit has held that "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." Id. In Shadur, the Seventh Circuit explained that the rationale for this policy of comity is that where a state holds out an expectation of protection to its citizens, the citizens "should not be disappointed by a mechanical and unnecessary application of the federal rule." Id. at 1061-62.

In deciding whether a federal court should recognize a state privilege, the Seventh Circuit noted that the court should first keep in mind that such privileges, "where recognized, must be narrowly construed." Id. at 1061 (citing United States v. Nixon, 418 U.S. 683, 710 (1974). Second, the Seventh Circuit instructed the court should consider the "particular factual circumstances of the case in which the issue arises." Id. To that end, the Seventh Circuit instructed lower courts to "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the

5

likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." Id. at 1061-62 (quoting Ryan v. Comm'r of Internal Revenue, 568 F.2d 531, 543 (7th Cir. 1977).

C. The Language of the Privilege

Following those dictates, this court first looks at the privilege that the Seventh Circuit says it must narrowly construe. The Wisconsin statute, in relevant part, provides that:

> All persons, organizations, or evaluators . . . who review or evaluate the services of health care providers in order to help improve the quality of health care, to avoid improper utilization of the services of health care providers, or to determine the reasonable charges for such services shall keep a record of their investigations, inquiries, proceedings and conclusions. No such record may be released to any person under § 804.10(4) or otherwise except as provided in sub. (3) or (3m). No such record may be used in any civil or criminal action against the health care provider or any other health care provider; however, except for incident or occurrence reports or records from other persons, organizations, or evaluators reviewing or evaluating health care providers, information, documents or records presented during the review or evaluation may not be construed as immune from discovery under §804.10(4) or use in any civil or criminal action merely because they were so presented.

Wis. Stat. §146.38. As the Northern District of Ohio court has noted, "all fifty states have recognized the privilege at issue." Veith v. Portage Cnty., Ohio, Bd. of Comm'rs, et al., No. 5:11CV2542, 2012 WL 4850197, at *3 (N.D. Ohio Oct. 11, 2012).

D. Federal Common Law

Rule 501 says that federal common law, "as interpreted by United States courts in the light of reason and experience," governs this court's

6

determination. In considering whether to apply the Wisconsin peer review privilege in a case before him, Judge Adelman noted that federal "[c]ourts have come to various conclusions about the applicability of state peer review privilege to federal claims." Sprung, dkt. no. 47 at 3 (E.D. Wis. May 19, 2016). He listed eleven federal cases, four of which had recognized the privilege, seven of which had not. Id.

This court also found a few unpublished cases. In Tiarnan Rumble v. Fairview Health Serv's, 2016 WL 3509221 (D. Minn. May 18, 2016), rev'd on other grounds, 2016 WL 4515922 (D. Minn. August 29, 2016), the court declined to apply the Minnesota peer review privilege in a case involving claims under the Patient Protection and Affordable Care Act. In Bost v. Wexford Health Serv's, Inc., 2017 WL 3084953 (D. Maryland June 19, 2017), the court declined create a federal peer review privilege in a §1983 case involving an inmate's death. In Grenier v. Stamford Hospital Stamford Health System, Inc., 2016 WL 3951045 (D. Conn. July 20, 2016), the court applied the Connecticut medical peer review privilege in a case alleging causes of action under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395dd, *et seq.*

Thus, the federal common law as interpreted by United States courts in light of reason and experience is split.

E.     The Circumstances of this Case

The court now turns to the Seventh Circuit's instruction to take into account the particular factual circumstances of this case. In doing so, the

7

court returns to the Seventh Circuit's decision in Shadur. In declining to apply a peer review privilege in the context of a Lanham Act claim, the Seventh Circuit distinguished a case from the District of Columbia in which the court had upheld a peer review privilege in a medical malpractice case. Shadur, 664 F. 2d at 1062. In so doing, the court reasoned:

> This case differs . . . in that it is not a medical malpractice action. To recognize hospital review or disciplinary proceedings as privileged in the context of a malpractice action will generally have little impact upon the plaintiff's ability to prove a meritorious claim. For the crucial issue in that type of case is not what occurred at the review proceeding, but whether the defendant was in fact negligent in his care and treatment of the plaintiff. . . . [T]he exclusion of that information will not prevent the plaintiff from otherwise establishing a valid claim.
>
> The same cannot be said, however, in a case such as this where the plaintiff's claim arises out of the disciplinary proceedings themselves and not some event or occurrence that exists independently of those proceedings.

Id.

The court finds that language instructive in looking at the particular circumstances of this case. The plaintiffs have brought suit under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to plaintiff Swayzer's serious medical needs. They also have brought failure to hire, train, discipline and supervise claims against the County and Armor under Monell v. Dep't of Soc. Serv's., 436 U.S. 658 (1978). The quality of care provided to the plaintiff, the practices that the County Defendants and Armor had in place to care for inmates—these are the crucial issues in the case.

The post-incident review and report the plaintiffs seek from Armor reviewed "the care provided to Ms. Swayzer during her July, 2016 incarceration at the Milwaukee County Jail." Dkt. No. 46 at 2. According to Armor Correctional's own chief medical officer, "post-incident investigations and reviews . . . are key in determining what occurred and what changes might be made." Dkt. No. 48 at 2, ¶8. The information in the report is information that directly relates to the plaintiffs' claims, and excluding it conceivably could impede the plaintiffs in establishing an otherwise valid claim.

This is particularly true given that the plaintiffs have asserted <u>Monell</u> liability, alleging that Armor Correctional inadequately supervised and trained its employees and maintained deficient policies for providing care. Dkt. No. 54 at 23-35, ¶¶109-168. The plaintiffs have challenged the systems and procedures that Armor correction had in place to treat inmates. <u>See, *e.g.*</u>, Dkt. No. 54 at 27, ¶128. Unlike a case with federal claims directly analogous to state medical malpractice claims, this case alleges unspecified, systemic policies likely to be described in post-incident review reports.

When he considered this question in <u>Sprung,</u> Judge Adelman declined to apply the privilege in part because "it seems unlikely that plaintiff will be able to acquire information on defendants' policies and practices outside of internal documents such as these reports." <u>Sprung</u>, dkt. no. 47 at 5 (E.D. Wis. May 19, 2016). In this case, the defendant asserts that "[p]laintiffs can obtain the information from other sources, conducting their own investigation. They then can retain their own experts to review the evidence." Dkt. No. 46 at 8. The

9

court disagrees, coming to the same conclusion as Judge Adelman. The plaintiffs are alleging that certain policies and practices resulted in the violation of the plaintiffs' constitutional rights. An important source of the defendant's policies and practices—and likely a reliable one—are the defendant's own internal documents. As Magistrate Judge Gilbert noted in Johnson v. Cook Cnty., No. 15-C-741, 2015 WL 5144365 (N.D. Ill. Aug. 31, 2015),

> [t[he factual information and conclusions contained in the [such internal reports] may prove critical to Plaintiff's Section 1983 claim, which will require Plaintiff to show that widespread by unofficial Jail practices or policies led to Mr. Johnson's death. . . . [T]hat often proves difficult in cases such as this one, where an institution's official policies and procedures are easy to come by, but its *de facto* practices are much more difficult to observe.

Johnson v. Cook Cnty., 2015 WL 5144365 at *3.

The defendant places great emphasis on the policies behind the peer review privilege. The court agrees that post-incident reviews are likely to be most effective if the individuals who participate in them feel free to be candid with the internal investigators. The defendant argues that people won't be candid if the court requires disclosure of the report in this lawsuit, and it argues that disclosure will deprive it of any incentive to improve the services it provides. This argument ignores the defendant's professional and ethical obligations to provide the highest quality of service. It also ignores the economic incentive it has to retain its contracting facilities by ensuring that it provides adequate health care. See Sprung, dkt. no. 47 at 6 ("Physicians and hospitals have an overriding professional obligation and economic incentive to

10

improve the quality of medical care they provide thereby potentially reducing malpractice insurance rates and improving profitability regardless of the availability of strict confidentiality.'") (quoting Syposs v. United States, 63 F. Supp. 2d 301, 308 (W.D.N.Y. 1999)).

For all of these reasons, the court concludes that under the particular circumstances of this case, after balancing the need for truth with the policies that underlie the Wisconsin peer review privilege, it is not appropriate to apply that privilege in this case.

At the end of its reply brief in support of the motion for a protective order, the defendant asks that "[i]f any production is required, . . . any information about individuals' performance be redacted." Dkt. No. 52 at 4. The defendant provides no authority in support of its request that the court redact information about the performance of individual actors. Nor does it provide the court with any guidance about how the court would recognize or define "information about individuals' performance." For the court to grant such a vague, blanket request would in effect result in the court issuing the very protective order that it declines to issue.

### III. Conclusion

The court **DENIES** the defendant's motion for a protective order. Dkt. No. 45.

Dated in Milwaukee, Wisconsin this 30th day of October, 2017.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**
