# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF LALIAH SWAYZER, et al.,

          Plaintiffs,

          v.                                                Case No. 16-CV-1703

ARMOR CORRECTIONAL HEALTH SERVICES, INC., et al.,

          Defendants.

## ORDER

## Background

According to the third amended complaint (ECF No. 146), Shadé Swayzer was approximately nine months pregnant when she was arrested and booked into the Milwaukee County Jail on July 6, 2016. On the morning of July 14, 2016, Swayzer went into labor. She asked for immediate medical attention. The correctional officer did nothing. At approximately 5:00 AM, while alone in her cell and without having received any medical attention, Swayzer gave birth to a daughter, whom she named Laliah. Neither Swayzer nor Laliah received any medical attention for at least another hour. By the time paramedics arrived at 6:21 AM, Laliah was not breathing. Laliah was declared dead at 6:55 AM.

Laliah's estate, Swayzer, and Laliah's siblings filed this action in December 2016, naming Armor Correctional Health Services, Inc., certain of its healthcare employees, Milwaukee County, Sheriff David J. Clarke, Jr., several correctional officers and others as defendants. Armor provided healthcare to inmates at the Milwaukee County Jail. The plaintiffs allege that Armor is liable pursuant to *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

A little over a year later, on February 21, 2018, the State of Wisconsin criminally charged Armor with seven misdemeanor offenses of intentionally falsifying a health care record. (ECF No. 174-1; *see also* Milwaukee Cnty. Cir. Ct. Case No. 2018CM000748, available at wcca.wicourts.gov.) The criminal charges are related to the death of another inmate under Armor's care at the Milwaukee County Jail, Terrill Thomas, who died from dehydration after he was locked in his cell without water for nearly a week. Armor employees are alleged to have repeatedly falsely stated in health care records that they provided medical care to Thomas during the period he was denied water. The State of Wisconsin alleged in the criminal complaint that "Armor Correctional employees engaged in a pattern and practice of intentionally falsifying entries in inmate patient health care records." (ECF No. 174-1, ¶ 28.) However, the state did not criminally charge any individual Armor employee.

Two days after the criminal charges were filed plaintiffs' counsel sent an email to defense counsel stating, "we intend to seek leave to amend the complaint based on the

criminal charges filed against your client for its 'pattern and practice of falsifying patient health care records.'" (ECF No. 168 at 14.) No motion to amend the complaint has yet been filed.

On February 26, 2018, Armor filed a motion to stay this action. (ECF No. 171.) It argues, "Absent a stay in discovery, various health care defendants and Armor witnesses will be faced with the unnecessary dilemma caused by having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit." (ECF No. 172 at 1.) It asserts, "Armor's interest and defense in this lawsuit will be severely harmed if a stay is not granted." (ECF No. 184 at 6.) Defendant Milwaukee County and its defendant employees support the motion to stay. (ECF No. 180.)

**Analysis**

It is not uncommon for courts to stay a civil action until the completion of related criminal proceedings when absent a stay a party may be forced to choose between preserving his right against self-incrimination or fully defending the civil action. *See, e.g., Salcedo v. City of Chi.*, No. 09-cv-05354, 2010 U.S. Dist. LEXIS 67991, at *11 (N.D. Ill. July 8, 2010); *Chagolla v. City of Chi.*, 529 F. Supp. 2d 941 (N.D. Ill. 2008); *Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC*, No. 08-C-457, 2008 U.S. Dist. LEXIS 93726 (E.D. Wis. Nov. 3, 2008); *Doe v. City of Chi.*, 360 F. Supp. 2d 880, 882 (N.D. Ill. 2005); *United States v. All Meat & Poultry Prods.*, No. 02 C 5145, 2003 U.S. Dist. LEXIS 17677, at *17 (N.D. Ill. Oct. 2, 2003).

However, a defendant is not automatically entitled to a stay merely because the civil case stands to undercut his privilege against self-incrimination. *CMB Exp., LLC v. Atteberry*, No. 4:13-cv-04051-SLD-JEH, 2014 U.S. Dist. LEXIS 116095, at *6 (C.D. Ill. Aug. 20, 2014).

> Determination of whether to grant a stay due to parallel criminal litigation involves balancing the interests of the plaintiff, the defendants, and the public. The factors considered include the following non-exclusive list: whether the civil and criminal matters involve the same subject; whether the governmental entity that has initiated the criminal case or investigation is also a party in the civil case; the posture of the criminal proceeding; the effect of granting or denying a stay on the public interest; the interest of the civil-case plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff may suffer from a delay; and the burden that any particular aspect of the civil case may impose on defendants if a stay is denied.

*Chagolla*, 529 F. Supp. 2d at 945 (citing *Cruz v. County of DuPage*, No. 96 C 7170, 1997 U.S. Dist. LEXIS 9220, 1997 WL 370194, at *2 (N.D. Ill. June 27, 1997)). "Granting of a stay 'is the exception, not the rule, and the party seeking the stay has the burden of demonstrating it is necessary.'" *CMB Exp.*, 2014 U.S. Dist. LEXIS 116095, at *5 (quoting *Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 698, 2005 U.S. Dist. LEXIS 14437, at *8 (N.D. Ill. July 15, 2005)). "A stay is appropriate in 'special circumstances' when there is a need to avoid substantial and irreparable prejudice." *Id.* (quoting *United States v. Certain Real Property, Commonly known as 6250 Ledge Road, Egg Harbor, Wis.*, 943 F.2d 721, 729 (7th Cir.1991)). Ultimately, a stay of civil proceedings pending the resolution of criminal

proceedings is appropriate "'when the interests of justice' require it." *Salcedo*, 2010 U.S. Dist. LEXIS 67991, at *5 (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970)).

1. **Same Subject Matter**

Armor states that "[t]here is no question that [the] pending criminal proceeding against Armor concerns the same facts as Plaintiff's (sic) new theory of liability." (ECF No. 172 at 5.) Moreover, "Plaintiffs have alleged that the death of Terrill Thomas…is proof of the alleged pattern of Armor violating inmate's (sic) rights through deficient health care." (ECF No. 184 at 4.) Thus, it argues, "it is nearly certain that Plaintiffs will attempt to use other events to support their claims against Armor, which favors a stay." (*Id*.)

The subject matter of the two cases is distinct in that the pending criminal charges relate to events occurring nearly three months earlier than the events at issue in this lawsuit and do not involve Swayzer or Laliah (in fact, there is no indication Swayzer was even incarcerated at the jail at that time). The court has no indication that the Armor employees who are alleged to have falsified Thomas's medical records had any contact with Swayzer. Conversely, there is no indication that the individual Armor defendants in this case had any contact with Thomas.

Nonetheless, the court accepts that it is likely that discovery in this case will encompass essentially the entirety of the issues relevant in the criminal case, *i.e.*, whether Armor employees falsified Thomas's health care records on April 21 and 22,

5

2016. Thus, if viewed from the perspective of assessing how much of the criminal case will be covered by the civil case, the overlap is total.

But viewed from the perspective of assessing the degree to which the criminal case overlaps with the issues in the civil case, the overlap is minimal. The civil case is far broader than the criminal case and the facts underlying the criminal case are of minimal relevance here. Evidence that Armor employees falsified Thomas's health care records will be, at best, a tertiary issue here—merely one thread that the plaintiffs hope to be able to spin together with others to prove Armor's liability under *Monell.* But *Monell* liability becomes relevant only if the plaintiffs first prove a deprivation of a constitutional right. Thus, this case lies at the opposite end of the spectrum from cases where the victim of the crime concurrently pursues a civil action for injuries resulting from the criminal conduct, in which cases the congruence is effectively total. *See Chagolla*, 529 F. Supp. 2d at 945-46; *Doe*, 360 F. Supp. 2d at 881.

This is not a situation where it could be said that both this case and the criminal proceedings are "likely to share a common nucleus of operative facts," *CMB Exp.*, 2014 U.S. Dist. LEXIS 116095, at *8. Ultimately, the court concludes that the overall subject matter of the two cases is sufficiently distinct that this factor weighs against granting a stay.

**2. Governmental Involvement**

The State of Wisconsin, who is prosecuting the criminal action, is not a party in this action. Thus, this case is unlike cases where the prosecuting sovereign has intervened in the civil action, *see Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04 C 698, 2008 U.S. Dist. LEXIS 3289, at *10 (N.D. Ill. Jan. 16, 2008), or is simultaneously pursuing the civil action, *All Meat & Poultry Prods.*, 2003 U.S. Dist. LEXIS 17677, at *6. Concerns such as prosecuting authorities using the civil discovery process as a means to bolster the criminal prosecution are not present here. *See Doe*, 360 F. Supp. 2d at 881 (citing *Cruz*, 1997 U.S. Dist. LEXIS 9220). This factor weighs against a stay.

**3. Posture of the Criminal Proceedings**

The criminal proceedings are in the earliest stage. All that has happened so far was Armor's initial appearance and one status conference held on March 27, 2018, for which the minutes state, substantively, only: "Defense requested more time to review case. State did not object." The only scheduled proceeding is a another status conference set for May 16, 2018. The court has no reason to suspect the criminal proceedings will be resolved soon.

However, charges are pending against only Armor, and Armor does not enjoy a privilege against self-incrimination. *See Braswell v. United States*, 487 U.S. 99, 104 (1988); *Kordel*, 397 U.S. at 7 n.9 (citing cases). Thus, as regards any individual who might be entitled to the Constitution's protection against self-incrimination, criminal charges are

merely a possibility. The court is reluctant to even characterize the matter as a threat given that there is no indication of any ongoing criminal investigation. To the contrary, with respect to Laliah's death the Milwaukee County District Attorney's Office has affirmatively stated that the criminal investigation is closed. (ECF No. 43 at 2.) And the filing of charges regarding Thomas's death suggests to some degree that any investigation into his death is likewise complete. Any individual's fear of criminal liability rests merely upon the fact that the state retains the prerogative to reopen investigations and bring additional charges.

"A stay is disfavored where defendants are under the mere threat of criminal charges." *CMB Exp.*, 2014 U.S. Dist. LEXIS 116095, at *8 (citing *Chagolla*, 529 F. Supp. 2d at 946; *Hollinger*, 2005 U.S. Dist. LEXIS 14437, at *11); *see also All Meat & Poultry Prods.*, 2003 U.S. Dist. LEXIS 17677, at *8 ("courts generally require that an indictment be issued before they will grant a stay") (citing *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263 (E.D.N.Y. 2002); *Sterling Nat'l Bank v. A 1 Hotels Int'l, Inc.*, 175 F. Supp.2d 573, 576 (S.D.N.Y. 2001); *United States v. Brown*, No. 1:12-cv-00394-SEB-DKL, 2013 U.S. Dist. LEXIS 41153, at *13, 111 A.F.T.R.2d (RIA) 1334 (S.D. Ind. Mar. 25, 2013) ("As a general rule, 'pre-indictment requests for stay are denied.'") (quoting *PNC Bank v. Pence*, No. 1:08-cv-0502-LJM-TAB, 2009 U.S. Dist. LEXIS 1883, at *2 (S.D. Ind. Jan. 12, 2009)). "[B]ecause the charges may never be filed, the duration of the stay would be indefinite." *CMB Exp.*, 2014 U.S. Dist. LEXIS 116095, at *9 (citing *Bank of Am. v.*

*Veluchamy*, No. 09 C 5109, 2010 U.S. Dist. LEXIS 43706, 2010 WL 1693108, at *4 (N.D. Ill. Apr. 26, 2010) ("The law does not support such an open-ended stay.")). Thus, this factor weighs against a stay.

**4. Interests of the Plaintiffs**

Plaintiffs obviously have a strong interest in having their cases resolved expeditiously and in obtaining prompt compensation for their injuries. *See Chagolla*, 529 F. Supp. 2d at 947. As time passes, evidence disappears and memories fade; plaintiffs' cases rarely grow stronger with delays beyond what is necessary for their adequate preparation. Because there is comparatively little overlap between this case and the criminal case, this is not a situation where the court can trust the criminal process to succeed in safeguarding the availability of the evidence necessary for the plaintiffs to pursue this action. *Cf. Hollinger Int'l*, 2008 U.S. Dist. LEXIS 3289, at *12.

Moreover, the plaintiffs stand to be harmed by a stay not just in an evidentiary sense but emotionally as well. As the court observed in *Doe v. City of Chicago*, 360 F. Supp. 2d at 882, a stay "would further lengthen the time in which the Plaintiff[s] must address the traumatic events alleged …." Thus, the interests of the plaintiffs weigh against granting a stay.

**5. Interests of the Public**

Similarly, "the public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law through the Civil Justice Reform Act

of 1990. *See* 28 U.S.C. §§ 471-82. A stay would impair that interest." *Salcedo*, 2010 U.S. Dist. LEXIS 67991, at *9. On the other hand, "the public has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla,* 529 F.Supp.2d at 947. But Armor does not indicate how it believes these proceedings stand to taint the criminal proceedings, and the court does not see a likelihood of any such adverse impact. Thus, the public interest weighs against granting a stay.

## 6. Interests of the Defendants

Finally, the court turns to the interests of Armor (the moving defendant and the only criminal defendant) as well as the interests of the other defendants, including the Milwaukee County defendants who support Armor's motion. (ECF No. 180.)

Armor contends that absent a stay "all individual health care defendants and Armor witnesses will be faced with the unnecessary dilemma caused by having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit." (ECF No. 172 at 7.) Specifically, it asserts "no prudent witness would testify without criminal counsel and advice regarding his or her rights under the Fifth Amendment" (*id*.) and notes that just because they have not yet been charged does not mean they will not be in the future (ECF No. 184 at 5).

Armor's motion is devoid of specifics. It has failed to demonstrate that its ability to present a defense will be impaired without a stay. Nor has it identified any witness who has or will invoke his or her privilege against self-incrimination. Armor merely

of 1990. *See* 28 U.S.C. §§ 471-82. A stay would impair that interest." *Salcedo*, 2010 U.S. Dist. LEXIS 67991, at *9. On the other hand, "the public has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla,* 529 F.Supp.2d at 947. But Armor does not indicate how it believes these proceedings stand to taint the criminal proceedings, and the court does not see a likelihood of any such adverse impact. Thus, the public interest weighs against granting a stay.

## 6. Interests of the Defendants

Finally, the court turns to the interests of Armor (the moving defendant and the only criminal defendant) as well as the interests of the other defendants, including the Milwaukee County defendants who support Armor's motion. (ECF No. 180.)

Armor contends that absent a stay "all individual health care defendants and Armor witnesses will be faced with the unnecessary dilemma caused by having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit." (ECF No. 172 at 7.) Specifically, it asserts "no prudent witness would testify without criminal counsel and advice regarding his or her rights under the Fifth Amendment" (*id*.) and notes that just because they have not yet been charged does not mean they will not be in the future (ECF No. 184 at 5).

Armor's motion is devoid of specifics. It has failed to demonstrate that its ability to present a defense will be impaired without a stay. Nor has it identified any witness who has or will invoke his or her privilege against self-incrimination. Armor merely

speculates that the individual health care defendants, as well as other unidentified persons, may invoke the privilege. "[M]ere speculation as to whether [witnesses] will invoke their Fifth Amendment rights in the present case is not a sufficient basis for the issuance of a stay." *Bd. of Trs. v. Nationwide Life Ins. Co.*, No. 04 C 821, 2005 U.S. Dist. LEXIS 6159, at *33 (N.D. Ill. Mar. 28, 2005). And even if a witness were to invoke the privilege, Armor does not explain how it would actually handicap its defense. It is not clear, for example, that an individual witness's invocation of the right against self-incrimination would lead to an adverse inference against Armor.

Perhaps most importantly, the resolution of criminal charges against Armor would not moot the sorts of fears of self-incrimination that Armor agues support a stay. Armor notes Judge Randa's observation in *Mr. Dee's* that, "once the criminal case concludes, it is at least more likely that the Individual Defendants will cooperate and provide relevant testimony." *Mr. Dee's*, 2008 U.S. Dist. LEXIS 93726, at *5. It argues that the same reasoning supports a stay here. (ECF No. 184 at 7.) However, in *Mr. Dee's* the relevant witnesses were charged in the criminal case. Thus, upon resolution of that criminal case, the matter was behind them and, at least insofar as the shield of double-jeopardy protected against further prosecution, they could speak free of fear of self-incrimination.

That is not true here. The resolution of the criminal charges against Armor affects only Armor. As noted above, no individual has been charged and there is no evidence

of an active criminal investigation. Barring a grant of immunity, a person fearing criminal prosecution may truly breathe a sigh of relief only after the statute of limitations for any applicable crime has run. Staying this case until the statute of limitations has run would mean a stay for at least a year (Wisconsin's three-year statute of limitations for misdemeanors would pass in July 2019 for events that occurred in July 2016). It would take until 2022 for the statute of limitations for most felonies to pass. And because this and the Thomas case involve deaths, a witness could plausibly fear incrimination regarding a variety of homicide offenses, in which case the statute of limitations would be a minimum of 15 years, Wis. Stat. § 939.74(2)(am), or might never run, Wis. Stat. § 939.74(2)(a). Because the requested stay would not remedy the defendants' concerns vis-à-vis the privilege against self-incrimination, the court must conclude that the defendants' interests do not favor the stay.

**Conclusion**

The court finds that the interests of justice do not favor a stay. When balanced against the plaintiffs' and the public's strong interest in seeing this case resolved expeditiously, as well as the other factors that do not weigh in favor of a stay, Armor's vague concerns about somehow not being able to fully defend itself should a witness invoke the privilege against self-incrimination are insufficient to merit a stay. That is especially true given that there does not appear to be an actual impending threat of

prosecution and the resolution of the criminal case against Armor will not materially change any witness's interests in invoking the privilege against self-incrimination.

**IT IS THEREFORE ORDERED** that Armor Correctional Health Services, Inc.'s "Motion to Stay Proceedings and Discovery" (ECF No. 171) is **denied**.

Dated at Milwaukee, Wisconsin this 29th day of March, 2018.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge