UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

_____

| | |
|---|---|
| THE ESTATE OF LALIAH SWAYZER;<br>SHADÉ SWAYZER; DIANE RUFFIN; and<br>CHARLENE RUFFIN, | Case No.: 16-CV-1703 |
| Plaintiffs, | |
| v. | |
| DAVID J. CLARKE JR.; KIMBERLY<br>WITKOWIAK; KEVIN UTSBY; KEZIAH<br>LOVE; T. CUNNINGHAM; JEFF<br>ANDRYKOWSKI; PAUL HEIN;<br>MILWAUKEE COUNTY; WISCONSIN<br>COUNTY MUTUAL INSURANCE<br>CORPORATION; ARMOR CORRECTIONAL<br>HEALTH SERVICES, INC.; DR. MAUREEN<br>WHITE; DR. RONQUILLO-HORTON; N.P.<br>KATHERINE MEINE; DR. GINA NEGRETTE;<br>R.N. FREDRICK PORLUCAS; DR. TULAY<br>GULSEN; EVANSTON INSURANCE<br>COMPANY and WISCONSIN HEALTH CARE<br>LIABILITY INSURANCE PLAN, | |
| Defendants. | |

_____

**DEFENDANT ARMOR'S BRIEF IN SUPPORT OF MOTION
FOR JUDGMENT ON THE PLEADINGS**

_____

## <u>INTRODUCTION</u>

Ms. Swayzer's *Monell* claims should be dismissed pursuant to Rule 12(c) because they are inadequately pled. First, Ms. Swayzer's *Monell* claims against Armor are both overbroad and insufficiently tethered to her fetal demise. Further, Ms. Swayzer has not sufficiently pled the requisite causal connection between alleged unconstitutional policies and her fetal demise. Accordingly, Armor is entitled to judgment on the pleadings, dismissing Plaintiffs' *Monell* claims against Armor.

## FACTUAL BACKGROUND

Ms. Swayzer filed this Section 1983 lawsuit alleging, among other things, that her serious medical needs were deliberately ignored and neglected while she was an inmate at the Milwaukee County Jail ("MCJ"). (Dkt. 146, ¶ 9). To support her claim, Ms. Swayzer alleges that the Defendants knew Ms. Swayzer "needed immediate medical care and constitutionally adequate medical treatment," because of her pregnancy, "but deliberately ignored these basic necessities afforded to pregnant women by failing to provide any medical care while" Ms. Swayzer was housed at MCJ. (Id. at ¶¶ 112- 113). More specifically, Ms. Swayzer alleges she informed a correctional officer that she was in labor and needed medical attention on July 14, 2016, but the correctional officer did nothing. (Id. at ¶ 57). According to Ms. Swayzer, her fetal demise occurred "as a direct result of not receiving medical care during the labor and delivery process." (Id. at ¶ 83).

Ms. Swayzer also brings *Monell* claims, alleging that Armor and other defendants adopted unconstitutional policies and customs. (Id. at ¶¶ 122 – 169). Ms. Swayzer asserts five separate theories of *Monell* liability against Armor in Count II of the Third Amended Complaint:

> A. Failure to Train and Adequately Supervise – Defendant Milwaukee County, Armor, Clarke and Horton
>
> B. Policies, Practices, and/or Customs of Allowing Untrained Correctional Staff to make Decisions Concerning the Need for Appropriate Medical Treatment and the Housing of Inmates with Medical Needs – Defendant Milwaukee County, Clarke, Armor and Horton
>
> E. Polices, Practices, and/or Customs of Placing Inmates who had been Previously Disciplined at CJF into Max-Custody Immediately upon Their Return With No Due Process, Regardless of the Medical Needs of the Inmate were Deliberately Indifferent to the Constitutional Rights of Inmates and Disregarded Proper Policy and Procedure – Defendant Milwaukee County, Clarke, Armor and Horton
>
> F. Polices, Practices, and/or Customs of providing little to no medical care to inmates being held on Probation Holds were Deliberately Indifferent to the

301855758v1 0989466

Constitutional Rights of Inmates and Disregarded Proper Policy and Procedure – Defendant Milwaukee County, Clarke, Armor and Horton

G. Polices, Practices, and/or Customs of Placing Inmates with Mental Health Issues in Maximum Custody as Opposed to Proving [sic] Those Inmates with Mental Health Treatment were Deliberately Indifferent to the Constitutional Rights of Inmates and Disregarded Proper Policy and Procedure – Defendant Milwaukee County, Clarke, Armor, Horton and White

(Id. at 146, ¶¶ 122 – 169).

In an attempt to support her *Monell* claims, Ms. Swayzer describes three unrelated deaths that occurred at MCJ and explains that Milwaukee County entered into a consent decree in 2001. (Id., ¶¶ 85 – 109). First, Ms. Swayzer describes the death of an inmate who died of dehydration after the water supply to the inmate's cell was shut off. (*Id.*, ¶ 87). Next, Ms. Swayzer summarizes the death of an inmate who died four days after she was arrested, showing clear signs of being under the influence of heroin, alcohol, and cocaine. (*Id.*, ¶ 88). Third, Ms. Swayzer describes the death of an inmate, who was suffering from a heart condition and heroin addiction, and died the same day he was booked. (*Id.*, ¶ 89). It is important to recognize that the second and third deaths summarized by Ms. Swayzer occurred after her fetal demise. Finally, Ms. Swayzer explains that Milwaukee County entered into a consent decree in 2001. Nevertheless, outside of the vague, undeveloped suggestion that the consent decree mentioned "women's health," Ms. Swayzer fails to connect the consent decree to Ms. Swayzer's circumstance or any of the other three deaths. Put simply, none of the other three deaths or the consent decree center on circumstances remotely similar to the facts of this case.

## APPLICABLE STANDARD

Pursuant to Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed -- but early enough not to delay the trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss pursuant

3

to Rule 12(b). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014); *Alexander v. City of Chicago,* 994 F.2d 333, 336 (7th Cir. 1993); *Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993). Specifically, both require that "the complaint state a claim that is plausible on its face." *Vinson v. Vermilion Cnty., Ill.,* 776 F.3d 924, 928 (7th Cir. 2015); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Adams*, 742 F.3d at 728.

Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) or Rule 12(c) motion. *Adams*, 742 F.3d at 728 (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012)). While the plaintiff need not plead "extremely specific facts," *Hoskin v. City of Milwaukee*, 994 F. Supp. 2d 972, 976 (E.D. Wis. 2014), "[a] complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams*, 742 F.3d at 728.

Notably, *Monell* claims are subject to the pleading standard set out by the Supreme Court in *Twombly* and *Iqbal*, and "boilerplate allegations" or legal conclusions are insufficient to survive a Rule 12(c) motion. *Hoskin*, 994 F. Supp. 2d at 977 (citing *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011)). "Determining whether a complaint states a plausible claim is context-specific, requiring the court to draw on its experience and common sense." *Twombly*, 550 U.S. at 556. Applying that principle, this Court noted, importantly, that, "because a *Monell* claim is complex, more factual specificity is required to sustain [it]." *See, e.g., Braun v. Abele*, No. 15-CV-252-JPS, 2015 U.S. Dist. LEXIS 82574, *12-13, 2015 WL 3904960 (E.D. Wis. June 25, 2015) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616-617 (7th Cir. 2011) ("The

4

301855758v1 0989466

required level of factual specificity rises with the complexity of the claim"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)). "This specificity is necessary to 'satisfy the rigorous standards of culpability and causation required for municipal liability.'" *Braun*, 2015 U.S. Dist. LEXIS 82574, * 13 (citing *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)).

## ARGUMENT

Ms. Swayzer's *Monell* claims against Armor must be dismissed for two separate and independent reasons. First, because Ms. Swayzer's *Monell* claims are overbroad and unspecified, this Court cannot plausibly infer Armor knew or should have known of an unconstitutional widespread practice or custom. Second, Ms. Swayzer fails to demonstrate a direct causal link between the supposed unconstitutional widespread practice and Ms. Swayzer's alleged constitutional injury. These deficiencies are glaring considering the fact that Ms. Swayzer has already conducted discovery regarding her *Monell* claim. Consequently, Ms. Swayzer's *Monell* claims against Armor should be dismissed with prejudice. *Foy v. City of Chi.*, 2016 U.S. Dist. LEXIS 63346 * 33 (N.D. Ill. May 12, 2016) ("Because Plaintiff has already taken discovery on this claim and after six iterations of her claims has yet to sufficiently state a *Monell* claim, Plaintiff's *Monell* claim against the City is dismissed with prejudice.").

### I. MS. SWAYZER'S *MONELL* CLAIMS MUST BE DISMISSED BECAUSE THEY ARE OVERBROAD AND UNSPECIFIED

A plaintiff may allege that a municipal policy has violated his or her civil rights by asserting that (1) the municipality had an express policy that, when enforced, caused a constitutional deprivation; (2) the municipality had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was

5

caused by a person with final policymaking authority. *See McCormick*, 230 F.3d at 324 (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). Ms. Swayzer is proceeding under the second of those theories, alleging Armor had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of the law. (Dkt. 100 at 2; Dkt. 118, at 5-6, Dkt. 146, at ¶¶ 122 – 169).

To state a widespread practice *Monell* claim, the plaintiff must allege facts tending to show the policymakers were aware of the behavior of the individuals, or that the activity was so persistent and widespread the policymakers should have known about the behavior. *See Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). The policy must be "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Moreover, *Monell* claims must be pleaded with sufficient facts to put a defendant on notice of the alleged wrongdoing, and in particular, the alleged wrongful policy or practice at issue. *See Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) ("So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."); *Springs v. Schwarz*, Case No. 15 C 5437, 2017 U.S. Dist. LEXIS 152210, at *7 (N.D. Ill. Sept. 19, 2017) (noting "some facts must be pleaded to put the defendant on notice of the alleged wrongdoing"); *Young v. Peoria Cty.*, Case No. 1:16-cv-01367-JBM,

6

301855758v1 0989466

2017 U.S. Dist. LEXIS 139919, at *12-13 (C.D. Ill. Aug. 30, 2017) (requiring the *Monell* plaintiff to provide allegations "specific and sufficient" for the defendants "to be put on notice as to the policies or customs personal to them" the plaintiff claimed were a *Monell* violation).

### a. MS. SWAYZER'S CONCLUSORY AND ALL-ENCOMPASSING ALLEGATIONS ARE INADEQUATE

Ms. Swayzer must make more than conclusory allegations that a *de facto* policy exists. *Strauss v. City of Chicago*, 760 F.2d at 765, 767 (7th Cir. 1985) ("A complaint that tracks *Monell*'s requirement of official policy with bare allegations cannot stand."). As set forth above, *Monell* claims must be pleaded with sufficient facts, not just conclusions, to put a defendant on notice of the alleged wrongful policy or custom. *See, e.g., Brooks*, 578 F.3d at 581-82. Thus, allegations that are "vague, broad, and lacking sufficient detail to put the defendant on notice" are insufficient to support a *Monell* claim. *Springs*, 2017 U.S. Dist. LEXIS 171318, at *7. In evaluating motions to dismiss or motions for judgment on the pleadings on *Monell* claims, district courts within the Seventh Circuit have determined overbroad *Monell* claims are properly dismissed at the pleading stage on several grounds.

First, a *Monell* claim is properly dismissed if it refers to policies so broadly, and without sufficient specificity, that a defendant is not given notice of the specific policy alleged to be unlawful. In *Chaparro v. Powell*, for example, the plaintiff based his *Monell* claim on an alleged widespread practice or custom he described as the "code of silence," or "city-wide acceptance of police misconduct," alleging instances of police misconduct "spanning two decades not directly related to his arrest." Case No. 07 C 5277, 2008 U.S. Dist. LEXIS 834, at *5-6 (N.D. Ill. Jan. 2, 2008). Upon the city's motion to dismiss, the court agreed with the city that the plaintiff's *Monell* claim was deficiently overbroad:

301855758v1 0989466

> Count IX is deficient. The factual allegations fail to plausibly suggest a policy cognizable under *Monell*. The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability. *See Bd. of the County Comm'rs,* 520 U.S. at 403. Chaparro relies on a purported "code of silence" based on numerous, tenuously related instances of police misconduct. But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom.

*Id.* at *6-7.

Moreover, in *Payne v. County of Cook*, the plaintiff included, as part of the allegations in support of his *Monell* claim, "broadly worded allegations of wrongdoing, such as '[t]he City of Chicago has a practice of condoning police misconduct and not disciplining officers who engage in misconduct.'" Case No. 15 C 3154, 2016 U.S. Dist. LEXIS 35865, at *58 (N.D. Ill. Mar. 21, 2016). The court granted the county's motion to dismiss, in part, explaining its decision as follows: "The court can easily dispose of the broadly worded allegations. Policy, custom, and practice claims that are not specifically tied into Payne's core allegations about the purported task force consisting of the employees of the Cook County Adult Probation Department, the City of Chicago, and the FBI are impermissibly conclusory." *Id. See also Arita v. Wexford Health Sources, Inc.*, Case No. 15-cv-01173, 2016 U.S. Dist. LEXIS 150106, at *4, 9 (N.D. Ill. Oct. 31, 2016) (alleging defendant Wexford, "through its employees, systematically ignored his complaints of pain and requests for treatment" and had "a policy of ignoring inmates' medical needs") (noting, in response to Wexford's motion to dismiss, that among other deficiencies, the complaint did not "shed any light on what Wexford's alleged policy might be – that is, what specific policy might lead to the systemic disregard of inmates' medical needs").

Consequently, Ms. Swayzer must identify a specific unconstitutional policy that is supported by factual allegations giving rise to a reasonable inference that Armor chose to adopt a policy of inadequate care for inmates. *City of Okla. v. Tuttle*, 471 U.S. 808, 823 (1985)("The word 'policy' generally implies a course of action consciously chosen from among various

8

alternatives; it is therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from a conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate.")

Similar to the cases above, Ms. Swayzer's *Monell* claims are improperly overbroad, unspecified, and conclusory.[1] Although Ms. Swayzer makes a variety of conclusory assertions and utilizes *Monell* trigger words, she fails to plausibly allege facts to support any of her *Monell* claims. For example, while Plaintiff alleges Armor failed to train and adequately supervise medical staff at MCJ, Plaintiff does not articulate what specific training was lacking. *See Hardy v. Wexford Health Sources, Inc.*, No. 12-CV-6554, 2015 U.S. Dist. LEXIS 43411, 2015 WL 1593597, at *14 (N.D. Ill. Apr. 2, 2015) ("Absent allegations of what training or staffing was lacking and how that deficiency impacted Hardy's health or that of his fellow inmates, Hardy has failed to state a claim for deliberate indifference due to a failure to train and a failure to provide adequate staffing."). Merely asserting, in conclusory fashion, that a policy exists is inadequate. *See Tuttle*, 471 U.S. at 823. As a result, Ms. Swayzer's *Monell* claims are not pled with requisite specificity because the contention that an unconstitutional policy or custom exists must be supported by factual allegations giving rise to a reasonable inference that Armor chose to adopt a policy of inadequate care for inmates. *Id.*

Second, *Monell* claims that are so broad as to encompass essentially all the activities of the defendant entity are properly dismissed. In *Young v. Peoria County*, for example, the plaintiff brought *Monell* claims against Peoria County and its contracted private medical company. Case No. 1:16-cv-01367-JBM, 2017 U.S. Dist. LEXIS 139919, at *12 (C.D. Ill. Aug. 30, 2017). In

---

[1] Notably, this Court implicitly suggested Ms. Swayzer's *Monell* claims were inadequately pled when it characterized them as "unspecified, systematic policies." (Dkt. 85, at 9).

9

301855758v1 0989466

evaluating the defendants' motion to dismiss, the court determined the plaintiff's allegations were impermissibly overbroad:

> Plaintiff's allegations are a myriad of conclusory statements about the "policies, practices, procedures, and rules" for handling, screening evaluating, examining, identifying, supervising, monitoring, and treating inmates. However, these allegations are a formulaic recitation of the elements of a *Monell* claim followed by virtually all the activities that a local jail performs and most of its contact with inmates. These broad allegations, coupled with not identifying which particular defendant is responsible for which policies, practices, procedures, or rules, fail to provide sufficient notice of a § 1983 *Monell* claim.

*Id.* at *12-13. On this basis, the court granted the defendants' motion to dismiss. *Id.* at *13.

Similarly, in *Armour v. Country Club Hills*, the plaintiff pleaded "the facts relevant to his own injury" and then alleged the city failed to properly train and supervise its officers regarding "the use of force, the completion of reports, and the collection of evidence." Case No. 11 C 5029, 2014 U.S. Dist. LEXIS 1849, at *23 (N.D. Ill. Jan. 8, 2014). In evaluating the defendant's motion to dismiss, the court rejected the plaintiff's argument that his allegations were sufficient to alert the city to its alleged wrongdoing:

> The problem with Armour's allegations is that they encompass virtually all the activities of a police department and every contact it has with the public. Armour has lumped together myriad "customs" and "policies," and the scope of the discovery relevant to his claims is boundless. The allegations are in no way tailored to identify particular police training procedures or policies. In other words, discovery relevant to Armour's allegations would be the epitomy of a fishing expedition.

*Id.* at 23.

Likewise, in *Freeman v. City of Crown Point*, the plaintiff alleged police officers "routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go undisciplined for doing so" and "abuse citizens in a similar manner to that alleged by [the plaintiff] on a frequent basis," with the police department rarely making "findings of wrongdoing." Case No. 2:13-CV-059 JD, 2014 U.S. Dist. LEXIS 16595, at *27-28 (N.D. Ind.

10

301855758v1 0989466

Feb. 11, 2014). The court found these allegations impermissibly broad, as insufficient to provide the defendant notice of the claim against it or create a reasonable inference that the city adopted the policy. *Id*. at *28-29. Moreover, the court determined that because the plaintiff alleged multiple violations by the officers, the allegation that officers "abuse citizens in a similar manner" to that alleged by the plaintiff "would encompass nearly every activity of the department" and "deprive[] the City of the notice to which it is entitled as to what policies it maintains that deprived [the plaintiff] of his rights." *Id*. at 29-30.

Ms. Swayzer's claims are also overbroad because they encompass essentially all of Armor's activities. For example, Ms. Swayzer alleges as follows in her failure to train and adequately supervise claim against Armor:

> That MC, MCSO, Clarke, Armor and Horton failed to adequately train officers, correctional employees, and medical staff at CJF at all times material to this Complaint on **how to care for pregnant inmates**, **persons in their custody suffering from serious-acute-obvious medical conditions**, and **individuals in their custody in need of immediate medical attention**, **how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, how to conduct security rounds on special needs inmates, how to provide medical care and how to conduct intake screenings**, amongst other failures.

(Swayzer Dkt. 146, at ¶ 123) (emphasis added). Consequently, Ms. Swayzer's *Monell* claims are impermissibly broad because they encompass the entirety of Armor's operations at MCJ.

###### b. Ms. Swayzer fails to allege similar instances of unconstitutional misconduct to support an unconstitutional widespread practice or custom *Monell* claim

As indicated above, to support her widespread practice *Monell* claim, Ms. Swayzer must allege facts tending to show the alleged activity was so persistent and widespread the policymakers should have known about the behavior and the practice was "so permanent and well-settled" as to constitute a "custom or usage" with the force of law. *See Latuszkin*, 250 F.3d at 505; *Calhoun*, 408 F.3d at 379. A widespread practice/implicit policy claim implies

11

301855758v1 0989466

"application of the policy to many different individuals." *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2008). There can be no "policy decision" inferred if the events on which the *Monell* claim is based are "random events" or "isolated incidents." *Gill*, 850 F.3d at 344 (requiring allegations of events "similar to those complained of here"); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (emphasizing that plaintiff must "demonstrate that there is a policy at issue rather than a random event"); *Calhoun*, 408 F.3d at 380 ("What is needed is evidence that there is a true municipal policy at issue, not a random event."). Consequently, only allegations of similar alleged unconstitutional conduct are sufficient to support a widespread practice *Monell* claim. *See, e.g., Connick v. Thompson*, 563 U.S. 51, 54, 131 S. Ct. 1350 (2011) ("Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation."); *Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017).

Notably, the Seventh Circuit recognized the requirement of pleading similar instances of alleged unconstitutional conduct in *Gill v. City of Milwaukee,* 850 F.3d 335. In *Gill,* the court affirmed a Rule 12(c) dismissal of a widespread practice *Monell* claim and explained as follows:

> At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom. Gill's complaint fails to do so. It does not provide examples of other Milwaukee police officers taking actions similar to those complained of here. More importantly, it does not plausibly allege that such examples exist. Instead, it simply states that this *de facto* policy caused the "Defendant Detectives named *supra* to commit the aforesaid wrongful acts against Plaintiff."

*Id*. at 344 (internal citations omitted).

Additionally, the Northern District of Illinois' decision in *Foy v. City of Chicago* is particularly instructive on why Ms. Swayzer's allegations of other random, and isolated incidents at MCJ are not sufficient to support her *Monell* claims. 2016 U.S. Dist. LEXIS 63346 (N.D. Ill.

301855758v1 0989466

May 12, 2016). In *Foy*, the plaintiff alleged a widespread practice of deliberate indifference to detainees' medical needs, citing the fact that eight other inmates passed away at the City of Chicago police station between 2007 and 2015. *Id.* at *25. After the plaintiff obtained discovery related to her *Monell* claim and amended the complaint multiple times, the City moved to dismiss. The court granted the City's motion and explained,

> Plaintiff indicates that three of these deaths were the result of suicide, three deaths were attributed to drug overdoses, one death was due to cardiac dysrhythmia, and one death was due to pulmonary disease…**Aside from the fact that these deaths are attributed to a wide array of causes, Plaintiff fails to allege any factual content that plausibly suggest that these deaths were the result of the City's widespread practices of officers failing to provide medical attention, failing to train officers, failing to punish officers when an inmate suffered a medical emergency, or failing to maintain operable surveillance equipment. Plaintiff alleges no factual matter to establish that the circumstances surrounding any of these inmates' deaths are similar…** In addition, for at least five of the deaths, Plaintiff merely states the name of the inmate, the date of the inmate's death, and the cause of death, with no other explanatory details. The Court is left to guess as to how these deaths—which have occurred at a jail that has housed likely thousands of detainees between 2007 and 2015—can be attributed to any of the widespread practices that Plaintiff attempts to allege.
>
> …
>
> **While these tragic deaths are unfortunate, there are no allegations that these deaths and [plaintiff's] death share substantive similarities**. Simply put, the conclusory reliance on other deaths between 2007 and 2015 at the Harrison Police Station does not establish the possibility that the City's alleged widespread practices are so well-settled that they amount to an unconstitutional custom or policy.

*Id.* at **25-27 (citations omitted) (emphasis added). In a nutshell, the court determined that the plaintiff failed to state a plausible *Monell* claim because she failed to allege similar incidents of alleged unconstitutional misconduct to establish a well-settled unconstitutional widespread practice or custom.

Furthermore, there are numerous cases in which district courts in the Seventh Circuit have found allegations of dissimilar incidents of alleged unconstitutional conduct insufficient to

13

301855758v1 0989466

support a widespread practice *Monell* claim. *See Thomas v. City of Markham*, Case No. 16 CV 08107, 2017 U.S. Dist. LEXIS 160635, at *8 (N.D. Ill. Sep. 29, 2017) ("Plaintiff alleges facts which purportedly show a pattern of repeated acts of abuse toward [the City's] citizens. To the extent these allegations do not point to other incidents of Markham officers using excessive force, they do not describe incidents that are sufficiently similar to constitute a pattern from which this Court can infer a harmful practice and Markham's deliberate indifference to its consequences."); *Hicks v. City of Chi.*, Case No. 15 C 06852, 2017 U.S. Dist. LEXIS 160617, at *26-27 (N.D. Ill. Sept. 29, 2017) (same); *Scheidler*, 2017 U.S. Dist. LEXIS 37724, at *12-13 (same); *Karney v. City of Naperville*, Case No. 15 C 4608, 2016 U.S. Dist. LEXIS 143655, at *47 (N.D. Ill. Oct. 18, 2016) (same).

Like the cases described above, Ms. Swayzer's *Monell* claims must be dismissed because she failed to allege similar incidents of alleged unconstitutional misconduct to establish any unconstitutional widespread practices or customs. As indicated, Ms. Swayzer's summary of the circumstances of the three deaths at MCJ shows that these are isolated and unrelated incidents, which occurred under completely different circumstances. (Dkt. 117, at 4). First, Ms. Swayzer describes the death of Terrill Thomas who died of dehydration after the water supply to his cell was shut off. (Dkt. 146, at 87). Next, Plaintiff summarizes the death of Kristina Fiebrink who died four days after she was arrested, showing clear signs of being under the influence of heroin, alcohol, and cocaine. (Id., ¶ 88). Last, Plaintiff describes the death of Michael Madden who was suffering from a heart condition and heroin addiction. (Id., ¶ 89). None of these deaths involve circumstances remotely similar to the facts of this case. Put simply, the only similarity between the deaths of the other three inmate deaths at MCJ and Ms. Swayzer's fetal demise is that they involve inmates in custody and are unfortunate.

14

Nevertheless, Ms. Swayzer has argued that two of her *Monell* claims are factually similar to the Thomas matter and one claim is factually similar to the Fiebrink matter. (Dkt. 118, at 6). Ms. Swayzer's bald conclusory allegations are inadequate because she fails to allege any facts that connect Thomas and Fiebrink's circumstances to this case. Random, isolated incidents do not meet the pleading requirements as a matter of law. *Gill,* 850 F.3d at 344 (noting "plaintiff must demonstrate that . . . the specific violations complained of were not isolated incidents."). Consequently, this Court cannot reasonably infer Armor elected to adopt a policy of inadequate care for inmates.

It is also important to recognize Ms. Swayzer cannot rely upon subsequent incidents to establish the requisite pattern for *Monell* liability. *See Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994) (finding evidence of an incident that occurred years after the conduct at issue was properly excluded because "[h]olding a municipality liable for its policies or custom and usage is predicated on the theory that it knew or should have known about the alleged unconstitutional conduct on the day of the incident"). This means Ms. Swayzer cannot rely on the Fiebrink and Madden maters to establish the requisite pattern for *Monell* liability because both the Fiebrink and Madden matters occurred after Ms. Swayzer's fetal demise. (*See* Dkt. 146, ¶¶ 88 – 89). This is significant because even if this Court were to find that the Thomas matter occurred under similar circumstances, which Armor disputes, one incident is insufficient to establish a pattern. *See, e.g., Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citations omitted) (explaining the requisite conduct for *Monell* liability "must be more than one instance, or even three").

301855758v1 0989466

Accordingly, Ms. Swayzer's *Monell* claims must be dismissed because she fails to allege similar instances of unconstitutional misconduct to allow this Court to plausibly infer Armor deliberately adopted an unconstitutional widespread practice or custom.

## II. MS. SWAYZER'S *MONELL* CLAIMS MUST BE DISMISSED BECAUSE SHE HAS NOT PLAUSIBLY PLED THE REQUISITE CAUSAL CONNECTION BETWEEN ANY ALLEGED WIDESPREAD CUSTOM OR PRACTICE AND MS. SWAYZER'S ALLEGED INJURIES

Liability under *Monell* "is not founded on a theory of vicarious liability or respondeat superior that holds a municipality responsible for the misdeeds of its employees." *Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F. 3d 917, 927 (7th Cir. 2004). Accordingly, a proper *Monell* complainant must also allege specific causation, that an official policy or custom "not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007) ("The first question, therefore, is whether the complaint alleges a direct causal link between a policy or custom [] and the alleged constitutional violations."); *see also Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003).

Alleging a policy or custom was "likely" to have caused a particular violation is insufficient. *White v. Chicago*, Case No. 90 C 6336, 1991 U.S. Dist. LEXIS 13869, at *16 (N.D. Ill. Sep. 23, 1991) (*citing Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027, 108 S. Ct. 752 (1988); *and City of Canton v. Harris*, 489 U.S. 387, 391, 109 S. Ct. 1197 (1989)). Moreover, alleging a policy was a factor or a contributing factor in the alleged constitutional injury is also insufficient. *See Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013).

Along these lines, it is important to recognize the Seventh Circuit has held, consistent with the directive of the United States Supreme Court, that "but for" causation of injury is insufficient for *Monell* liability as a matter of law. *See Wilson v. Cook Cty.*, 742 F.3d 775, 784

301855758v1 0989466

(7th Cir. 2014) (*citing Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382 (1997)) ("[T]he decision to hire [the official] was not the cause of [the plaintiff's] injury in anything but the 'but for' sense. It was not, in other words, the 'moving force' behind the injury."); *Brown*, 520 U.S. at 410 ("Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."); *City of Springfield, Mass. v. Kibbe*, 480 U.S. 257, 267-68, 107 S. Ct. 1114 (1987) ("In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy. Finding § 1983's causation requirement satisfied by such a remote connection, however, would eviscerate *Monell*'s distinction, based on the language and history of § 1983, between vicarious liability and liability predicated on the municipality's own constitutional violations."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.11, 106 S. Ct. 1292 (1986). *See also Spearman v. Elizondo*, 230 F. Supp. 3d 888, 894 (N.D. Ill. 2016) ("to prevail on a *Monell* claim, … [i]t is not enough for a plaintiff to show merely that the custom or policy was the but-for cause of her injury"); *Scheidler v. Metro. Pier & Exposition Auth.*, Case No. 16-CV-4288, 2017 U.S. Dist. LEXIS 37724, at *10 (N.D. Ill. Mar. 16, 2017) (citations omitted) ("Pleading that a municipality's policy is a "but for" cause of an alleged injury is insufficient as a matter of law.").[2]

This district has followed the Seventh Circuit's holding on "but for" causation in at least one case. *See Orlowski v. Milwaukee Cty.*, Case No. 13-CV-1318-PP, 2016 U.S. Dist. LEXIS

---

[2] The majority of other federal circuits have also rejected "but for" causation for *Monell* claims. *See* ***Scheidler***, 2017 U.S. Dist. LEXIS 37724, at *10 n. 4 (collecting cases).

301855758v1 0989466

53537, at *56 (E.D. Wis. Apr. 21, 2016) ("[T]he plaintiff argues that the County is liable for Mr. Orlowski's death, but his causation theory does not adequately account for the difference between a 'but for' cause, which is not sufficient to impose liability under *Monell*, and a 'moving force' or proximate cause of a constitutional violation.").

Additionally, other district courts in the Seventh Circuit have enforced this principle in granting motions to dismiss in numerous cases. In *Mikolon v. City of Chicago*, for example, the plaintiff set forth vague allegations the city failed to train its officers in avoiding "unconstitutional and criminal misconduct," failed to investigate allegations of or discipline its officers as to "unconstitutional and criminal misconduct," and condoned or embraced a "code of silence" concerning reports of "unconstitutional and criminal misconduct." Case No. 14 CV 1852, 2014 U.S. Dist. LEXIS 171318, at *13-14 (N.D. Ill. Dec. 11, 2014). The court granted the defendant's motion to dismiss, finding that without the requisite "factual link," namely, factual allegations to support the notion that a well-settled policy was the moving force behind the police officers' conduct, the plaintiff's *Monell* claim "approach[ed] too closely to a claim that s[ought] to hold the City responsible for all official actions of its employees." *Id.* at *15.

Similarly, in *Chaparro v. Powell*, the court determined the plaintiff's allegations of a "code of silence," or "city-wide acceptance of police misconduct," failed to "plausibly suggest" a causal link between a municipal policy and his injury:

> He asserts a general lawlessness among CPD officers caused the violations surrounding his arrest. But he provides no facts to show that link; and the policy he alleges is so nebulous that any connection to a particular constitutional violation is highly attenuated. Indeed, the injury Chaparro allegedly suffered is no more related to the "code of silence" than any other injury caused by any other kind of police misconduct.

2008 U.S. Dist. LEXIS 834, at *5, 7 (further noting that, under the plaintiff's logic, "any instance of police misconduct would be 'caused' by the 'code of silence' because any misconduct could be

linked to an officer's imputed belief he could escape punishment"). *See also Wilson v. City of Chicago*, Case No. 17 C 2525, 2017 U.S. Dist. LEXIS 172649, at *6 (N.D. Ill. Oct. 18, 2017) (finding the plaintiff's causal allegations, namely that a failure to train and supervise led to the plaintiff's injury, insufficient, noting the plaintiff failed to allege, among other things, "how a failure to train or supervise created the circumstances in which the officers were able to violate his civil rights").

The court also considered the requisite causal connection in *Peacock v. Rigsby*, Case No. 15 C 1884, 2016 U.S. Dist. LEXIS 46994 (N.D. Ill. Apr. 7, 2016). In that case, the plaintiff alleged the defendant implemented and maintained policies "to cut medical costs" and further alleged his allegedly deficient treatment was caused by said policies. *Id*. at *7-8. The court found such allegations insufficient:

> Peacock's allegation of a cost-cutting policy is too speculative and untethered to his injury to support his claim. His factual allegations do not plausibly allege how a cost-cutting policy could possibly have caused his infection. Peacock alleges that his infection was caused by a failure to change his bandages frequently enough or give him a sufficient regimen of antibiotics. Peacock fails to allege that the cost of bandages and antibiotics is a significant percentage of Wexford's budget such that a cost-cutting policy would have entailed restricting provision of bandages and antibiotics. Even if Peacock had made such an allegation, the Court finds such an allegation to be speculative and implausible absent additional facts from which the Court could infer that a cost-cutting policy existed that would have impacted the kind of treatment Peacock allegedly received.

*Id*. at *7-8. Thus, the court granted Wexford's motion to dismiss. *Id*. at *12. *See also Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 U.S. Dist. LEXIS 76341, at *13-14 (N.D. Ill. June 13, 2016) ("Instead of tying his injury to specific policies, Taylor has chosen to provide a laundry list of ten alleged policies maintained by Wexford. Without additional facts to allow the Court to infer that these policies impacted the care Taylor received, they do not support a *Monell* claim against Wexford.").

19

301855758v1 0989466

Although Ms. Swayzer uses *Monell* nomenclature, alleging her fetal demise was a direct and proximate cause of Armor's alleged unconstitutional policies, Ms. Swayzer fails to allege facts that support these conclusory assertions. In other words, Ms. Swayzer has failed to allege any facts that establish how the alleged practices proximately caused her alleged individual injuries. For instance, Ms. Swayzer's first and second theory of *Monell* liability against Armor center on Armor's alleged failure to train its staff. Ms. Swayzer, however, does not allege that any of the defendant correctional officers or health care providers were improperly trained or supervised. Moreover, Ms. Swayzer's third, fourth, and fifth theories of *Monell* liability against Armor center on her assertion that Armor had a *de facto* policy of placing inmates in "Max-Custody," "on probation holds," and "into maximum security."[3] Ms. Swayzer, however, has not defined any of these terms. Nor has Ms. Swayzer pled any facts to support an inference that Armor is responsible for placing inmates under any status. More importantly, Ms. Swayzer has not alleged any facts that explain how being placed in "Max-Custody," on probation holds," or "into maximum security" allegedly caused her fetal demise. Accordingly, Ms. Swayzer's *Monell* claims must be dismissed because she has failed to allege factual content that would support an inference that any of Armor's alleged unconstitutional policies caused her fetal demise.

Seventh Circuit case law is clear, a *Monell* claim must allege facts in support of the causal connection between an alleged policy or pattern and the alleged individual injury, namely proximate cause. *See, e.g., Estate of Sims*, 506 F.3d at 514-15; *Wilson*, 742 F.3d at 78. However, Ms. Swayzer has set forth only conclusory allegations and has failed to allege facts establishing how the alleged unconstitutional practices proximately caused her fetal demise. Because Ms. Swayzer has failed to plead with any specificity how any alleged unconstitutional policy or

---

[3] Armor does not concede Ms. Swayzer was placed in "Max-Custody," on a "probation hold," or "into maximum security."

301855758v1 0989466

practice was the moving force behind her alleged injuries, dismissal of her *Monell* claim against Armor is warranted. *See Mikolon*, 2014 U.S. Dist. LEXIS 171318, at *13-14; *Peacock*, 2016 U.S. Dist. LEXIS 46994, at *7-8.

## CONCLUSION

Based on the foregoing, Armor's motion for judgment on the pleadings should be granted.

Dated this 18th day of May, 2018.

/s/ *Michael P. Russart*

Michael P. Russart
State Bar No. 1023128
Counsel of Record for Defendant Armor
Correctional Health Services, Inc.
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address: mrussart@hinshawlaw.com

21

301855758v1 0989466