UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**THE ESTATE OF LALIAH SWAYZER**, et al.
    Plaintiffs,

v.

**DAVID J. CLARKE JR.**, et al.
    Defendants.

Case No: 16-CV-1703

**PLAINTIFFS' OPPOSITION TO MILWAUKEE COUNTY'S
MOTION FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL**

Plaintiff and Plaintiff's attorney, by his representative counsel, BARNES LAW, LLP and., oppose Milwaukee County's (the County) "MOTION FOR SANCTIONS." (D.318).

**I. INTRODUCTION**

In an unsupported demand, the County Defendants seek this court sanction plaintiff's counsel for engaging a constitutionally protected right to engage freedom of speech to a member of the press about a matter of great public interest. This sanction request assaults the First Amendment Rights of the plaintiff, plaintiffs' counsel, the press, and the public. Defense counsel fails to cite a single case from anywhere in America, where any court sanctioned a lawyer for their public speech to the press about a matter of public interest in a similar case. Defense counsel instead encourages this court to become the state's ethical board, in order to misinterpret and misapply the ethical rules in a way that would render those rules patently unconstitutional. Defense counsel cannot convert a public official into a "potential witness" and thereby immunize that public official from public criticism of matters of public concern. The courtroom is a protected space; the court of public opinion is not. A lawsuit does not create a special safe space for public officials to evade criticism from those most knowledgeable to give that criticism. The Supreme Court of the United States made this clear, repeatedly, over decades. The First Amendment applies to lawyers just like everybody else. The County's request must be denied.

## II. LEGAL STANDARD

Defense counsel cites no violation of either this court's orders or of any rule of federal procedure for its sanctions request. Instead, defense counsel misinterprets and misapplies the Wisconsin ethical rules while feigning standing to seek a sanction under the court's disciplinary process pursuant to a local rule of the district court. Of note, defense counsel, intimately aware of district court precedents, fails to cite a single case from any district court in the country that has ever done what it asks this court to do – to, on behalf of a private party, use state ethical rules to sanction a lawyer for his out-of-courtroom speech to the press about a matter of great public interest.

First, it is abundantly clear that the Rules of Professional Conduct are not to be utilized as procedural weapons to gain a strategic advantage in litigation:

> The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. **Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons…** (emphasis added). *Wisconsin's Rules of Professional Conduct,* PREAMBLE, § 20.

Second, even if the court believes the defendants' motion is otherwise well pled, the motion requires a dubious presumption that defense counsel can stand in non-parties shoes and invoke the processes and remedies potentially available to those out of court parties. Non-parties, if they believe they have been aggrieved, have formal processes available to them that are better suited to adjudicate their interests outside of an existing and unrelated civil suit. To allow otherwise, as defense counsel attempts here, appears perilously close to invoking the rules only to subvert the same as procedural weapons. If defense counsel believes they have standing to invoke the rules on behalf of non-parties, and if defense counsel wants to use the rules as a sword during the proceedings, then the court should heed the blunt warning written within those same rules against such obvious subversion.

Third, defense counsel misinterprets and misapplies the relevant ethical rules it relies upon. The rule cited only precludes speech: 1) the lawyer knows or reasonably should know; 2) "will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter"; and 3) is not information contained in a public record or a warning of danger concerning the behavior of the person involved. (Supreme Court Rules 20:3.6).[1] Certain statements can be considered "ordinarily likely to" cause prejudice, but there is no conclusive presumption they do so, nor could there be Constitutionally. Of note, the assumption only applies to comments about the character, credibility or reputation of a party; the only limitation on witnesses is their "expected testimony" when that expected testimony is not already "on record." Thus, in order for a public statement about a witness to "ordinarily" cause prejudice the statement must be about their "expected testimony," but even then, only if their expected testimony is not already on record. None of the protected speech at issue violates any of these precepts, let alone all of them.

Fourth, the First Amendment limits how the rules of conduct can both be interpreted and applied. In *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), the Supreme Court held that an attorney's public statements were protected from sanction by the First Amendment. "At the very least, our cases recognize that disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." *Id.* The *Gentile* court further held that no court can punish the speech of a lawyer unless the lawyer's conduct causes a "substantial likelihood of material prejudice" to the judicial proceedings. *Gentile,* at 1032-1045. "Material prejudice" in this context, means conduct "likely to influence a trial's outcome" in an impermissible manner. *Id.* at 1075. This requires "releasing information of grave prejudice on the eve of jury selection", or analogous conduct. *Id.* at 1036. Indeed, "the phrase

---

[1] Note: All three factors must be present as the rule is stated in the conjunctive.

'substantial likelihood of material prejudice' might punish only speech that creates a danger of imminent and substantial harm." *Id.* This follow six decades of Supreme Court precedent that "the unequivocal command of the First Amendment serves a constant reminder that freedom of speech and of the press should not be impaired . . . unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice." 331 U.S. 367 (1947). "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." *Id.* at 367. The County makes no attempt to distinguish, let alone address, these preeminent and well-established U.S. Supreme Court precedents protecting the First Amendment in its most recent iteration of overzealous advocacy seeking sanctions without standing.

Fifth, the law of this Circuit and fellow Circuits reiterates and reaffirms this precepts and principles. The Seventh Circuit long recognized that "before a trial court can limit" attorney speech "the record must contain sufficient specific findings by the trial court establishing that" the particular statement of the attorney is a serious and imminent threat to the administration of justice." *Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970). The Seventh Circuit struck down a prohibition like the kind the defense lawyers seek here, noting that any prohibition or punishment of attorney speech "without regard to whether such comment is or even could be prejudicial to the fair administration of justice cannot stand without making a mockery of the free speech guaranty of the first amendment." *In re Oliver*, 452 F.2d 111, 115 (7th Cir. 1971). The Seventh Circuit long reiterated that "an order must be narrowly drawn so as not to prohibit speech which will not have an effect on the fair administration of justice." *Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970). Without specific findings a lawyer's statement posed a "clear and present danger" to the ability of the court to perform its tasks, a judge's sanction order was "constitutionally impermissible" and compelled

mandamus. *Chase v. Robson*, 435 F.2d 1059, 1061 (7th Cir. 1970).  Indeed, defense counsel notably fails to inform this Court of these important, controlling precedents in what is effectively his second and increasingly overzealous attempt to disqualify plaintiff's counsel.

As to this specific issue, the court noted the rule limiting out-of-court discussion of a party or witness could not be constitutional unless the court found the specific statement posed a serious and imminent threat to the court's ability to perform its task. *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975). For First, Fifth and Sixth Amendment reasons, speech-regulating rules "must be neither vague nor overbroad." *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 249 (7th Cir. 1975). Even statements that "impair the orderly and fair administration of justice in a pending case" cannot be restricted or sanctioned given the paramount interest of free speech. *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 249 (7th Cir. 1975). Critically, the "serious and imminent" threat standard "must always be an element of any prohibition" on attorney speech. *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 251 (7th Cir. 1975). Therefore, the Seventh Circuit struck down any rule that did not pose a serious and imminent threat of interference with the court's ability to perform its tasks. *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975).  The County makes zero attempt to sustain this burden while asking for sanctions related to the Rules of Professional Conduct.

Specifically, the Seventh Circuit upheld a necessary limit on any rule prohibiting speech about a "prospective witness." As the court noted, such a rule could only "apply to statements about persons **in their role** as potential witnesses," or the rule would violate the First and Fifth Amendment as posing a serious "overbreadth problem." *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 254 (7th Cir. 1975). Thus, this limitation only applies to a lawyer forecasting what a potential witness will say and commenting on their identity, testimony or credibility in that context. Even there, as the Wisconsin rule makes clear, the rule can never limit speech about testimony already on public record. It is clear this rule was intended to prevent a limited issue: a lawyer forecasting

incorrect testimony of a witness when that testimony is not already a matter of public record to influence a jury during a jury trial. Again, defense counsel makes no attempt to inform this court of the controlling case law on the issues at hand, let alone apply it to the most recent iteration of sanctions and disqualification that has become the defense strategy in a case involving the death of a baby while in the custody of Milwaukee County.

As a recent district court noted in a case where counsel solicited press coverage and publicly discussed the case itself in detail, such speech cannot be proscribed or punished without a showing the "remarks will undermine this Court's ability to conduct a fair trial." *Moore v. Morales*, 2007 WL 9757981 at *2 (N.D. Ill. 2007). "The Court believes it can effectively deal with any adverse affect of pretrial publicity on the brochure distribution by extensive, open-ended questioning of prospective jurors during voir dire." *Id.* The court concluded it "will not infringe the First Amendment rights of Plaintiff and his counsel." *Id.*

The Fifth Circuit recently reaffirmed this principle. No rule can restrict attorney speech unless the attorney's conduct "poses either a clear and present danger or a serious and imminent threat" to the court's ability to perform its task. *In re Goode*, 821 F.3d 554, 560 (5th Cir. 2016). This has been translated into a requirement that no rule can restrict lawyer speech unless the court finds that speech "has a meaningful likelihood of materially impairing the court's ability to conduct a fair trial." *In re Goode*, 821 F.3d 554, 561 (5th Cir. 2016). Following the Seventh Circuit, the Fifth Circuit reiterated that blanket prohibitions on categories of attorney speech cannot meet Constitutional muster unless "the particular statement posed a serious and imminent threat of interference with a fair trial." *In re Goode*, 821 F.3d 554, 561 (5th Cir. 2016) (quoting *Chi. Council of Lawyers v. Bauer*, 522 F.2d 242, 251 (7th Cir. 1975). The Fifth Circuit noted the court must find the statement cannot be cured by "change of venue, jury sequestration, searching voir dire, and emphatic jury instructions" before it can impose limits on attorney speech about public matters. *In re Goode*, 821 F.3d 554, 561

(5th Cir. 2016). The Court struck down the district court's sanction as imposing a rule in violation of the First Amendment. *In re Goode*, 821 F.3d 554, 561 (5th Cir. 2016).

## III. FACTS

The troubling, and in this case deadly, administration of the Milwaukee County jails is a matter of great public concern. Here, a baby died in custody, unattended by any medical or correctional staff while her bi-polar, schizophrenic mother remained alone in a filthy cell. The two persons discussed by the press with plaintiff's counsel are not currently parties to this case; Nancy Evans was never served with or answered a complaint, and they are major public figures involved in the deadly operation of the County Jail. This jail, it should be noted has been subject to consent decree for decades and is where no less than seven jail deaths occurred in short order during Nancy Evan's command. Former Sheriff Clarke and Nancy Evans were the subject of multiple television and newspaper stories regarding their positions of authority in the Sheriff's department, which made them public figures of compelling interest. Primarily, this interest and the focus of the intense media coverage is largely due to the multitude of in-custody deaths occurring on their watch.

One of the primary bases for the County's motion is the unsupported and false proposition that the plaintiff's attorney somehow surreptitiously orchestrated the release of Nancy Evans' video. Nothing could be further from the truth. In fact, Nancy Evans claimed incompetency to proceed with her criminal trial, whereby she later pled to a felony. A media inquiry was made relative to her video deposition testimony, and other documentation, all of which are public record. On December 28, 2018, plaintiff's attorney **advised in writing** every counsel of record in the case that a media request has been made and provided an opportunity for all attorneys, including the County, to object and provide legal basis. See below for the email exchanges:

> **From:** James Gende
> **Sent:** Friday, December 28, 2018 2:30 PM
> **To:** 'Douglas Knott'; Stephanie Frohmader; 'Russart, Michael P (mrussart@hinshawlaw.com)'; 'jmunson@hinshawlaw.com'; 'lgendelman@otjen.com'; 'jfranckowiak@otjen.com';

'meagher@gwmlaw.com'; 'Randall Guse (rguse@otjen.com)'; 'nbeck@gklaw.com'; 'jfriedman@gklaw.com'; 'mslovis@cmvlaw.com'; 'kseale@cmvlaw.com'; 'jsmith@cmvlaw.com'; Christi Kavanaugh; 'mreuter@jlk-law.com'
**Cc:** 'ckaters@jlk-law.com'; 'dlang@jlk-law.com'; 'nate@cade-law.com'; Ann Schaar
**Subject:** RE: Swayzer v. Clarke - 7/14/16 Intercom Recordings

There has been a media inquiry for a copy of Nancy Evans' deposition in this case. Considering s.1983 litigation is to be done in the public eye as much as possible, I will provide a copy within the next week:

> Protective orders are, in fact, an exception to the general rule that pretrial discovery must occur in the public eye. *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979); Fed. R. Civ. P. 26(c); *see also Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945–46 (7th Cir.1999). Litigation must be "conducted in public to the maximum extent consistent with respecting trade secrets…and other facts that should be held in confidence." *Hicklin Eng'r, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006).

If an attorney intends to object, please state your factual and legal basis. Thanks.

Sincerely,
James J. Gende II

No attorney objected. Nothing marked "confidential" was released. Defense counsel knew the press would be entitled to case related, non-confidential information as a matter of First Amendment law. Alternatively, the County attorney intended to lay in wait for the next opportunity to put plaintiff's counsel on trial, attempting to divert attention away from the gross misconduct of his clients.

Defense counsel's complaints concern plaintiff's counsel responding to press questions about two high profile public officials relative to the high profile management of the Jail facilities. Yet, as Dostoevsky noted **"The degree of civilization in a society can be judged by entering its prisons."** *-Fyodor Dostoevsky, from The House of the Dead.* Here, neither Clarke nor Evans are currently party to this case. Neither is likely to be a witness at trial in this case. The commentary of counsel does not concern any information ordered gagged by any court. The complained of commentary of counsel does not concern any information that is not already a matter of public record. The complained of commentary did not concern the expected testimony of a witness that was not

already of record. The complained of commentary did not even concern the expected testimony of any expected witness. Indeed, the complained of commentary did not even concern any trial in this case.

Defense counsel does not identify how this commentary makes it impossible to select a jury for a trial that is nowhere near imminent, as it is not even scheduled. Defense counsel does not identify how this commentary makes it impossible for the court to perform its adjudicative tasks. Defense counsel has no standing to bring this motion on behalf of non-parties.[2] Regardless and despite his lack of standing, defense counsel does not, as is the required threshold, identify any fact showing substantial likelihood of material prejudice with any imminent threat to the court's functioning in this trial.

## IV. ARGUMENT

### A. THE FIRST AMENDMENT PREVENTS THE SANCTIONS SOUGHT BY DEFENSE COUNSEL

In *Gentile v. State Bar of Nevada*, the Supreme Court held that an attorney's public statements were protected from sanction by the First Amendment. 501 U.S. 1030 (1991). "At the very least, our cases recognize that disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law." *Id.*

---

[2] Analogously, federal cases pertaining to discovery procedures are instructive, and outside of the context of a party claiming attorney-client privilege or some other personal right, <u>only persons to whom subpoenas are directed have standing to challenge their validity through a motion to quash</u>. *See, DeMarco v. Chomas, et. al,* 2008 U.S. Dist. LEXIS 90031 (E.D. Wis. 2008); *see also, Nova Products, Inc. v. Kosma Video,, Inc.,* 220 F.R.D. 238 (S.D. N.Y. 2004)(a party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right); *Transcor, Inc. V. Furney Charter, Inc.,* 212 F.R.D. 588 (D. Kan. 2003)(a motion to quash or modify a subpoena duces tecum may be made only where by the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena). If a party has no standing to quash a subpoena against a non-party, certainly a party has no standing to bring an allegation of ethical misconduct in Federal Court on behalf of a non-party. The County's attorney made no attempt to substantiate how any named party in this case will suffer any prejudice whatsoever, let alone how any Local or Supreme Court Rule was violated in relation to a party's right.

In *Gentile*, a lawyer called a district-wide press conference regarding his client's case. The lawyer, only six months away from a jury trial, made statements to the entire county's media about the core of the case the jury would face, likely reaching the entire potential jury pool and citing his inside information about the case. The counsel denounced the case as a fraud, accused the prosecutor of criminal conspiracy to frame a scapegoat, and even accused the other counsel of suborning perjury with a fake indictment to cover up for criminal crooked cops. Even with statements as powerful and inflammatory as this by the attorney, the Supreme Court unanimously determined the lawyer's conduct was protected speech for which he could not be Constitutionally punished. The Court held that counsel's obligations to his client neither start nor stop at the courtroom door; counsel must defend the client before and after leaving the courtroom doors, "including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried." *Id.* at 1043.

Additionally, the *Gentile* court barred sanctions upon an attorney's First Amendment rights to talk about the case absent a scienter element, namely that the record must show that the attorney "knew or reasonably should have known his remarks created a substantial likelihood of material prejudice." *Id.* Accordingly, without an evidentiary showing of a "real or specific threat to the legal process," lawyers' statements "have the full protection of the First Amendment." *Id.* at 1058.

Finally, regarding out-of-court statements by effective counsel:

> To the extent the press and public rely upon attorneys for information because attorneys are well-informed, this may prove the value to the public of speech by members of the bar. If the dangers of their speech arise from its persuasiveness, from their ability to explain judicial proceedings, or from the likelihood their speech will be believed, these are not the sort of dangers that can validate restrictions. The First Amendment does not permit suppression of speech because its power to command assent. *Gentile,* 501 U.S. at 1056-1057.

As the *Gentile* Court held, there must be a material showing of negative effect on the "administration of justice."

The Supreme Court also held in *Craig v. Harney,* 331 U.S. 367 (1947), that "the unequivocal command of the First Amendment serves a constant reminder that freedom of speech and of the press should not be impaired . . . unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice." "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." *Id.* at 367. The alleged violations here come nowhere remotely close to standards set forth in *Craig*.

In *Sawyer*, a disciplinary charge was made against an attorney who made publicly disparaging comments about the presiding judge <u>during the trial</u>. The attorney questioned the judge's impartiality and judicial integrity. On appeal to the U.S. Supreme Court, the Court held that an attorney can question judicial integrity, the law at issue, law enforcement agencies, the government and prosecution "even to suggest wrongdoing on their part." *See*: *In re: Sawyer*, 360 U.S. 622, 631 (1959).

In *Lawyer Regulation Sys. v. Williams,* a lawyer wrote multiple letters disparaging the other side, without informing opposing counsel, to the press concerning his case at issue. There, a referee concluded that the communication did not violate SCR **20:3.6**, and the Wisconsin Supreme Court affirmed the referee's finding. 692 N.W.2d 633, 637-39 (Wi. 2005). Although the referee found that writing the letters violated the "offensive personality" prohibition in the Rules of Professional Conduct, the Supreme Court reversed holding that even acidic, argumentative, arrogant and condescending rhetoric does not necessarily violate the Rules of Professional Conduct, even when written to the press. *Id.* Notably, in *Williams,* the Wisconsin Supreme Court held that had Attorney Williams developed a more in-depth First Amendment argument, the court would have gladly heard

it. *Id.* at footnote 4. Here, plaintiff's attorney indicated nothing offensive about a convicted felon or a former sheriff where many people died in custody during a very short time period. Counsel provided, in essence, nothing more than a summary of what was in the public record.

Unlike *Gentile*, counsel here did not make statements in proximity of an upcoming jury trial. Unlike *Gentile*, counsel here did not call a large press conference, invite the entire local press, and/or speak to an audience that likely included the entire jury pool. And, unlike *Gentile*, counsel here did not accuse opposing counsel of suborning perjury, faking indictments, scapegoating his innocent client for criminals, or covering up for crooked cops. At every instance, the conduct in *Gentile* was to the Nth degree more extreme and aggressive then the alleged misconduct in the instant case. Yet, the Supreme Court agreed in unison that no court could punish or prohibit *Gentile*'s speech with any kind of sanction. If *Gentile*'s far more aggressive, demeaning and repeated conduct could not constitute a basis for court orders/sanctions, then it is wholly inconceivable that plaintiff's counsel's conduct here would suffice for sanctions, let alone the County's intended motion practice without standing.

The behavior in *Sawyer* also was far more aggressive and inflammatory than plaintiff counsel's conduct in the instant case. Here, plaintiff's counsel's comments were not even about current parties to this case–No comments were made during the course of a trial (as there has not been a date set), and there has been zero explanation by the County as to how any of the public comments would actually affect the County defendants' ability to get a fair trial. The County's motion fails for its inability to show how any of plaintiffs' counsel's comments were either serious or an imminent threat to the administration of justice. The County Defendants do not even try.

Defense counsel unashamedly and inexplicably attempts to use the rules of ethics as a sword. In their hands this sword seeks this court to slash at and discipline plaintiff's counsel; to stab at the foundation of the First Amendment, and; to do all of this not because of any violation of the rules

of ethics that are operative as sanctionable, but because defense counsel simply, nakedly, and unashamedly, seeks desperately to silence any credible voice directing attention to the horrendous and insidious mismanagement of Milwaukee jails where people died regularly under Clarke and Evan's watch. This is precisely what the shield of the First Amendment protects: "To the extent the press and public rely upon attorneys for information because attorneys are well-informed, this may prove the value to the public of speech by members of the bar.'" *Gentile,* 501 U.S. at 1056-1057

## V.  CONCLUSION.

The U.S. and Wisconsin Supreme Court both hold that the type of conduct as alleged by the County are not the type of statements that are subject to attorney discipline under the Rules of Professional Conduct. Because the County's motion is deficient on its face for the failure to allege how the conduct may substantially, materially, and imminently, impair the administration of justice for the actual parties to the case, and because the U.S. Supreme Court has established a broad interpretation of an attorney's right to free speech as protected by the First Amendment, the County's motion should be denied in all respects and further relief awarded as deemed necessary by this Court.

Dated at Wauwatosa, Wisconsin this 24th day of July, 2019.

        Respectfully Submitted,

        Barnes Law
        By: s/ Robert E. Barnes