# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

**ESTATE OF LALIAH SWAYZER, *et al.*,**

                 **Plaintiffs,**

                                                   Case No. 16-CV-1703

v.

**DAVID A. CLARKE, JR., *et al.*,**

                 **Defendants.**

## COUNTY DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION TO REPRIMAND ATTORNEY GENDE

### I.    INTRODUCTION

Attorney Gende's brief in opposition is astounding for its lack of appreciation of the seriousness of his conduct and for its misapplication of constitutional law. Ignoring the fact that the Court has previously expressed its concern about his conduct, he accuses the County Defendants of "us[ing] the rule of ethics as a sword" to "slash at" him and "stab at" the First Amendment. See Resp. Brief (Doc. No. 331) at 12-13. Relying on a dubious interpretation of United States Supreme Court precedents, he challenges the fundamental premise of SCR 20:3.6 and the Model Rules of Professional Conduct that an attorney's public comments may be limited at all. Mr. Gende's argument demonstrates that he is, once again, unwilling to reflect on his own conduct as a cause of concern for the Court or to accept that he is limited in his professional activities by any ethical constraint. The case for reprimanding Mr. Gende and directing him to apprise himself of SCR 20.3.6 and abide by it is stronger than ever.

1

## II.     MR. GENDE VIOLATED WISCONSIN SUPREME COURT RULE 20.3.6

While arguing vociferously (and misleadingly) against the fundamental premise that SCR 20.3.6 is enforceable, Mr. Gende offers little to dispute the fact that his public comments violated the rule as it is written.  He is forced to acknowledge that he is a "lawyer who is participating" in a matter before the Court who made public comments about the "character, credibility, reputation [and] criminal record" of a party or witness.  See SCR 20.3.6(a), (b)(1).  The rule presumes that statements of that nature are likely to prejudice the proceeding.  Id.  Mr. Gende offers nothing to rebut the presumption of material prejudice.  See Resp. Brief (Doc. No. 331), *passim*.  His conduct plainly falls within the scope of the rule.

Mr. Gende suggests that his recent manipulation of the parties he sued should excuse the violation.  Id. at 8.  Specifically, Mr. Gende took steps to allow him to represent that "neither Clarke nor Evans are currently party to this case."  Id.  Clearly, an ethical violation is not adequately remedied by after-the-event conduct.  When Mr. Gende's comments aired, Milwaukee County and David Clarke were both defendants in this matter.  See Third Am. Compl. (Doc. No. 146).  A proposed Fourth Amended Complaint (Doc. No. 263-1) had been filed in which Mr. Gende sought to add Nancy Evans as a defendant.  A mere three weeks later, Mr. Gende entertained a press interview about his Complaint, publically airing his criticism of Mr. Clarke and Ms. Evans.

Plaintiffs subsequently dismissed Mr. Clarke and revised their Fourth Amended Complaint to not include Ms. Evans.  No reason was offered for reversing course after having sought (and gained) Ms. Evans' inclusion in the lawsuit.  It appears to be an attempt at avoidance for Mr. Gende.  Regardless, their current status is irrelevant; Mr. Gende's comments violated SCR 20:3.6 when they were made.  Further, both Mr. Clarke and Ms. Evans are likely to be witnesses at trial

2

of this matter relating to the expansive Monell claims pled against Milwaukee County.  See SCR 20:3.6(b)(1) (noting comments about a witness are assumed to be materially prejudicial).

Mr. Gende also argues his statements were beyond the scope of SCR 20.3.6 because they allegedly addressed information "in a public record." See Resp. Brief (Doc. No. 331) at 3.  He wrongly conflates this with "matter[s] of public record." Id. at 5-6.  Comments on "matters of public record" are not exempted from discipline; statements about "information contained in a public record" are.  See SCR 20:3.6(c)(a)(2).  Plaintiffs cite no cases showing a deposition is a "public record" because an attorney gave it to a media outlet.  It was not "[a] record or statement of a public office" as used in F.R.E. 803(8).  It had not previously been the subject of any public disclosure.  Rather, Attorney Gende provided it to a reporter, along with his view of the testimony, for the very reason that it would be widely disseminated.

### III.     MR. GENDE MISSTATES THE LAW

The crux of Mr. Gende's response appears to be a legal challenge to the Court's authority to reprimand an attorney practicing before it and an attack on SCR 20.3.6 (and the Model Rule on which it is based) as unconstitutional on its face.  Specifically, Mr. Gende asserts he cannot be disciplined unless his comments constitute a "clear and present danger or a serious and imminent threat" to the administration of justice – a higher threshold than the "substantial likelihood" test in SCR 20.3.6.  See Resp. Brief (Doc. No. 331) at 4-7.  Both arguments are seriously flawed.  As noted below, Mr. Gende's constitutional interpretation is an indefensible misrepresentation of First Amendment precedents.

#### A. The Court is Authorized to Reprimand and Sanction Attorney Misconduct.

Mr. Gende argues initially that the Court is authorized to enforce its orders or the rules of procedure only, not the rules of professional conduct.  See Resp. Brief (Doc. No. 331) at 2. He

3

dismisses General Local Rule 83(d), suggesting the Court would be beyond its authority in granting the motion. Id. The argument is another troubling demonstration of Mr. Gende's refusal to accept professional boundaries.

General Local Rule 83(d) provides that "[a]ttorneys practicing before this Court are subject to the Wisconsin Rules of Professional Conduct for Attorneys" and that "any attorney who violates those standards of conduct may be barred from practice before this Court, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the Court may deem proper." Mr. Gende's suggestion that the Court lacks authority to enforce SCR 20.3.6 by reprimand is a both a renunciation of his oath and a fundamental challenge to the ability of the Court to preside over matters before it. He cites no authority for the proposition that district courts may not enforce professional standards by reprimanding counsel for transgressions.

Mr. Gende also asserts, without basis, that the County Defendants are "feigning standing" and the motion is being pursued by "defense counsel" rather than the parties that are aggrieved by his conduct, *i.e.*, the County Defendants, Ms. Evans and Mr. Clarke. See Resp. Brief (Doc. No. 331) at 2. This deflection of personal responsibility is revealing. Mr. Gende fails to appreciate that ethical conduct is expected to be self-policing and not an adversarial process that requires "standing." Mr. Gende's media interview was, in fact, brought to the attention of the Court as "an additional development" bearing on a matter currently before the Court: Plaintiffs' motion to amend the complaint. See Suppl. Brief (Doc. No. 270) at 2. The County Defendants did not seek sanctions against Mr. Gende until the Court expressed its concerns for his conduct. Id.

### B. Mr. Gende Misrepresents the *Gentile* Decision

Seeking to avoid application of SCR 20.3.6, Mr. Gende argues that the rule infringes upon his constitutional rights because it does not require a "clear and present danger" or "a serious and

4

imminent threat" to the Court's administration as a threshold for enforcement. See Resp. Brief (Doc. No. 331) at 9, *et seq.* He suggests that the U.S. Supreme Court has established that standard.

Mr. Gende's discussion of Gentile v. Nevada Bar, 501 U.S. 1030 (1991), mangles this important decision beyond recognition. The assertion, for example, that the Supreme Court "unanimously determined the lawyer's conduct was protected speech for which he could not be Constitutionally [*sic*] punished", Resp. Brief (Doc. No. 331) at 10, reveals a fundamental misunderstanding of the Court's decision. In fact, the Supreme Court held in Gentile that a lawyer's speech could be limited consistent with the First Amendment using the same standard as SCR 20:3.6. See Gentile, 501 U.S. at 1063 ("We conclude that the 'substantial likelihood of material prejudice' standard applied by Nevada and most other States satisfies the First Amendment"). The suggestion that the Court found the conduct at issue to be constitutionally protected is simply not true.

Mr. Gende suggests the Court in Gentile issued a single, undivided controlling opinion that supports his position. A more careful reading reveals that the Supreme Court issued two separate opinions, one by Justice Kennedy and one by Chief Justice Rehnquist, with only certain portions of each having sufficient support to constitute a controlling opinion of the Court. Only Parts III and VI of Justice Kennedy's opinion and Parts I and II of Chief Justice Rehnquist's opinion are controlling. Id. at 1032, 1062. The remaining passages do not constitute an opinion of the Court, but are merely an opinion of the drafting Justice. Mr. Gende quotes Gentile ten times, drawing from pages 1032-45, 1054, 1056-58, and 1075 of the opinion and repeatedly referring to the quoted passages as a holding of the Court. Of those ten quotes, however, only one (their reference to Part II of Chief Justice Rehnquist's opinion at page 1075) is from a controlling opinion of the Court. As discussed below, even that reference is marred by selective quotation meant to conceal the

5

portion of the Court's reasoning relevant to this case. In short, every passage of <u>Gentile</u> cited by Mr. Gende is from non-controlling portions of the case, irrelevant, or thoroughly misused.

Part I of Chief Justice Rehnquist's opinion – a controlling opinion of the Court – provides the relevant facts: an attorney held a press conference after his client was indicted in which he disparaged the police, accused officers of misconduct, and attacked the credibility of the victims. <u>Gentile</u>, 501 U.S. at 1063. The Nevada Supreme Court found the attorney violated a state rule governing trial publicity. <u>Id.</u> at 1065.[1] Part III of Justice Kennedy's opinion – a controlling opinion of the Court – held the Nevada rule's <u>safe harbor language</u>, which allowed a lawyer to "state without elaboration … the general nature of the … defense", was void for vagueness <u>as interpreted by the Nevada Supreme Court</u>. <u>Id.</u> at 1048. Justice Kennedy explained the rule "misled petitioner into thinking that he could give his press conference without fear of discipline" and failed to provide fair notice as to what attorney speech was proscribed. <u>Id.</u> at 1048-49. For that reason alone, the lower court's judgment was reversed in Part VI of Justice Kennedy's opinion, an opinion of the Court. <u>Id.</u> at 1058. Notably, the Wisconsin rule does not contain the "general nature" language the Court found objectionable. <u>See</u> SCR 20:3.6(c)(a)(1).

Part II of Chief Justice Rehnquist's opinion – a controlling opinion of the Court – rejected the attorney's argument that First Amendment protections for the press should be extended to lawyer speech. <u>Id.</u> at 1065. Chief Justice Rehnquist observed that 32 states used the "substantial

---

[1] The Nevada Supreme Court Rule 177 governing trial publicity is strikingly similar to that of Wisconsin. It states, "[a] lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding." <u>Gentile</u>, 501 U.S. at 1060. This includes statements as to "(a) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness." <u>Id.</u> at 1061. Wisconsin Supreme Court Rule 20:3.6 is very similar.

6

likelihood of material prejudice" test for attorney speech, 11 used the "reasonable likelihood" test, and five applied some form of the "clear and present danger" standard. Id. at 1068. The Court specifically stated the "clear and present danger" test was more stringent than the "substantial likelihood" standard it found constitutional. Id. ("When the Model Rules of Professional Conduct were drafted in the early 1980's, the drafters did not go as far as the revised fair trial-free press standards [which adopted the 'clear and present danger' test] in giving precedence to the lawyer's right to make extrajudicial statements when fair trial rights are implicated, and instead adopted the 'substantial likelihood of material prejudice' test."). The "reasonable likelihood" test was also described as "less protective of lawyer speech" than the "substantial likelihood" standard. Id.

The attorney in Gentile argued – similar to Mr. Gende – that there must be a "'clear and present danger' of 'actual prejudice or an imminent threat' before any discipline may be imposed on a lawyer" for statements to the press and claimed the "substantial likelihood of material prejudice" used in both the Nevada and Wisconsin rules was facially unconstitutional. Id. at 1069, 1069 n. 4; Resp. Brief (Doc. No. 331) at 4, 5, 6, 9, 11, 12. He relied – like Mr. Gende – on cases such as Craig v. Harney, 331 U.S. 367 (1947), which addressed restraints on newspapers and others for publications by applying the "clear and present danger" standard, not statements by lawyers involved in pending cases. Id. at 1069-70; Resp. Brief (Doc. No. 331) at 4.

Chief Justice Rehnquist noted that, in prior cases addressing lawyers' speech, the Court "expressly contemplated that the speech of those participating before the courts could be limited." Id. at 1072 (emphasis in original). The Supreme Court reaffirmed the principle that "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press…" Id. at 1074. In other words, the "clear and present danger" standard was inapplicable to the regulation lawyer speech. Further, the Court

7

"agree[d] with the majority of the States that the 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." Id. at 1075.

Mr. Gende's sole reference to a controlling portion of the Gentile opinion comes from Part II of Chief Justice Rehnquist's opinion. He states "'[m]aterial prejudice' in this context, means conduct 'likely to influence a trial's outcome' in an impermissible manner. Id. at 1075." See Resp. Brief (Doc. No. 331) at 3. Mr. Gende's quotation demonstrates an extraordinary lack of candor as it omits the portion of the opinion relevant here. The Chief Justice actually stated:

> When a state regulation implicates First Amendment rights, the Court must balance those interests against the State's legitimate interest in regulating the activity in question. The 'substantial likelihood' test embodied in Rule 177 is constitutional under this analysis, for it is designed to protect the integrity and fairness of a State's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech. The limitations are aimed at two principal evils: (1) comments that are <u>likely to influence the actual outcome of the trial,</u> and (2) comments that are <u>likely to prejudice the jury venire, even if an untainted panel can ultimately be found</u>.

Id. (internal citations omitted) (emphasis added). It is the second prejudice, a jury pool tainted by Mr. Gende's statements through mass media dissemination, which is the focus here. See County Defs.' Supp. Brief (Doc. No. 270) at 3-6; Transcript of Telephonic Hearing (Doc. No. 311) at 5:22-7:4; County Defs.' Brief (Doc. No. 318) at 6. As stated by the Chief Justice,

> [f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right. <u>Even if a fair trial can ultimately be ensured through *voir dire*, change of venue, or some other device, these measures entail serious costs to the system.</u> <u>Extensive *voir dire* may not be able to filter out all of the effects of pretrial publicity, and with increasingly widespread media coverage of criminal trials, a change of venue may not suffice to undo the effects of statements such as those made by petitioner.</u> The State has a substantial interest in preventing officers of the court, such as lawyers, from imposing such costs on the judicial system and on the litigants.

Gentile, 501 U.S. at 1075 (internal citations omitted) (emphasis added). These are the precise concerns that gave rise to the present motion. See County Defs.' Supp. Brief (Doc. No. 270) at 6;

8

County Defs.' Brief (Doc. No. 318) at 6. Contrary his assertions, Gentile unequivocally upheld regulating lawyer speech under the standard used in Wisconsin and supports this Court's authority to sanction Mr. Gende and direct him to refrain from further violations of his ethical obligations.

### C. Mr. Gende's Citations to other Cases are Similarly Flawed

In addition to misusing Gentile, Mr. Gende's references to other cases are unsound as they reflect the pre-Gentile state of the law and apply the "'clear and present danger' of 'actual prejudice or an imminent threat'" standard specifically rejected by the Supreme Court for lawyer speech. He argues "six decades" of precedent hold that lawyer speech may only be proscribed where it creates a danger of imminent and substantial harm. See Resp. Brief (Doc. No. 331) at 4, 11. There could not be a more fundamental misstatement of the Court's holding in Gentile.

Mr. Gende relies, for example, on this passage from Craig v. Harney, 331 U.S. 367 (1947): "'the unequivocal command of the First Amendment serves a constant reminder that freedom of speech and of the press should not be impaired … unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice.'" Id. (quoting Craig, 331 U.S. at 373). He notes that the Court stated "'[t]he vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil.'" See Resp. Brief (Doc. No. 331) at 11 (quoting Craig, 501 U.S. at 376). However, he fails to note the petitioners were a publisher, editorial writer, and reporter sentenced to three days incarceration after publishing stories criticizing a judge. Craig, 331 U.S. at 368-70. The Supreme Court explicitly rejected the invitation to extend the "clear and present danger" and "serious and imminent threat" standards used in Craig

9

to attorney speech and instead held the "substantial likelihood of material prejudice" standard sufficient under the First Amendment. Gentile, 501 U.S. at 1063, 1069-1076.

Mr. Gende also cites pre-Gentile decisions from this circuit, suggesting they are controlling. See Resp. Brief (Doc. No. 331) at 4-5 (discussing Chase v. Robson, 435 F.2d 1059 (7th Cir. 1970) and In re Oliver, 452 F.2d 111 (7th Cir. 1971)). Chase involved a gag order barring all counsel and criminal defendants from making any public statement "regarding the jury or jurors in this case, prospective or selected, the merits of the case, the evidence, actual or anticipated, the witnesses, or the rulings of the court." 435 F.2d at 1060. The Seventh Circuit held "that before a trial court can limit defendants' and their attorneys' exercise of first amendment rights of freedom of speech, the record must contain sufficient specific findings by the trial court establishing that defendants' and their attorneys' conduct is 'a serious and imminent threat to the administration of justice.'" Id. at 1061 (quoting Craig, 331 U.S. at 373). See Resp. Brief (Doc. No. 331) at 4-5. Mr. Gende claims "[w]ithout specific findings a lawyer's statement posed a 'clear and present danger' to the ability of the court to perform its tasks, a judge's sanction order was 'constitutionally impermissible' and compelled madamus. Chase v. Robson, 435 F.2d 1059, 1061 (7th Cir. 1970)." See Resp. Brief (Doc. No. 331) at 4-5. He misrepresents the law by convenient omission. The court actually stated,

> [a]pplying either the standard that the speech must create a "clear and present danger," … of a serious and imminent threat to the administration of justice, or the lesser standard that there must be a "reasonable likelihood," … of a serious and imminent threat to the administration of justice, we hold that the trial court's order is constitutionally impermissible.

Chase, 435 F.2d at 1061 (internal citations omitted) (emphasis added). Thus, the Seventh Circuit did not mandate a "clear and present danger" standard as claimed, but also countenanced the use of the "reasonable likelihood" standard, a "lesser standard."

10

In re Oliver involved attorney comments to the press relating to a court policy statement. 452 F.2d at 112. That policy statement was "[a] blanket prohibition … against all comment in all cases whether tried before a judge or jury without regard to whether such comment is or even could be prejudicial to the fair administration of justice…" Id. at 114-15 (emphasis added). As the policy was not limited to statements causing prejudice, it was unconstitutional. Id.

Chase and In re Oliver pre-date Gentile by 20 years. They rely on the "clear and present danger" and "serious and imminent threat to the administration of justice" standards established by Craig for regulating the press. See Chase, 435 F.2d at 1061; In re Oliver, 452 F.2d at 114. The Supreme Court refused to extend the stringent standards for press regulation to attorney speech and instead held the "substantial likelihood of material prejudice" standard to be sufficient protection for lawyers under the First Amendment. Gentile, 501 U.S. at 1063, 1069-1076. To the extent they apply a more rigorous standard which was rejected by the Supreme Court in Gentile, Chase and In re Oliver cannot be considered controlling.

Mr. Gende next turns to Chicago Council of Lawyers v. Bauer, 522 F.2d 242 (7th Cir. 1975), claiming a court must find a "serious and imminent threat" before limiting attorney speech. See Resp. Brief (Doc. No. 331) at 5. Again, this was rejected 16 years later by the Supreme Court's holding that the "substantial likelihood of material prejudice" standard provides "a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." Gentile, 501 U.S. at 1075. Mr. Gende states "speech-regulating rules 'must be neither vague nor overbroad.'" See Resp. Brief (Doc. No. 331) at 5 (quoting Bauer, 522 F.2d at 249). However, the Supreme Court determined that the "substantial likelihood of material prejudice" standard found in SCR 20:3.6 is neither vague nor overbroad, but "imposes only narrow and necessary limitations on lawyers' speech." Gentile, 501 U.S. at 1075.

11

As is his habit, Mr. Gende distorts Bauer. He claims "[e]ven statements that 'impair the orderly and fair administration of justice in a pending case' cannot be restricted or sanctioned given the paramount interest of free speech." See Resp. Brief (Doc. No. 331) at 5 (quoting Bauer, 522 F.2d at 249). The Seventh Circuit was not nearly so expansive. Instead, the Bauer court stated

> [w]e should keep in mind that extrajudicial comments which might impair the orderly and fair administration of justice in a pending case must be measured as other utterances are measured that are proscribed by reason of a countercompelling governmental interest. The limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.

522 F.2d at 249 (internal citations and quotation marks omitted). Thus, the Court of Appeals recognized that limitations on an attorney's First Amendment rights were permissible.

Mr. Gende also cites In re Goode, 821 F.3d 554 (5th Cir. 2016). See Resp. Brief (Doc. No. 331) at 6. In re Goode involved the sanction of a lawyer who was not counsel for any of the parties in a criminal matter and who commented to the media on developments in the case. 821 F.3d at 555. Mr. Gende again advances unfounded arguments through egregiously misleading quotation. He claims In re Goode endorsed the "clear and present danger or a serious and imminent threat" standard. See Resp. Brief (Doc. No. 331) at 6 (quoting In re Goode, 821 F.3d at 560). The court actually stated that while "typical" prior restraint cases required a finding "the restrained activity poses either a clear and present danger or a serious and imminent threat", Fifth Circuit precedent "lowered the 'showing of harm necessary' to impose a prior restraint on trial participants" to statements that "'would present a 'substantial likelihood' of prejudicing the court ability to conduct a fair trial…'" In re Goode, 821 F.3d at 560 (quoting United States v. Brown, 218 F.3d 415, 425, 427 (5th Cir. 2000)). Mr. Gende is flatly wrong, therefore, in asserting that,

> [f]ollowing the Seventh Circuit, the Fifth Circuit reiterated that blanket prohibitions on categories of attorney speech cannot meet Constitutional muster unless "the particular statement posed a serious and imminent threat of interference with a fair

12

trial." In re Goode, 821 F.3d 554, 561 (5th Cir. 2016) (quoting Chi. Council of Lawyers v. Bauer, 522 F.2d 242, 251 (7th Cir. 1975).

See Resp. Brief (Doc. No. 331) at 6. The court was not adopting the "serious and imminent threat" standard, but reiterating that First Amendment restrictions must be narrowly tailored. In re Goode, 821 F.3d at 561. The Fifth Circuit, consistent with Gentile, stated the less protective "substantial likelihood" and "meaningful likelihood" tests applied and rejected the "clear and present danger or a serious and imminent threat" test repeatedly advanced by Mr. Gende. In re Goode, 821 F.3d at 560-61.

Mr. Gende's discussion of In re Sawyer, 360 U.S. 622 (1959), is, likewise, flatly incorrect. He suggests that the Supreme Court decided a First Amendment issue when, in fact, it did "not reach or intimate any conclusion on the constitutional issues" raised by the parties in their briefing, which touched on Craig and other press regulation cases. Id. at 626-27. Rather, the Supreme Court examined the record and determined that evidence did not support the lower court's finding on a fact issue. Id. at 626-31 ("We conclude that there is no support for any further factual inference than that petitioner was voicing strong criticism of Smith Act cases and the Government's manner of proving them, and that her references to the happenings at the Honolulu trial were illustrative of this, and not a reflection in any wise upon Judge Wiig personally or his conduct of the trial.").

Finally[2], Mr. Gende's reference to Lawyer Regulation Sys. v. Williams (In re Williams), 692 N.W.2d 633 (2005) is unpersuasive. He falsely claims, "in Williams, the Wisconsin Supreme

---

[2] The County Defendants could find no opinion for Moore v. Morales, 2007 WL 9757981 (N.D. Ill. 2007). See Resp. Brief (Doc. No. 331) at 6. As he used a commercial database citation, Defendants assume Moore is an unpublished opinion that Mr. Gende failed to provide in accordance with Local Rule 7(j)(2). As such, the County Defendants cannot respond his arguments regarding Moore, a case that would not be controlling upon this Court in any event.

13

Court held that had Attorney Williams developed a more in-depth First Amendment argument, the court would have gladly heard it. Id. at footnote 4." See Resp. Brief (Doc. No. 331) at 11-12. Footnote 4, in fact, states, "[i]n his brief Attorney Williams raised a First Amendment argument but failed to develop it. We therefore decline to reach the question of whether, or to what extent, the letters at issue might be entitled to First Amendment protection." In re Williams, 692 N.W. at 639 n.4 (emphasis added). The implication that the Wisconsin Supreme Court signaled it would "gladly" review SCR 20:3.6 under the First Amendment is completely unfounded. This is in contrast to In re Disciplinary Proceedings against Eisenberg, 144 Wis. 2d 284 (1988), where the court held that SCR 20.41[3] "strikes an appropriate balance between a lawyer's right of free speech and an accused's right to a fair trial; further, it promotes the public's interest in the fair administration of justice." Id. at 301.

---

[3] While the disciplinary charge was brought under SCR 20.41, this rule was replaced by the 1988 adoption of SCR 20:3.6. See In re Disciplinary Proceedings against Eisenberg, 144 Wis. 2d at 295 n. 2, 299 n. 3 ("The current rule, SCR 20:3.6, which replaced SCR 20.41, lists substantially the same kind of information set forth in former SCR 20.41(2) and considers it 'ordinarily likely' to have a 'substantial likelihood of materially prejudicing an adjudicative proceeding.'").

## IV. CONCLUSION

In conclusion, Mr. Gende should be reprimanded for his extrajudicial media statements, instructed to refrain from further media comments that may violate SCR 20:3.6, and ordered to pay the County Defendants' costs and fees associated with this motion.

Respectfully submitted,

**LEIB KNOTT GAYNOR LLC**

Dated: August 7, 2019   By:   */s/ Charles R. Starnes*
Charles R. Starnes, SBN 1113293
Douglas S. Knott, SBN 1001600
Attorneys for County Defendants
219 N. Milwaukee Street, Suite 710
Milwaukee, WI 53202
Telephone (414) 276-2102
Fax (414) 276-2140
Email: dknott@lkglaw.net
　　　　cstarnes@lkglaw.net