UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| THE ESTATE OF LALIAH SWAYZER; SHADE SWAYZER; DIANE RUFFIN; and CHARLENE RUFFIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 16-CV-1703 |
| DAVID J. CLARKE JR; et al. | ) ) ) | |
| Defendants. | ) | |

**Defendants Gulsen, White, and Meine's Proposed Findings of Fact In Support of Their Motion for Summary Judgment**

Defendants, Dr. Gulsen, Dr. White, and Nurse Meine, by their counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rules 7 and 56, hereby submit the following Proposed Findings of Fact in support of their Motion for Summary Judgment.

**Statement of Proposed Facts**

1–84. To reduce the parties' and this Court's burden on reviewing summary judgment briefing, Defendants hereby adopt Statements 1–84 of Defendants' joint Proposed Facts submitted for purposes of their summary judgment motion on causation (ECF No. 302), as if fully set forth herein.

84. On July 6, 2016, Ms. Swayzer was arrested for a violation of her probation. (Skarpiak Decl. Ex. 1 (Swayzer deposition excerpts) at 18:4–11).

88. At the time of her arrest, Ms. Swayzer was approximately 36 weeks pregnant. (Dr. Edwards Decl. Ex. A at 3).

89. Ms. Swayzer had given birth to two children prior to being pregnant with Laliah Swayzer. (Dr. Edwards Decl. Ex. A at 1).

90. Prior to her arrest on July 6th, Ms. Swayzer had presented to medical providers at Aurora Health Care in June 2016 due to concerns that she had regarding her pregnancy.

91. Ms. Swayzer also advised providers at Aurora Health Care that while she provided risperidone for her mental health, she had stopped taking the medication, and that decision was approved by her behavioral health provider. (Dr. Edwards Decl. Ex. A at 1).

92. Aurora Health Care providers determined that Ms. Swayzer had a stable pregnancy, and Ms. Swayzer was provided discharge information from Aurora Health Care that advised her to contact medical professionals if adverse or warning signs arose with respect to her pregnancy. (Dr. Edwards Decl. Ex. A at 1).

93. On July 6th, after being arrested, Ms. Swayzer was transported to Columbia St. Mary's Hospital, where she initially refused to answer provider questions regarding her pregnancy and refused fetal monitoring. (Dr. Edwards Decl. Ex. A at 1).

94. Providers at Columbia St. Mary's hospital accepted Ms. Swayzer's decision to refuse assessment of her pregnancy. (Dr. Edwards Decl. Ex. A at 1).

95. After Ms. Swayzer agreed to allow assessment of her pregnancy, providers at Columbia St. Mary's determined that her pregnancy was proceeding normally. (Dr. Edwards Decl. Ex. A at 1–2).

96. The national standard for Ms. Swayzer's pregnancy during the time period in question was for providers to conduct one week check-ups of the patient. (Dr. Edwards Decl. Ex. A at 3–4; Vanjani Decl., Ex. A at 3).

97. During those weekly check-ups, the provider assesses fetal heart rate, the size of the uterus, and obtain a history from the patient. (Dr. Edwards Decl. Ex. A at 4).

98. The weekly check-up is not considered an acute, urgent, or emergent situation and is a flexible date. (Dr. Edwards Decl. Ex. A at 4).

99. A pregnant female has inherent autonomy to decide when and if she desires to have a provider examine or intervene in her pregnancy, and plays a large role in advising providers of the progression of her pregnancy. (Dr. Edwards Decl. Ex. A at 4).

100. At the time of her incarceration, Ms. Swayzer was previously diagnosed with schizophrenia (paranoid type). (Dr. Hanus Decl. Ex. A at 3).

101. Females with schizophrenia may have episodes of psychosis, but many women with schizophrenia do go into remission, and do not require medications for long periods of time. (Dr. Hanus Decl. Ex. A at 5).

102. With respect to the period of incarceration at issue, Ms. Swayzer's mental health diagnosis did not render her incompetent to make decisions regarding her care or her pregnancy. (Dr. Hanus Decl. Ex. A at 3, 6).

103. Immediately prior to her incarceration, Ms. Swayzer demonstrated sufficient capacity to advocate and make decisions regarding her medical and mental health care, and these decisions were respected by outside providers. (Dr. Hanus Decl. Ex. A at 3, 4, 24).

104. Ms. Swayzer made the decision not to take the antipsychotic medication risperidone based upon potential harm to her child. (Dr. Hanus Decl. Ex. A at 5).

105. Such a decision is an appropriate one that is made by many pregnant females with schizophrenia. (Dr. Hanus Decl. Ex. A at 5).

106. In such instances, without an active showing of psychosis or incompetency, allowance of a pregnant female with schizophrenia to refuse antipsychotic medication is acceptable and in accordance with best medical practice. (Dr. Hanus Decl. Ex. A at 6).

107. During her incarceration at the Milwaukee County Jail, Ms. Swayzer demonstrated the ability to make autonomous decisions concerning herself and her pregnancy. (Dr. Hanus Decl. Ex. A at 6).

108. Ms. Swayzer agreed that she was "with it" in the jail. (Skarpiak Decl. Ex. 1 at 106:13–15).

109. Dr. White was not personally involved in Ms. Swayzer's care and was not made aware of any acute issues pertaining to Ms. Swayzer. (Skarpiak Decl. Ex. 2 (Dr. White deposition excerpts) at 187:17–188:1).

110. Dr. White's only direct involvement in Ms. Swayzer's case was a courtesy telephone call from Dr. Horton regarding placement in the Special Needs Unit. (Skarpiak Decl. Ex. 2 at 7:24–9:18).

111. Placement of Ms. Swayzer in Unit 4A would not detrimentally affect the care provided to her, either from a mental health or medical standpoint. (Skarpiak Decl. Ex. 2 at 188:2–188:6; Ex. 3. (Dr. Negrette deposition excerpts) at 185:25–186:4; Ex. 4 (Nurse Meine Deposition excerpts), at 45:10–19; 47:21–25).

112. On July 7, 2016, based upon the assessment that she was able to do, Ms. Meine determined that Ms. Swayzer was not experiencing any acute obstetric issues that required immediate or emergent care. (Skarpiak Decl. Ex. 4 at 304:22–305:10).

113. On July 11, 2016, based upon Ms. Swayzer's statements and her own observations, Ms. Meine determined that Ms. Swayzer was not experiencing obstetric complications. (Skarpiak Decl. Ex. 4 at 304:22–305:25).

114. On July 11, 2016, Ms. Meine contacted Dr. Negrette to advise that Ms. Swayzer was still in the facility. (Skarpiak Decl. Ex. 4 at 70:23–71:7).

115. Ms. Meine was never aware of any obstetrical complications with respect to Ms. Swayzer prior to her July 14th delivery. (Skarpiak Decl. Ex. 4 at 305:18–306:5).

116. Ms. Swayzer's placement on Unit 4A did not impact Ms. Meine's delivery of care to Ms. Swayzer. (Skarpiak Decl. Ex. 4 at 306:11–21).

117. Obstetric care is reliant upon the mother's compliance and cooperation to detect potential complications. (Edwards Decl. Ex. A at 6); (Vanjani Decl. Ex. A at 4).

118. On July 13, 2016, Dr. Gulsen intended on seeing Ms. Swayzer as per Dr. Horton's prior request. (Skarpiak Decl. Ex. 5 at 60:19–61:5).

119. However, Dr. Gulsen was called to assist with other patients that she determined to have a higher acuity than Ms. Swayzer. (Skarpiak Decl. Ex. 5 at 60:25–61:5).

120. While Dr. Gulsen does not recall the particular matters that arose on July 13th, she noted that there are a number of events that can occur in a jail on a daily basis, such as fights, withdrawal complications, and complications from high blood pressure or diabetes. (Skarpiak Decl. Ex. 5 at 60:19–61:5).

121. Because of the time it took to deal with those patients, Dr. Gulsen was unable to see Ms. Swayzer on July 13th. (Skarpiak Decl. Ex. 5 at 60:19–61:5).

**Expert Testimony**

122. Plaintiff's expert, Dr. Vassallo, only referred to Dr. White twice in her report. (Skarpiak Decl. Ex. 6, at 6 & 12).

123. Dr. Vassallo never read Dr. White's deposition, and agreed it would have been helpful in formulating her opinion. (Skarpiak Decl. Ex. 7 at 226:20–227:18).

124. Dr. Vassallo has never worked in a jail or prison. (Skarpiak Decl. Ex. 7, at 139).

125. Dr. Vassallo does not provide day-to-day psychiatric treatments, and defers to a psychiatric consultant for mentally ill patients that she encounters in the emergency room. (Skarpiak Decl. Ex. 7 at 155:8–20, 146:13–24)

126. Dr. Vassallo agreed that a psychiatrist would be in the best position to opine on standard of care questions regarding psychiatrists. (Skarpiak Decl. Ex. 7 at 202–03).

127. Dr. Vassallo admitted that she has not reviewed standards of care pertaining to mental health directors. (Skarpiak Decl. Ex. 7 at 240:10–22).

128. Dr. Vassallo admitted that she could not determine if Ms. Swayzer was actively psychotic while in the Milwaukee County Jail. (Skarpiak Decl. Ex. 7 at 238:16–20).

129. Dr. Vassallo has criticized Nurse Meine and Dr. Gulsen for not escalating Ms. Swayzer's care after she refused services. (Skarpiak Decl. Ex. 6 at 8–10).

130. Dr. Vassallo admitted that she would defer to a midwife or an obstetrician with respect to day-to-day obstetrical care. (Skarpiak Decl. Ex. 7 at 224:25–225:6).

131. Dr. Vassallo admitted that she is not familiar with ACOG guidelines for pregnancy and did not research guidelines for pregnant females at Ms. Swayzer's stage of pregnancy. (Skarpiak Decl. Ex. 7 at 89:6–90:8).

132. Dr. Vassallo claimed she was relying on "common sense" to critique Ms. Meine's care. (Skarpiak Decl. Ex. 7 at 244:16–25).

133. Defendants have asked Dr. Steven Hanus to review the case from a mental health perspective. Dr. Hanus is a board-certified psychiatrist and Distinguished Fellow of the American Psychiatric Association, and has been on faculty of the Northwest Feinberg School since 1982. (Dr. Hanus Decl. Ex. A at 2).

134. Dr. Hanus has opined that Ms. Swayzer maintained the capacity and ability to request care from providers throughout the period of incarceration in question. (Dr. Hanus Decl. Ex. A at 4, 6).

135. Dr. Hanus has opined that during the period of incarceration in question, Ms. Swayzer received appropriate mental health assessment and treatment. (Dr. Hanus Decl. Ex. A at 6).

136. Dr. Hanus has opined that medical and mental health providers appropriately accepted Ms. Swayzer's decisions to refuse their care. (Dr. Hanus Decl. Ex. A at 4).

137. Defendants have asked Dr. Rodney Edwards to review the case from an obstetrics perspective. Dr. Edwards is board-certified in obstetrics, gynecology, and maternal-fetal medicine. He is a Professor of Maternal-Fetal Medicine at the University of Oklahoma College of Medicine and Director of Obstetric Services at OU Medical Center. (Dr. Edwards Decl., Ex. A at 1).

138. Dr. Edwards has opined that medical personnel at Milwaukee County Jail were right to accept Ms. Swayzer's decisions to refuse care. (Dr. Edwards Decl., Ex. A at 5).

139. Dr. Edwards has opined that given Ms. Swayzer's statements to providers, ability to advocate for care, and outward presentation meant that Ms. Meine's treatment plan to provide once-weekly check-ups, decision to refuse care, and ultimate decision to refer Ms. Swayzer to an outside provider was within the applicable standard of care. (Dr. Edwards Decl., Ex. A at 5, 6).

140. Dr. Edwards has opined that, based upon the presentation of Ms. Swayzer to staff at the Milwaukee County Jail, there was no reasonable basis for providers at the Jail to have been aware of a potential complication. (Dr. Edwards Decl., Ex. A at 6).

141. Dr. Edwards has opined that there was no reason for providers at the Jail to escalate care. (Dr. Edwards Decl., Ex. A at 5).

142. Dr. Edwards has opined that Dr. Gulsen's decision to defer an interaction with Ms. Swayzer until July 14th was an appropriate exercise of medical judgment and not a deviation from the standard of care. (Edwards Decl. Ex. A at 6).

143. Dr. Edwards has opined that it is unknown whether any obstetrical intervention would have been ultimately successful in Ms. Swayzer's case. (Dr. Edwards Decl., Ex. A at 6).

144. Defendants have asked Dr. Rachna Vanjani to review this case from an obstetrics and correctional care perspective. Dr. Vanjani is a board-certified obstetrician and gynecologist who has provided reproductive health care to women in detention facilities. (Dr. Vanjani Decl., Ex. A at 1).

145. Dr. Vanjani has opined that medical personnel at Milwaukee County Jail were right to accept Ms. Swayzer's decisions to refuse care. (Dr. Vanjani Decl. Ex. A at 1).

146. Dr. Vanjani has opined that the decision to implement one-week pregnancy check-ups was appropriate. (Dr. Vanjani Decl., Ex. A at 4).

147. Dr. Vanjani has opined that medical providers at the Jail "made great efforts to provide prenatal care to Ms. Swayzer." (Dr. Vanjani Decl., Ex. A at 4).

148. Dr. Vanjani has opined that medical providers at the Jail "went above the community standard to try and provide prenatal care to Ms. Swayzer. (Dr. Vanjani Decl., Ex. A at 4).

149. Dr. Vanjani has opined that based upon the presentation of Ms. Swayzer to staff at Milwaukee County Jail, there was no reasonable basis for providers to have been aware of an obstetrical complication. (Dr. Vanjani Decl., Ex. A at 4).

150. Dr. Vanjani has opined that it is unknown whether any obstetrical intervention would have been ultimately successful in Ms. Swayzer's case. (Dr. Vanjani Decl., Ex. A at 6).

Respectfully submitted,
CUNNINGHAM, MEYER & VEDRINE, P.C.

By: /s/ Chad M. Skarpiak
One of the Attorneys for Defendants

Michael R. Slovis
Chad M. Skarpiak
CUNNINGHAM, MEYER & VEDRINE, P.C.
1 East Wacker Drive, Suite 2200
Chicago, Illinois 60601
Tel: (312) 578-0049
cskarpiak@cmvlaw.com