## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

THE ESTATE OF LALIAH SWAYZER;  )
SHADE SWAYZER; DIANE RUFFIN; and  )
CHARLENE RUFFIN,  )
                   )
       Plaintiffs,  )
                   )
v.  )    Case No.:    16-CV-1703
                   )
DAVID J. CLARKE JR; et al.  )
                   )
       Defendants.  )

---

### Index of Unpublished Authorities for Defendants Gulsen, White, and Meine's Memorandum of Law in Support of Summary Judgment

1. *Chappel v. SBC-Ameritech*, No. 05 C 7003, 2007 U.S. Dist. LEXIS 51133, at *3 (N.D. Ill. July 13, 2007)

2. *Lexington Ins. Co. v. Horace Mann Ins. Co.*, N.D. Ill. No. 11-C-2352, 2015 U.S. Dist. LEXIS 120061, at *27 (N.D. Ill. August 27, 2015).


              Respectfully submitted,
              CUNNINGHAM, MEYER & VEDRINE, P.C.


              By: /s/ Chad M. Skarpiak
                    One of the Attorneys for Defendants

Michael R. Slovis
Chad M. Skarpiak
CUNNINGHAM, MEYER & VEDRINE, P.C.
1 East Wacker Drive, Suite 2200
Chicago, Illinois 60601
Tel: (312) 578-0049
cskarpiak@cmvlaw.com

# Chappel v. SBC-Ameritech

United States District Court for the Northern District of Illinois, Eastern Division

July 13, 2007, Decided; July 13, 2007, Filed

No. 05 C 7003

**Reporter**
2007 U.S. Dist. LEXIS 51133 *; 2007 WL 2076028

ROXANNE CHAPPEL, Plaintiff, v. SBC-AMERITECH, Defendant.

**Counsel:** [*1] For Roxanne Chappel, Plaintiff: Clara L. Larry, LEAD ATTORNEY, Clara L. Larry & Associates, Chicago, IL; Denise M. Mercherson, Denise M. Mercherson, Attorney at Law, Chicago, IL.

For SBC-Ameritech, Defendant: Christy Elenbaas Phanthavong, LEAD ATTORNEY, Bryan Cave LLP, Chicago, IL; William J. Wortel, Bryan Cave, Chicago, IL.

**Judges:** Nan R. Nolan, United States Magistrate Judge.

**Opinion by:** Nan R. Nolan

## Opinion

### MEMORANDUM OPINION AND ORDER

Defendant seeks exclusion of the report and expert testimony of Plaintiff's expert witness. For the reasons stated, Defendant's request is denied.

### I. Background

This is a disability discrimination and retaliation case arising from Plaintiff Roxanne Chappel's employment at Defendant's Credit & Collections facility located in Chicago Heights, Illinois. Chappel has multiple schlerosis, asthma, and suffers from depression. Dr. Piyusch Buch, a psychiatrist, treated Chappel for depression between February 26, 2004 and June 22, 2005. Chappel disclosed Dr. Buch as her expert witness in this case. After two extensions of time in which to provide Dr. Buch's expert report, Chappel provided Defendant with a letter from Dr. Buch. Dr. Buch's letter states:

> This letter is to verify that Ms. Roxanne [*2] Chappel was under my care between February 26, 2004 through June 22, 2005. I was seeing Ms. Chappel while she was attending the outpatient program at Little Company of Mary Hospital. Ms. Chappel's diagnosis was Major Depressive Disorder. The patient also had a history of asthma and multiple schlerosis.
> Ms. Chappel was working for SBC in the collections department, and was under a lot of stress from her job. I believe that the pressure she was under at work was exacerbating her

illness. She would be ill from her asthma or MS and would call in sick, then her manager would write her up for calling off too much, and she would have an anxiety attack because she would be afraid that she was going to lose her job.

It is my belief that the stress that her job was causing her had a direct impact on the severity of her depression.

Chappel also provided Defendant with a copy of Dr. Buch's curriculum vitae and her medical records from Little Company of Mary Hospital. Defendant contends that Dr. Buch's report fails to satisfy the requirements of Rule 26(a)(2) and that any expert testimony by Dr. Buch should be excluded as a sanction for violating Rule 26(a)(2)(B).


## II. Discussion

"[A]ll witnesses who [*3] are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)." Musser v. Geniva Health Services, 356 F.3d 751, 756 (7th Cir. 2004). If a witness is "retained or specially employed to provide expert testimony," she must submit an expert report complying with Rule 26(a)(2)(B). The written report shall contain (1) a complete statement of all opinions to be expressed and the basis and reasons therefor; (2) the data or other information considered by the witness in forming the opinions; (3) any exhibits to be used as a summary of or support for the opinions; (4) the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; (5) the compensation to be paid for the study and testimony; and (6) a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Fed. R. Civ. P. 26(a)(2)(B). Expert reports cannot be "sketchy, vague, or preliminary in nature." Salgado by Salgado v. Gen. Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998). Rather, expert reports must be "detailed and complete" so that "opposing counsel [*4] is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." Id.

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Thus, the "sanction of exclusion is 'automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.'" Nutrasweet Co. V. X-L Engineering Co., 227 F.3d 776, 785-86 (7th Cir. 2000). A Rule 37(c)(1) sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." Salgado, 150 F.3d at 740.

Defendant contends that Dr. Buch's report fails on each requirement of Rule 26(a)(2)(B). Chappel argues that Dr. Buch's report substantially complies with the report requirements of Rule 26(a)(2)(B). [1] Defendant's motion has merit. The expert report by Dr. Buch fails [*5] to comply with Rule 26(a)(2)(B) in various respects. Specifically, Dr. Buch's report does not include

---

[1] Chappel half-heartedly suggests for the first time in her sur-reply that Dr. Buch, as her treating psychiatrist, is exempt from the requirements of Rule 26(a)(2)(B). It is too late to raise this argument for the first time in a sur-reply because Defendant has been denied an opportunity to respond.

a list of Dr. Buch's publications for the preceding ten years, the compensation to be paid for his testimony, and a list of any other cases in which he has testified as an expert at trial or by deposition within the preceding four years in violation of Rule 26(a)(2)(B). No exhibits to be used as a summary of or support for Dr. Buch's opinion are attached to the report or referenced in the report. Dr. Buch's report also makes no mention of the data or other information he considered in forming his opinion except for stating that he treated Chappel for major depressive disorder between February 26, 2004 and June 22, 2005. Most egregious, Dr. Buch's report fails to sufficiently explain the basis and reasons for his opinions regarding causation (i.e., "I believe that the pressure she was under at work was exacerbating her illness" and "It is my belief that the stress that her job was causing her had a direct impact on the severity of her depression."). See Salgado, 150 F.3d at 741 n.6 (holding "[e]xpert reports must include 'how' and 'why' the expert reached a particular result, not merely [*6] the expert's conclusory opinions."). Chappel's statement in her supplemental interrogatory responses that the grounds for Dr. Buch's opinions are set forth in 141 pages of Chappel's medical records from Little Company of Mary Hospital and Dr. Buch's training and experience in psychiatry does not satisfy the first Rule 26(a)(2)(B) requirement.

Jenkins v. Bartlett, 487 F.3d 482 (7th Cir. April 23, 2007), cited by Chappel, does not compel a different finding. In Jenkins, the defendants had submitted an expert report in the form of a letter prepared by defendant's attorney. The letter identified two physicians as expert witnesses, provided each witness' curriculum vitae, and "stated the expected testimony and basis for that testimony, including the autopsy protocol which already had been provided to" the plaintiff. Id. at 488. The letter "was not prepared or signed by either physician" but "both [*7] physicians subsequently submitted affidavits adopting the contents of the letter." Id. On appeal, the plaintiff challenged the district court's finding that there had been substantial compliance with Rule 26(a)(2)(B). The Seventh Circuit upheld the district court's ruling because:

> With the exception of the physicians' signatures, the letter substantially complied with Rule 26(a)(2)(B). The letter stated the opinions to which the physicians would testify and the basis for those opinions, invited Ms. Jenkins' attention to the autopsy protocol which she already had received, disclosed prior testimony by Dr. Jentzen in federal court, and set forth the physicians' qualifications and publications in their respective curriculum vitae. Further, the plaintiffs cured the main defect in the expert report, the absence of the physicians' signatures, by submitting sworn affidavits from the physicians adopting the contents of the October 1, 2003 letter.

Id. at 488.

Jenkins and the present case are factually distinguishable. In Jenkins, the "main defect" in the expert report was technical; the report was unsigned. Here, the main defect is the failure to provide the basis and reasons for Dr. Buch's conclusions, [*8] the very heart of an expert disclosure. The Jenkins letter "stated the opinions to which physicians would testify and the basis for those opinions." Moreover, the Jenkins letter directed the plaintiff to the autopsy protocol she already had received and set for the physicians' publications and prior testimony. Here, Dr. Buch has not directed Defendant to any specific documents that support Dr. Buch's proposed testimony, but rather has broadly referenced 141 pages of medical records. No information has been provided with respect to Dr. Buch's publications and Chappel's response

to the motion indicates for the first time that Dr. Buch has provided no previous expert testimony. Chappel has also not provided the compensation Dr. Buch will be paid for his testimony. Finally, in Jenkins, the missing signature information was cured by submitting sworn affidavits from the physicians adopting the unsigned letter. Chappel has not undertaken to cure the missing basis and reasons for Dr. Buch's opinions or the missing publication and compensation information. Based on these significant differences, the Court concludes that Dr. Buch's report does not substantially comply with Rule 26(a)(2)(B).

Because [*9] Dr. Buch's expert report is seriously deficient, the Court has the authority, as requested by Defendant, to exclude Dr. Buch's opinion testimony under Rule 37(c)(1) unless the omissions were substantially justified and/or harmless. Chappel has not shown that Dr. Buch's incomplete report was substantially justified. Rather, Chappel takes the position that Dr. Buch's report substantially complies with Rule 26. Thus, no substantial justification has been established for the inadequacies of Dr. Buch's expert report.

Nevertheless, the Court concludes that the omissions in Dr. Buch's report are harmless. The prejudice to Defendant resulting from the failure to comply with Rule 26(a) can be cured by Defendant deposing Dr. Buch in the time remaining. James v. Marten Transport, Ltd., 2006 U.S. Dist. LEXIS 91768, 2006 WL 3755322, at *1 (N.D. Ind. Dec. 15, 2006) (denying exclusion of expert testimony based on deficient expert report because "[s]ubsequent information from Dr. Pawl at his deposition have made those non-disclosures harmless."). The basis and reasons for Dr. Buch's opinions and the other missing items listed in Rule 26(a)(2)(B) can be fully explored at a deposition of Dr. Buch. Defendant's expert disclosures [*10] have not occurred. No expert discovery cut-off has been set, no pretrial order deadline exists, and no trial has been scheduled.

Defendant can adequately prepare for Dr. Buch's deposition with the information already available. Defendant has Dr. Buch's curriculum vitae, Chappel's medical records from Little Company of Mary Hospital, and notice of Dr. Buch's causation opinions. Counsel shall work together to schedule Dr. Buch's deposition as soon as possible. Defendant's expert disclosures are due within 30 days after Dr. Buch's deposition. Any rebuttal opinions by Dr. Buch are due within 14 days after Defendant's expert disclosures. Plaintiff may take the deposition of Defendant's expert witness within 14 days after the disclosure of any rebuttal opinion by Dr. Buch.

Chappel's lawyer (Clara L. Larry) should take no solace in this decision. While the Court declines to strike Dr. Buch's opinion testimony based on his deficient report, the Court believes the violation of Rule 26(a) warrants some sanction. Defendant should not be forced to depose Dr. Buch to discover the Rule 26(a)(2)(B) information missing from his report. A sanction which punishes the lawyer as opposed to the litigant [*11] is appropriate under these circumstances. See Ball v. City of Chicago, 2 F.3d 752 (7th Cir. 1993) (indicating when determining an appropriate sanction, judges should give serious consideration to punishing the lawyer responsible for the circumstances rather than the blameless client). Chappel's lawyer is responsible for Dr. Buch's deficient expert report. It is the job of the lawyer to ensure that the expert report complies with Rule 26(a)(2)(B). Salgado, 150 F.3d at 741 n. 6 (stating "[i]t is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported . . . ."); see also Advisory Committee's Note

to 1993 Amendments to Rule 26(a)(2)(B) (stating that "Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, . . . this assistance may be needed."). The appropriate remedy here is to shift the costs for the deficient report to Chappel's lawyer. The Court imposes the sanction of requiring Chappel's lawyer to be responsible for attorney's fees (including reasonable preparation time) and costs incurred by Defendant in taking Dr. Buch's testimony [*12] as well as the attorney's fees associated with Defendant bringing its current motion.

Chappel's lawyer's lack of due care here risked an order barring Dr. Buch's opinion testimony at trial and thus, put the interests of her client in serious jeopardy. Chappel's lawyer is on notice that similarly deficient expert reports will not be tolerated by this Court and may not be treated so kindly by future courts.

### III. Conclusion

For these reasons, Defendant's Motion to Exclude Expert Report and Testimony is denied.

**Nan R. Nolan**

**United States Magistrate Judge**

**Dated: July 13, 2007**

End of Document

# Lexington Ins. Co. v. Horace Mann Ins. Co.

United States District Court for the Northern District of Illinois, Eastern Division

August 27, 2015, Decided; August 27, 2015, Filed

No. 11 C 2352

**Reporter**

2015 U.S. Dist. LEXIS 120061 *; 2015 WL 5174159

LEXINGTON INSURANCE COMPANY, a Delaware Corporation, Plaintiff, v. HORACE MANN INSURANCE COMPANY, an Illinois Corporation, Defendant/Third Party Plaintiff, AON RISK INSURANCE SERVICES, INC., a California Corporation, Third-Party Defendant.

**Prior History:** Lexington Ins. Co. v. Horace Mann Ins. Co., 2012 U.S. Dist. LEXIS 19023 (N.D. Ill., Feb. 9, 2012)

**Counsel:** [*1] For Lexington Insurance Company, Plaintiff, Counter Defendant: Joseph Edward Collins, Fox Rothschild LLP, Chicago, IL.

For Horace Mann Insurance Company, Defendant, Counter Claimant, ThirdParty Plaintiff: James I. Rubin, LEAD ATTORNEY, Andrew David Shapiro, Debra Kathryn Lefler, Butler, Rubin, Saltarelli & Boyd LLP, Chicago, IL; Gary Michael Elden, Justin Robert Donoho, Patrick Thomas Nash, Shook, Hardy & Bacon LLP, Chicago, IL.

For Aon Risk Insurance Services West, Inc., Third Party Defendant: Walter Jones, Jr., LEAD ATTORNEY, Jonathan Booker Cifonelli, Jorge V. Cazares, Pugh, Jones & Johnson, P.C., Chicago, IL.

**Judges:** Sheila Finnegan, United States Magistrate Judge. Judge Charles R. Norgle, Sr.

**Opinion by:** Sheila Finnegan

## Opinion

### REPORT AND RECOMMENDATION

Plaintiff Lexington Insurance Company ("Lexington") filed suit against Defendant Horace Mann Insurance Company ("Horace Mann") seeking a declaratory judgment that the Insurance Company Professional Liability Policy ("E&O policy" or the "policy") it issued to Horace Mann does not cover a $7 million claim made against Horace Mann in connection with an automobile accident. Horace Mann asserted a counterclaim alleging that Lexington's failure to pay the claim constitutes [*2] a breach of contract (Counts I and II) and a violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (Count III). Horace Mann also filed a Third-Party Complaint against Aon Risk Insurance Services, Inc. ("Aon"), its insurance broker for professional liability coverage. Aon procured the E&O policy on behalf of Horace Mann and is charged with

professional negligence based on its advice and actions relating to providing Lexington with notice of the claim.

Currently before the Court are motions from Lexington and Aon seeking to strike Horace Mann's supplemental expert disclosures and related deposition testimony for failure to comply with the requirements of Federal Rule of Civil Procedure 26. Horace Mann purports to supplement not only the report from its own expert, Richard Cowan, but also the rebuttal reports from experts retained by Lexington (Thomas R. Newman) and Aon (Peter M. Marchel). As explained below, the supplement to Cowan's report is improper because it covers topics that are beyond the scope of his expert report. Horace Mann deliberately introduced those topics for the first time at Cowan's deposition despite knowing about them throughout most of the litigation, and falsely accused Lexington of "sandbagging" Horace [*3] Mann with the information. This supports striking the Cowan supplement and any related deposition testimony.

The purported supplements to the rebuttal reports from Newman and Marchel are equally improper, as Horace Mann cites no authority allowing it to supplement an opposing party's expert disclosures. Moreover, Horace Mann should not be permitted to elicit deposition testimony that goes beyond the scope of rebuttal reports, as it did in this case, and then contend that the testimony constitutes "opinions" from the rebuttal experts. This is especially true where, as here, Horace Mann has mischaracterized certain of the expert's statements.

This Court recommends that the district judge grant the motions to strike the supplements and any deposition testimony that goes beyond the scope of the expert and rebuttal reports. The Court also recommends that the district judge award Lexington and Aon their associated costs and fees incurred in pursuing these motions.

## BACKGROUND

### I. Facts Giving Rise to the Lawsuit[1]

The parties' dispute arises from a May 16, 2008 motor vehicle collision between Christopher Drake, who was insured by Horace Mann, and Joseph Burley, who was injured in the accident. Burley hired counsel and initially made a written demand to Horace Mann offering to settle his claims against Drake for $25,000 — the limit of Drake's automobile insurance policy — if accepted within 20 days. *Lexington Ins. Co. v. Horace Mann Ins. Co.*, No. 11 C 2352, 2013 U.S. Dist. LEXIS 127544, 2013 WL 4782031, at *1-2 (N.D. Ill. Sept. 4, 2013). Horace Mann responded that it would not settle before seeing pertinent medical records from the hospital. When the 20 day period lapsed without any settlement agreement, Burley filed suit against Drake in Florida state court to recover for his injuries. Horace Mann suspected that it was being set up for a bad-faith claim by Burley's counsel for failing to settle for the policy limits, and the

---

[1] The facts in this section are drawn from the district judge's September 4, 2013 and September 18, 2014 opinions. *Lexington Ins. Co. v. Horace Mann Ins. Co.*, No. 11 C 2352, 2013 U.S. Dist. LEXIS 127544, 2013 WL 4782031 (N.D. Ill. Sept. 4, 2013), and Doc. 178. This opinion assumes the reader's familiarity with those [*4] decisions and restates facts here only as necessary to resolve the instant motions.

company retained outside counsel on November 21, 2008 to evaluate its potential extra-contractual liability in that regard. 2013 U.S. Dist. LEXIS 127544, [WL] at *2.

The litigation progressed, and on August 11, 2010, the Florida state court ordered Burley and Drake to participate in mediation. In anticipation of the mediation, Burley's counsel sent a letter on September [*5] 14, 2010 to Drake's counsel advising that he should try and get Horace Mann "to acknowledge their extra-contractual exposure and 'open' their limits." The mediation went forward on December 15, 2010, but the parties were too far apart to settle: Burley demanded $8 million and Horace Mann offered $200,000. 2013 U.S. Dist. LEXIS 127544, [WL] at *3-4.

Two days later, on December 17, 2010, Horace Mann directed Aon, its insurance broker, to provide notice to Lexington of the Burley litigation. 2013 U.S. Dist. LEXIS 127544, [WL] at *4. Lexington had issued Horace Mann a claims-made E&O policy for a policy period running from September 28, 2010 to September 28, 2011, with a $15 million aggregate Limit of Liability and a $1 million Retention. Pursuant to that policy, Lexington agreed to provide coverage to Horace Mann arising from any "Wrongful Act," which is defined as "any act, error or omission in the rendering of or failure to render Professional Services. 'Wrongful Act' shall also mean any Related Wrongful Act." 2013 U.S. Dist. LEXIS 127544, [WL] at *1. The policy also states that Lexington "shall pay the Loss of [Horace Mann] arising from a Claim first made against [Horace Mann] during the Policy Period and reported in writing to [Lexington] during the Policy Period." A "claim" under the policy is defined as "1. a [*6] written demand for monetary damages; or 2. a judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought." *Id.* Aon did ultimately send written notice to Lexington, but not until January 11, 2011. In that letter, Aon advised that the Burley litigation "may reasonably be expected to give rise to a Claim against [Horace Mann] for a Wrongful Act." 2013 U.S. Dist. LEXIS 127544, [WL] at *4.

The Burley case proceeded to a jury trial in late January and February 2011, and Burley was awarded $17 million. 2013 U.S. Dist. LEXIS 127544, [WL] at *5. On March 3, 2011, Burley's counsel sent Horace Mann an email demanding payment of the full $17 million. (Doc. 181-7, at 52-53).[2] Shortly thereafter, on March 15, 2011, Lexington issued a reservation of rights letter indicating its position that Horace Mann was not covered for the Burley litigation because Horace Mann had received the claim prior to the inception of the E&O policy on September 28, 2010. Lexington's position was that the September 10, 2010 letter Burley's counsel sent before the mediation was a claim. *Lexington Ins. Co.*, 2013 U.S. Dist. LEXIS 127544, 2013 WL 4782031, at *5. The following month, on April 5, 2011, Horace Mann finally settled its claim with Burley for $7 million. *Id.*

Two days later, on April 7, 2011, Lexington filed this declaratory judgment action against Horace Mann, arguing that the "bad faith" claim occurred outside the policy period, and that Horace Mann failed to provide Lexington with the required notice of a mediation. Horace Mann asserted a counterclaim against Lexington, seeking to recover the portion of the $7 million Burley settlement that exceeds the $1 million Retention in the E&O policy, and damages for the Section

---

[2] For ease of reference, page numbers for all briefs [*7] and exhibits are drawn from the CM/ECF docket entries at the top of the filed document.

155 claim. On June 30, 2011, Horace Mann filed a Third-Party Complaint against Aon, contending that "in the event that Horace Mann was late in notifying Lexington of the Burley Litigation, Aon is liable to Horace Mann for professional negligence for failing to properly advise Horace Mann in connection with giving notice to Lexington of the Burley Litigation and in failing to promptly follow Horace Mann's instructions to notify Lexington of the Burley Litigation." *Id.*

## II. Facts Specific to the Motions to Strike

### A. The Expert Reports

This case proceeded through discovery and on June 20, 2013, Horace Mann submitted an expert report from Richard Cowan. [*8] Cowan provided 11 categories of opinions relating to Aon, addressing the question of whether the advice and actions regarding when and how to notify Lexington of the Burley litigation were professionally negligent. (Doc. 181-1, at 3-4). Cowan also provided his opinions as to whether Lexington's denial of coverage was "vexatious and unreasonable" in violation of Section 155 of the Illinois Insurance Code (Count III of the Counterclaim). (*Id.* at 56-65). Cowan did not given any opinions on the issue of whether Lexington breached its contract with Horace Mann by failing to pay the Burley claim (Counts I and II of the Counterclaim).

On August 29, 2013, Lexington submitted a rebuttal expert report from Thomas R. Newman responding to the "vexatious and unreasonable" conduct opinions related to Count III. (Doc. 181-6). Aon submitted its rebuttal expert report from Peter M. Marchel on September 3, 2013, addressing the issue of Aon's alleged professional negligence. (Doc. 181-9).

### B. District Judge Rulings on Summary Judgment

On September 4, 2013, the district judge ruled on cross-motions for summary judgment between Lexington and Horace Mann. Lexington had argued that the September 14, 2010 letter from Burley's counsel [*9] advising Drake's counsel that he should try to get Horace Mann to acknowledge its extra-contractual exposure and open the policy limits constituted a "claim" as defined in the E&O policy. Lexington argued this was either (1) a "written demand for money damages," or (2) a "judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought." *Lexington Ins. Co.*, 2013 U.S. Dist. LEXIS 127544, 2013 WL 4782031, at *7, 9. Since this "claim" occurred outside the policy period (which did not start until September 28, 2010), Lexington argued that Horace Mann was attempting to collect on a claim that was not covered under the policy. Alternatively, Lexington argued that Horace Mann failed to provide notice of the December 15, 2010 mediation before it took place as required by the policy. 2013 U.S. Dist. LEXIS 127544, [WL] at *10. The district judge rejected all of these arguments and granted partial summary judgment in favor of Horace Mann on those issues. 2013 U.S. Dist. LEXIS 127544, [WL] at *8, 10.

In light of that ruling, Aon filed a motion for summary judgment arguing that "because the Court found that Horace Mann was not late in giving notice of its claim to Lexington, it follows that Aon

cannot be liable for failing to properly advise Horace Mann on when to notify Lexington of the Burley Litigation." [*10] (Doc. 178, at 2). In a September 18, 2014 opinion, the district judge denied the motion, finding that "genuine issues of material fact remain as to whether Aon could have and should have reported a potential claim in August or September of 2010, and whether Aon's reporting of a potential claim would have prevented the instant litigation between Lexington and Horace Mann and the attendant damages." (*Id.* at 3). The district judge also found it significant that expert discovery was ongoing, noting that "[i]f Horace Mann is ultimately denied coverage based on the untimeliness of its notice under the terms of the E&O policy, it may yet have a claim against Aon for faulty advice and for failure to provide the notice on time." (*Id.*).

## C. Expert Depositions and the "Supplemental" Expert Disclosures from Horace Mann

The parties proceeded with expert depositions, deposing Cowan on November 18 and 19, 2014, Newman on December 8, 2014, and Marchel on December 10, 2014.[3] Based on testimony obtained at those depositions, on December 23, 2014, Horace Mann filed Objections to and Motions to Exclude Certain Opinions from both Newman and Marchel. (Docs. 179, 182). In those filings, Horace Mann explained that it planned [*11] to affirmatively use some of the "opinions" those experts provided during their depositions, but was moving to strike all of their other opinions as improper.

One of the exhibits Horace Mann submitted in support of the motions to exclude was a "Supplemental Expert Disclosure" (dated December 23, 2014) under Rule 26(a)(2) and (e) that identified Newman and Marchel as expert witnesses "whose testimony Horace Mann may use at trial to present evidence under Fed. Rs. Evid. 702 and 801(d)(2)." (Doc. 181-12, at 2-3). The Supplement further disclosed that "Cowan will use to support and elaborate his opinions what he learned at and up to the time of Newman's and Marchel's depositions." (*Id.* at 3). Horace Mann explains the need for the Supplement as follows.

Initially in this lawsuit, Lexington raised two grounds for denying coverage under the policy (the "Original Grounds"): (1) the September 14, 2010 letter from Burley's counsel was a claim (the "Claim Ground"); and (2) Horace Mann failed to provide proper notice of the December 15, 2010 mediation (the "Mediation Ground"). Though [*12] the district judge rejected both arguments, Lexington continued to deny coverage without explanation. (Doc. 179, at 2-3). Thereafter, "Lexington's questions during depositions, especially those asked of Cowan on November 18, 2014, . . . revealed Lexington's new grounds for refusal [of coverage] (the 'New Grounds')." (Doc. 181-12, at 4). To address these New Grounds, Horace Mann supplemented its Rule 26 disclosures accordingly.

Horace Mann contends that the New Grounds cover the following issues:

**1. Was There a "Claim?"**: Horace Mann maintains that Lexington "tried to get Cowan to agree" that no "Claim" was made to Horace Mann between September 28, 2010, the start of the policy

---

[3] For convenience, this opinion sometimes refers to the experts as "Cowan-HM," "Newman-L," and "Marchel-A" as a reminder of the party offering each expert's opinions.

period, and March 27, 2011, the date when the Burley litigation settled. Horace Mann's position is that the March 3, 2011 email it received from Burley's counsel demanding payment of the full $17 million jury verdict constitutes such a "Claim." (*Id.*).

**2. Was Notice Timely?**: Horace Mann contends that Lexington "tried to get Cowan to agree" that assuming the March 3, 2011 email from Burley's counsel was a Claim, Horace Mann did not give Lexington timely notice of it. Horace Mann responds that it provided timely notice orally [*13] "no later than March 8, [2011]," (*id.*), citing an entry that Alan Burkholz from Lexington made in the claim file on that date indicating that Burley's "opening demand is the entire $17M verdict." (Doc. 181-7, at 57-58, LEX0000003-04). Horace Mann also says it provided notice on several other occasions in March 2011, as evidenced by a series of emails between Burkholz and Horace Mann representatives acknowledging that Horace Mann was engaged in settlement talks with Burley. (Doc. 181-7, at 61-63, LEX0001153-55).

**3. Did Notice Have to Be Written?**: Lexington next purportedly "tried to get Cowan to agree" that assuming Horace Mann gave Lexington timely oral notices of the $17 million demand from Burley's counsel, the notices were still ineffective because not in writing. (Doc. 181-12, at 4-5). Horace Mann believes that no writing was required because (1) the January 11, 2011 notice Aon sent to Lexington regarding a potential claim (before the $17 million verdict) was in writing, and (2) in light of that writing, Horace Mann thereafter only needed to provide a "prompt[] report[]," and not a "written notice." (*Id.*) (citing Cowan Dep.1, at 232-41, Doc. 181-2, at 60-63).[4]

**4. Did Notice Have to State that a Demand Was Written?**: Horace Mann says that Lexington finally "tried to get Cowan to agree" that even assuming the oral notices Horace Mann gave to Lexington in March 2011 regarding the $17 million settlement demand from Burley's counsel were timely and did not need to be in writing, Horace Mann still needed (and failed) to expressly notify Lexington that it had received a written as opposed to oral demand from Burley's counsel (*i.e.*, the March 3, 2011 email). (*Id.* at 5) (citing Cowan Dep.1, at 241-42, Doc. 181-2, at 63). Horace Mann disagrees, citing testimony from Cowan that "[i]f this [March 3, 2011] letter [sic] was not given [to Lexington] but the substance of it was communicated orally, that may have been sufficient." (*Id.*) (citing Cowan Dep.1, at 250, Doc. 181-2, at 65).

**5. Was a Counterclaim Sufficient Notice?**: Alternatively, Horace Mann argues that if it needed to tell Lexington that it had received a written demand from Burley's counsel (the March 3, 2011 email), it did so by filing its June 2011 counterclaim against Lexington, which it says is a "written report of the March 3 written demand." [*15]  (*Id.*).

**6. Is Lexington Precluded from Raising the New Grounds?**: Finally, Horace Mann contends that Lexington cannot raise any of the New Grounds for denying coverage because (1) it had actual notice of the March 3, 2011 settlement demand (Burley's counsel's email demand for $17 million) no later than sometime that month, and (2) any objections to the form or substance of the notice are barred by the doctrines of waiver, estoppel, and mend-the-hold since Lexington "had all facts relevant to its new theory by March 8[, 2011]" and did not raise them in the April 2011 lawsuit. (*Id.*).

---

4 The November 18, 2014 [*14]  Cowan deposition transcript is cited as "Cowan Dep.1, at __."

After detailing these New Grounds for Lexington's denial of coverage and its corresponding responses, Horace Mann sets forth its "supplemental disclosures" relating to Cowan-HM, Newman-L and Marchel-A. In other words, Horace Mann now offers not only what it views as supplemental disclosures for Cowan, but also what it characterizes as "opinions" from the experts that Lexington and Aon retained to rebut Cowan's opinions.

**Cowan-HM Supplement**: The Cowan Supplement states that in addition to his own deposition testimony, Cowan will rely on Newman's deposition testimony to support his opinion that (a) there was a [*16] claim, (b) notice of it was timely, (c) the notice did not need to be in writing, (d) the notice did not need to say that the demand was written, (e) Horace Mann's counterclaim provided sufficient notice, and (f) if Lexington had any objections to the form or substance of the notice, it should have raised them with Horace Mann promptly after receiving actual notice of the March 3, 2011 claim on March 8, 2011. (*Id.* at 6).

**Newman-L Supplement**: The Newman Supplement consists of selected testimony from Newman's deposition that Horace Mann elicited and finds favorable to its case. Among other things, Horace Mann relies on Newman's testimony to support the following propositions: (1) the March 3, 2011 email from Burley's lawyer demanding $17 million is a "Claim" within the meaning of the Lexington policy; (2) "[w]ritten notice of a claim may be given by a counterclaim served in a declaratory judgment case"; (3) the January 11, 2011 letter from Aon to Lexington constituted valid written notice of a potential claim; and (4) the Lexington policy does not impose a written notice requirement. (*Id.* at 11). Horace Mann also contends that Newman testified to the existence of certain "practices, standards, and understandings [*17] . . . generally known to and/or accepted by insurers in the pertinent industry." (*Id.* at 7-10).

**Marchel-A Supplement**: The Marchel Supplement likewise consists of selected testimony from Marchel's deposition that Horace Mann elicited and finds favorable to its case. Among other things, Horace Mann relies on Marchel's testimony to support the following propositions specific to the claims against Aon: (1) Horace Mann chose to have Aon be the exclusive contact with Lexington prior to February 2011; (2) Aon should have had procedures in place to become more informed regarding legal authority relevant to the case, including "the *Hicks* and *Drake* cases"; (3) "[h]ad Aon provided earlier notice to Lexington, Horace Mann would have settled for less since Lexington would have assisted"; (4) "[b]efore September 14, 2010, Horace Mann knew enough facts to provide a valid notice of potential claim to Lexington"; (5) "Horace Mann always provided to Aon any material that Aon or Lexington requested"; and (6) "[b]y December 17, 2010, it was clear that a notice should have been given to Lexington." (*Id.* at 17-18). Horace Mann also contends that Marchel testified to the existence of "pertinent industry practices, standards, and understandings [*18] by and for national brokers." (*Id.* at 12-17).

## DISCUSSION

Lexington and Aon have moved to strike the Supplement and all related opinions and testimony for violating Rule 26, and seek sanctions against Horace Mann. Specifically, Lexington and Aon argue that: (1) the new opinions from Cowan are not "supplements" to his earlier opinions as contemplated by Rule 26(e) and are based on information that has been known to the parties since litigation began; (2) Horace Mann is improperly seeking to make an untimely disclosure of

new experts (Newman and Marchel) in violation of Rule 26(a)(2)(D) without providing the necessary expert reports under Rule 26(a)(2)(B); (3) Horace Mann is seeking to introduce opinions from Newman and Marchel that Horace Mann elicited during their depositions and are beyond the scope of their rebuttal expert reports; (4) Newman and Marchel did not actually offer the "opinions" Horace Mann cites in the Supplement (Horace Mann has misstated their deposition testimony); and (5) Horace Mann's failure to comply with Rule 26 was neither justified nor harmless, meriting sanctions.

## I. Cowan's Opinions

Since Horace Mann's rationale for needing to offer the Rule 26(e) Supplement hinges in large measure on its claim that Lexington introduced new matters at [*19] the Cowan deposition, the Court begins its analysis with arguments relating to the Cowan Supplement. Lexington argues that Horace Mann cannot meet its burden of showing that the opinions from the Cowan Supplement satisfy the requirements of Rule 26(e) because Cowan seeks to opine on issues that are beyond the scope of his initial report, and have been within Horace Mann's knowledge since the inception of this litigation. *Stuhlmacher v. Home Depot USA, Inc.*, No. 2:10-CV-467, 2012 U.S. Dist. LEXIS 164722, 2012 WL 5866297, at *2 (N.D. Ind. Nov. 19, 2012) ("The burden to show that the reports were supplements rather than new reports . . . is on the party who either missed the deadline or is seeking to supplement the report.").

Rule 26(e) requires a party to supplement an earlier disclosure when "the party learns that in some material respect the disclosure or response is incomplete or incorrect," and when "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). *See e.g., Noffsinger v. Valspar Corp.*, No. 09 C 916, 2011 U.S. Dist. LEXIS 60, 2011 WL 9795, at *2 (N.D. Ill. Jan. 3, 2011). When dealing with retained experts under Rule 26(a)(2)(B), that duty to supplement "extends to both information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2)

At the same time, Rule 26(e) "does not give the [*20] producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the 'supplement' label." *Noffsinger*, 2011 U.S. Dist. LEXIS 60, 2011 WL 9795, at *2 (quoting *Amari v. C.R. Eng., Inc.*, No. 1:07-CV-1616-WTL-TAB, 2010 U.S. Dist. LEXIS 74111, 2010 WL 2943686, at *2 (S.D. Ind. July 21, 2010)). As one court explained:

Although Fed. R. Civ. P. 26(e) requires a party to "supplement or correct" disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset).

To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could "supplement" existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's

own expert and virtually require new rounds of depositions. That process would hinder rather than facilitate settlement and the final disposition of the case.

*Allgood v. GMC*, No. 1:02-CV-1077-DFH-TAB, 2007 U.S. Dist. LEXIS 8123, 2007 WL 647496, at *3-4 (S.D. Ind. Feb. 2, 2007) [*21] (quoting *Beller ex rel. v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003)).

## A. The Initial and Supplemental Opinions

In his initial report, Cowan opined on whether Lexington acted vexatiously and unreasonably in violation of Section 155 when it issued a reservation of rights letter objecting to providing coverage to Horace Mann under the E&O policy. He offered five specific opinions in this regard.[5] They include, in relevant part:

A. Lexington acted unreasonably, vexatiously, and contrary to ordinary industry practice (hereafter I will just say "improperly") in its handling of the *Burley* matter under the 2010 E&O policy issued by Lexington to Horace Mann.

B. Lexington improperly failed to advise Horace Mann promptly that Lexington thought there was a potential "claims made/claims reported" issue before the start of the *Burley* trial on January 31, 2011 when Lexington had internally identified that as a potential coverage issue on January 14, 2011.

C. Lexington acted improperly by changing its coverage position regarding the meaning of the second definition of "Claim"[6] and its views on whether advance notice is required of a mediation in an underlying case.

D. Lexington should have, as is customary in the industry, investigated Horace [*22] Mann's January 11 notice of circumstance (the written notice that Aon sent before the $17 million verdict), reviewed documents including Horace Mann's claim file, and considered relevant case law prior to taking a coverage position and should have done so promptly to provide Horace Mann an accurate, complete, well-grounded and timely coverage position. . . . Lexington, which provides no meaningful training to its claims analysts, acted improperly by failing to follow industry standards in that regard and also improperly violated its own standards by failing to promptly investigate Horace Mann's January 11 submission and eventually taking coverage positions inconsistent with what a thorough investigation would have revealed.

---

[5] Cowan also gave an opinion regarding the import of the September 14, 2010 letter (in which Burley's counsel suggests Drake's counsel try to get Horace Mann to open the policy limits) for use in the event the district judge denied Horace Mann's motion for partial summary judgment. [*23] (Doc. 181-1, at 62-65). In light of the September 4, 2014 decision, that portion of Cowan's opinion is now moot.

[6] As noted earlier, the second definition of "claim" under the policy is "2. a judicial, administrative, arbitration, or other alternative dispute proceeding in which monetary damages are sought." *Lexington Ins. Co.*, 2013 U.S. Dist. LEXIS 127544, 2013 WL 4782031, at *1.

E. It would be improper for Lexington to continue litigating this case in the event the Court rules that the September 14 letter is not a "Claim" under the policy.[7]

(Doc. 181-1, at 56-58).

Lexington insists that "[i]n stark contrast" to the aforementioned "bad faith" opinions, the Supplement "purports to address a new and entirely different issue, *i.e.*, a *coverage analysis* regarding whether Horace Mann properly reported a 'Claim' to Lexington." (Doc. 184, at 5) (emphasis in original). As stated earlier, those opinions, which track the New Grounds Horace Mann identifies in the Supplement, include:

(1) there was a claim, (2) notice of it was timely, (3) the notice need not have been written, (4) notice need not have stated that the demand [*24] was written, (5) Horace Mann's counterclaim provided sufficient notice, and (6) any Lexington objections to the form or substance of notice should have been made promptly once Lexington had actual notice by March 8 of the March 3 Claim.

(Doc. 181-12, at 6). Lexington contends that Horace Mann is not permitted to insert these brand new opinions under the guise of a Rule 26(e) supplement.

Horace Mann disputes that Cowan has provided any new opinions, describing the "crux of the supplemental disclosures" as: "Cowan will give opinions he previously disclosed in his report *and at his deposition*." (Doc. 204, at 5) (emphasis added). As Horace Mann sees it, Lexington is responsible for placing the New Grounds at issue because it unexpectedly questioned Cowan about them at his deposition. In response, Horace Mann "did the best it could" and "overcomplied" with Rule 26, providing a Supplement identifying testimony it "<u>had no duty to disclose</u>." (*Id.* at 10) (emphasis in original). As discussed below, this Court does not find Horace Mann's position persuasive.

### B. Cowan Did Not Opine on the March 3, 2011 Email in His Initial Report and Cannot Supplement His Opinion With Deposition Testimony on that Issue

On its face, Cowan's [*25] expert report does not address any of the issues raised in the Cowan Supplement. Horace Mann argues that this does not preclude Cowan from offering opinions on any and all issues that Lexington chose to discuss with him at his deposition because deposition questioning "is not confined to the [expert's] report." (Doc. 203, at 4; Doc. 204, at 5). Rather, "the examiner [at a deposition] may ask about anything relevant to the subject matter of the action." (Doc. 204, at 4) (quoting *Smith v. Logansport Community Sch. Corp.*, 139 F.R.D. 637, 642 (N.D. Ind. 1991)). The stated proposition is generally correct in that witnesses may be cross-examined during a deposition on any relevant topic "regardless of whether it was raised on direct examination." *Smith*, 139 F.R.D. at 642. Yet *Smith* says nothing about using testimony that goes beyond the scope of an expert's report to supplement the opinions set forth in the report, and Horace Mann cites no case addressing that issue.

---

[7] In Section G of its reply brief, Lexington argued for the first time that Cowan "abandoned" opinion E based on statements he made during his deposition. Horace Mann disagrees. Because "[a]rguments raised for the first time in a reply brief . . . are waived," this Court is granting Horace Mann's Motion to Strike Section G of Lexington's reply brief. *United States v. Kennedy*, 726 F.3d 968, 974 n.3 (7th Cir. 2013).

If Horace Mann's supplementation theory were correct, it would essentially mean that any topic a party raised during an expert deposition could become part of the expert's report, even if it had absolutely nothing to do with the opinions expressed in that report. Such an interpretation of Rule 26 would contravene the requirement that [*26] initial reports be viewed as comprising the "*complete* statement of *all* opinions" the retained expert will provide, and instead allow parties to force experts to opine on whatever matter an examiner chooses, even one falling outside the expert's area of expertise. FED. R. CIV. P. 26(a)(2)(B)(i) (emphasis added); *Ruppert v. Alliant Energy Cash Balance Pension Plan*, No. 08-CV-127-BBC, 2010 U.S. Dist. LEXIS 60872, 2010 WL 2518853, at *2 (W.D. Wis. June 18, 2010) (granting motion to prohibit use at trial of certain expert deposition testimony, explaining that "to allow testimony on a matter beyond the scope of the expert report would be improper."). This, in turn, would require additional reports and depositions, rendering court-imposed expert discovery deadlines largely meaningless. *See Carter v. Finely Hosp.*, No. 01 C 50468, 2003 U.S. Dist. LEXIS 28544, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003) ("It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new opinions after the deadline established by the court under Rule 26(a)(2)(C)."); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("[T]he parties' need for expert depositions would increase if they could use deposition testimony to provide information they should have initially included in their Rule 26(a)(2) report."); *Allgood*, 2007 U.S. Dist. LEXIS 8123, 2007 WL 647496, at *3-4.

Horace Mann suggests it would be unfair to preclude the Cowan Supplement in this case because it was necessitated by Lexington's own improper deposition tactic of "blindsid[ing] [Cowan] with questions on undisclosed theories." [*27] (Doc. 204, at 10). After reading the full transcript of Cowan's November 18, 2014 deposition, however, it is clear to the Court that contrary to Horace Mann's assertion, Lexington did not introduce the March 3, 2011 email into the discussion at all — Horace Mann's counsel did so. In the course of discussing Cowan's opinion that it is vexatious and unreasonable for Lexington to continue to withhold payment under the policy in light of the district judge's summary judgment ruling (that the September 14, 2010 letter was not a "claim"), the parties paused for a short break. Following that break, Horace Mann's counsel disclosed that he had just shown Cowan the March 3, 2011 email (the email from Burley's counsel to Horace Mann demanding $17 million) "to refresh his recollection." (Doc. 181-2, at 57, Cowan Dep.1, at 219). After confirming that he had first seen the email *the day before* and it was not referenced in his report, Cowan testified that when he read the email during the break, "it seemed clear to me that it states a claim against Horace Mann." (*Id.* at 57-58, Cowan Dep.1, at 220, 222-23). Cowan then stated that though he did not know whether Lexington had received written notice of the March [*28] 3, 2011 email, no such written notice was required in any event. (*Id.* at 59, 60, Cowan Dep.1, at 226, 232). Lexington's counsel objected that he had not asked Cowan whether a notice of claim needs to be in writing but that Cowan had "tried to volunteer" that it does not. (*Id.* at 61, Cowan Dep., at 235-36).

This testimony about what constitutes a claim, or sufficient notice thereof, is entirely beyond the scope of Cowan's initial expert report opining that certain conduct by Lexington was vexatious and unreasonable. Even more troubling, Lexington argues that Horace Mann is attempting to go a step further and use Cowan to introduce two theories it apparently never before raised in this case. Specifically, Horace Mann wants Cowan to opine that its June 2011 counterclaim constitutes notice to Lexington that the March 3, 2011 email was a written demand, and that

Lexington is legally precluded from challenging that alleged actual notice. (Doc. 184, at 12). Tellingly, Horace Mann does not respond to Lexington's argument in this regard. The Court offers no opinion as to whether Horace Mann should be permitted to raise these two arguments at trial, but does note that "supplemental expert opinions that threaten to [*29] belatedly send the case on a wholly different tack are excluded." *Talbert v. City of Chicago*, 236 F.R.D. 415, 424 (N.D. Ill. 2006). For this reason, Horace Mann should not be allowed to offer expert testimony from Cowan on those issues.

The obvious nature of the discrepancy between Cowan's initial and supplemental reports may explain why Horace Mann attempts so strenuously to create the impression that Lexington somehow introduced the new testimony from Cowan. It was Horace Mann that determined the scope of Cowan's expert discovery by disclosing his opinions in Cowan's report in June 2013. Based on that report, Horace Mann chose to have Cowan address only Lexington's allegedly vexatious and unreasonable conduct as detailed previously. The rebuttal expert retained by Lexington then prepared a report in August 2013 that was limited to addressing the issues set forth in Cowan's report. In such circumstances, Horace Mann should not be permitted to introduce new opinions from Cowan at his deposition under the guise of it being a "supplement" to his initial report. *See, e.g., Barlow v. General Motors Corp.*, 595 F. Supp. 2d 929, 935-36 (S.D. Ind. 2009) ("Rule 26(e) was intended to ensure prompt disclosure of new information, not to allow parties to spring late surprises on their opponents under the guise of a 'supplement' to earlier disclosures."). [*30]

The only contrary cases Horace Mann cites are easily distinguishable. (Doc. 204, at 10). In *Talbert v. City of Chicago*, for example, the court allowed the plaintiff to "bulk" up its expert report under Rule 26(e) in response to specific deficiencies identified by the City. 236 F.R.D. at 418, 423-24. These were not new opinions, but merely an "improve[ment] upon the initial expert report." *Id.* at 423. In fact, "counsel for the City agreed that the City's motion to strike might be 'mooted' by the plaintiff's supplemental report." *Id.* at 424. In reaching this conclusion, the *Talbert* court relied on *Wilson v. Sundstrand Corp.*, Nos. 99 C 6944, 99 C 6946, 2003 U.S. Dist. LEXIS 14922, 2003 WL 22012673, at *7-8 (N.D. Ill. Aug. 25, 2003), which found a supplementation proper where an expert's initial calculations were based on rough data and more current data had become available after the report was submitted. 2003 U.S. Dist. LEXIS 14922, [WL] at *7-8. Notably, rebuttal reports "had not yet been served and were not yet due" at the time of the supplemental disclosure. 2003 U.S. Dist. LEXIS 14922, [WL] at *8. *See also Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 824 (N.D. Ill. 2010) (where, during the course of his deposition, expert changed certain underlying definitions in his report, supplementation was proper because "changed circumstances . . . necessitated the supplement.").

Unlike in the cited cases, Cowan's deposition testimony did not respond to deficiencies Lexington identified in his report regarding the proper requirements [*31] for a "claim" to be made under the E&O policy, as that subject appeared nowhere in Cowan's initial report. Rather, Horace Mann is seeking to introduce entirely new opinions on a previously unaddressed topic, more than a year after Lexington and Aon submitted their rebuttal reports. As discussed below, moreover, Horace Mann was well aware of a disagreement surrounding the March 3, 2011 email early in the case but decided not to show the document to Cowan until the day before his

deposition. Horace Mann's attempt to supplement Cowan's expert report with new opinions it itself introduced at Cowan's deposition should be rejected.


## C. Horace Mann Was Not "Sandbagged" by the March 3, 2011 Email

Horace Mann argues that it could not have known prior to Cowan's deposition that Lexington did not view the March 3, 2011 email (demanding payment by Horace Mann of $17 million) as a "claim" made on Horace Mann, or that Lexington further believed that Horace Mann had failed to provide proper notice of any such claim under the policy. As noted, the fact that Horace Mann's counsel is the one who first introduced the email at the deposition undermines any assertion that Horace Mann was somehow "sandbagged" [*32] by that email or related lines of questioning. Regardless, the following chronology of events demonstrates that Horace Mann knew (or at least should have known) long before Cowan's deposition that Lexington intended to rely on the March 3, 2011 email as support for its decision to issue a reservation of rights letter. (Doc. 204, at 10).

• March 3, 2011 — Horace Mann receives email from Burley's counsel demanding $17 million.

• March 15, 2011 — Lexington sends a letter to Horace Mann denying coverage based on the Original Grounds (the September 14, 2010 letter was a claim, and Horace Mann did not provide timely notice of the December 2010 mediation). (Doc. 181-7, at 66-69).

• April 7, 2011 — Lexington files suit but does not mention the March 3, 2011 email.

• June 17, 2011 — Horace Mann files a counterclaim stating that "Burley's counsel demanded in writing that Horace Mann pay the entire amount of the [$17 million] verdict." (Doc. 14, at 20 ¶ 26). The counterclaim does not expressly mention the March 3, 2011 email to that effect.

• July 22, 2011 — Lexington answers paragraph 26 of the counterclaim stating "affirmatively that Lexington has never received notice of any such demand." (Doc. [*33] 29, at 7 ¶ 26). Lexington also files affirmative defenses to the counterclaim, including that Horace Mann "breach[ed] . . . the Lexington Policy's conditions governing written notice." (*Id.* at 14). No specific examples are given.

• November 2, 2012 and January 19, 2013 — Lexington deposes Horace Mann's Rule 30(b)(6) representative and asks several questions about the March 3, 2011 email, covering nearly 50 pages over both days of testimony, including when and how Horace Mann reported the March 3 email to Lexington as a written demand. (Doc. 204-2, at 3-6, Ousley Dep. 11/2/12, at 12-15; Doc. 204-2, at 8-52, Ousley Dep. 1/29/13, at 292-336) (*e.g.*, p. 312: "What I'm asking you is the March 3 email that Horace Mann contends is a claim, that needs to be reported to Lexington under the terms of the policy, correct?") (p. 312-13: "Did Horace Mann ever report the March 3rd 2011 email, email from Mr. Odom, which Horace Mann contends is a claim, to either Aon or Lexington in writing?").

• January 14, 2013 — Lexington serves a supplemental answer to Horace Mann's interrogatories. In response to interrogatory no. 5 asking all factual and legal bases for Lexington's decision to withhold coverage other than late notice, Lexington [*34] stated:

Finally, to the extent that Horace Mann alleges that a Claim was made on March 3, 2011, when Mr. Odom demanded $17 million to settle the Burley Litigation, this was simply the latest statement of the Burley Claim (the September 14, 2010 letter from Burley's counsel to Drake's counsel advising Horace Mann to open the policy limits) that predated the Policy Period. Furthermore, Horace Mann did not report the March 3, 2011 email as a "Claim" to Lexington under the terms and conditions of the Lexington Policy.

* * * *

The documents produced in discovery and the testimony of Horace Mann's Rule 30(b)(6) representative support Lexington's contention that Horace Mann did not report the March 3, 2011 email as a "Claim" to Lexington under the terms and conditions of the Lexington Policy. (Doc. 184-2, at 22-23).

• June 5, 2013 — Horace Mann deposes Lexington's Rule 30(b)(6) representative and asks questions about the March 3, 2011 email. For example:

Q. We talked about this earlier the fact that you became aware that Mr. Burley's counsel had made a $17 million demand after the verdict had come down. Do you know whether Horace Mann provided written notice of that $17 million demand to Lexington?
A. I never saw it.

* * [*35] * *

Q. . . . there is an email from Mr. Burley's counsel saying, I demand $17 million to settle this case.
A. But it was never provided to Lexington.
Q. That's your contention, and I understand that. So assuming that that's true, that that writing was never provided to Lexington, but you were told about it orally by Mr. Ousley or others at Horace Mann, do you contend that that impacts Horace Mann's ability to recover coverage under this policy?

* * * *

A. Right. Well, that's — that is the question. My recollection from being both — during the phone calls as well as the notes and so forth is that we were not told that they received a written demand. There was no writing, an email, letter, whatever it is. We were only told that they had approached plaintiff's attorney and said what do you want to do with this, rather than get involved in post-trial motions and so forth, you know it's never going to stick, 17 million, and he said, well, let's just start negotiating at 17. And that's what we were told. And I, frankly, thought it was a telephone call. And I was never told it was written, because the first thing anybody would have said was, hey, great, send me a copy. And, B, there was no note [*36] saying they just got a letter or email saying it.

(Doc. 184-3, at 3, 5, Burkholz Dep., at 184, 189-90).

• January 31, 2014 — Horace Mann responds to Aon's motion for partial summary judgment, recognizing that "[a]fter the September 4 [2013] Ruling [on Horace Mann's motion for partial summary judgment], Lexington has continued to deny coverage on the ground that, even if the September 14 letter was not a 'Claim,' no Notice of Claim was timely and properly given under the 2010 Policy, a position arguably covered by Lexington's affirmative defense. . . . Horace Mann has not filed and has no plans to file a motion to contest Lexington's new position." (Doc. 174, at 7).

In this Court's view, it is clear from the above timeline that Horace Mann was well aware throughout most of this litigation that Lexington's position was that: (1) the policy required Horace Mann to provide written notice to Lexington of any claim; and (2) if the March 3, 2011 email was a claim, Horace Mann was required to provide Lexington with written notice that it had received that written claim, but did not do so. Lexington said as much in its answer to paragraph 26 of Horace Mann's counterclaim and in supplemental answers to [*37] interrogatories, and engaged in extensive questioning on that issue during the deposition of Horace Mann's Rule 30(b)(6) representative. Horace Mann, in turn, asked Lexington's Rule 30(b)(6) representative about the March 3, 2011 email and its qualification as a notice of claim.

Horace Mann contends that it was confused by Lexington's "shifting inadequate disclosure of Lexington's New Grounds for denying coverage," stressing for example that when Lexington moved for summary judgment in January 2013, the only theory it proceeded on was that the September 14, 2010 letter was a claim that arose before the policy period. (Doc. 204, at 8, 10). The fact that Lexington chose to pursue only certain grounds for summary judgment, however, in no way indicates that it somehow intended to abandon other unaddressed claims, such as those relating to the March 3, 2011 email.

Horace Mann also attempts to create confusion by parsing Lexington's March 3, 2011 email arguments into what it characterizes as different "Versions." Horace Mann says Version 1, drawn from the deposition of Horace Mann's Rule 30(b)(6) representative, consists of the following propositions: (1) the March 3, 2011 email is not a claim, (2) if it is, Horace Mann did not [*38] give timely, written notice, and (3) any oral notice did not properly state that the demand was written. (Doc. 204, at 7). In Version 2, Horace Mann assumes that certain testimony provided by Lexington's Rule 30(b)(6) representative might mean that Lexington had abandoned the New Grounds, or reduced them to a single contention about a need to provide written notice of the March 3 email. (*Id.* at 8). Of course, Horace Mann never tried to confirm its assumption, instead choosing to proceed as if the New Grounds were not at issue, and opting not to secure an expert report in that regard.

When Newman-L provided his expert report, he expressed disagreement with Cowan's opinion that if the Court ruled that the September 14, 2010 letter was not a "claim," Lexington should stop litigating the case. In Newman's view, such a ruling would only mean that "an issue will arise as to what, then, is the 'Claim' against Horace Mann that purportedly gives rise to coverage for Horace Mann's $7 million settlement under Lexington's policy." (Doc. 181-6, at 22 ¶ 80). Horace Mann styles this as "Version 3" and pleads confusion since Newman's position "seems inconsistent with Lexington's 30(b)(6) admission on June 5 that the March [*39] 3 Email was a Claim." (Doc. 204, at 8-9). As noted, however, there is no evidence that Horace Mann made any attempt to clarify the scope of Lexington's notice defense prior to making its expert disclosures. Moreover, to the extent Newman was simply rebutting a statement in Cowan's report, which never mentioned the March 3, 2011 email, Newman had no obligation to affirmatively opine on the significance of that email in his rebuttal report.

On the record presented, Horace Mann's assertion that it did not know Lexington might raise a defense based on an argument about the March 3, 2011 email until Cowan's deposition is not credible. Lexington was not required to offer expert testimony on that topic, and Horace Mann cannot now blame Lexington for its own decision to forego eliciting an expert report expressly

addressing the March 3, 2011 email and related notice issues. *See Carter*, 2003 U.S. Dist. LEXIS 28544, 2003 WL 22232844, at *2 (an attempted supplement under Rule 26(e) is "particularly" disingenuous "where, as here, the materials on which the new expert opinions are based were available to the Defendant prior to Plaintiff deposing her expert witnesses.").

## D. Summary

For all the reasons stated, Cowan's deposition testimony does not constitute a proper [*40] "supplement" to his initial expert report under Rule 26(e), and Lexington's and Aon's motions to strike the Cowan Supplement and his related testimony should be granted. Under Rule 37(c)(1), moreover, a party that violates Rule 26(e) "is not allowed to use that information [undisclosed opinions and testimony] . . . to supply evidence on a motion, at a hearing, or at a trial." This sanction is "automatic and mandatory unless the offending party can establish that its violation of Rule 26[(e)] was either justified or harmless." *Davis v. Lakeside Motor Co.*, No. 3:10-CV-405-JD, 2014 U.S. Dist. LEXIS 43158, 2014 WL 1316945, at *4 (N.D. Ind. Mar. 31, 2014) (quoting *Ciomber*, 527 F.3d at 641). *See also Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 933 n.1 (N.D. Ill. 2008) ("Rule 37(c)(1) provides for a discovery sanction in the form of exclusion of evidence for violations of Rule 26(e).").

In this Court's view, the above discussion regarding Horace Mann's deliberate and untimely injection of the March 3, 2011 email into Cowan's deposition demonstrates that the violation of Rule 26(e) was neither substantially justified nor harmless. *See Gilbane Bldg. Co. v. Downers Grove Cmty. High Sch. Dist. No. 99*, No. 02 C 2260, 2005 U.S. Dist. LEXIS 43231, 2005 WL 838679, at *10 (N.D. Ill. Apr. 5, 2005) ("[I]n assessing whether the untimely disclosure . . . is either justified or harmless, the court considers the prejudice . . ., the ability to cure such prejudice, and [the] justification (or lack thereof) for not disclosing the evidence earlier."). Thus, the Court recommends that Horace Mann not be permitted [*41] to use any of the opinions described in the Cowan Supplement, including his corresponding testimony about those opinions, "on a motion, at a hearing, or at a trial." Fᴇᴅ. R. Cɪᴠ. P. 37(c)(1).

## II. Opinions from Newman-L and Marchel-A

The Court next considers whether Rule 26 allows Horace Mann to disclose supplemental opinions based on deposition testimony it elicited from Newman and Marchel. As noted, Lexington disclosed Newman as a rebuttal expert on whether Lexington engaged in vexatious and unreasonable conduct in violation of Section 155, as Cowan had opined. Aon disclosed Marchel as a rebuttal expert regarding whether Aon was professionally negligent in advising Horace Mann about when and how to notify Lexington of the Burley litigation. During the two experts' depositions, Horace Mann elicited certain testimony that it believes supports its theory of the case and bolsters Cowan's opinions. Horace Mann has purported to summarize that allegedly favorable testimony in the Newman and Marchel Supplements, characterizing the statements as "opinions" it plans to rely upon in this case. At the same time, Horace Mann seeks in separate motions to exclude all other opinions and statements of Newman and Marchel that [*42] do not advance Horace Mann's arguments (*i.e.*, the opinions the experts disclosed in rebuttal to Cowan).

Lexington and Aon argue that the Newman and Marchel Supplements are not actually "supplements" under Rule 26(e), but instead constitute an attempt by Horace Mann to disclose new expert witnesses well after the court-imposed deadline. Lexington and Aon also object that the purported supplements improperly go beyond the scope of the rebuttal reports in flagrant disregard of the expert discovery rules. Horace Mann responds that it had no duty under Rule 26 to disclose the cited testimony from Newman and Marchel in the first place. In Horace Mann's view, even without such a "supplement," its expert Cowan has a right to rely on the testimony "as further support and corroboration" for his own opinions because that testimony is within the scope of the rebuttal reports "and in any event within the scope of Horace Mann's case." (*See, e.g.*, Doc. 203, at 2). Once again, the Court does not find Horace Mann's arguments persuasive.

## A. The Newman and Marchel Supplements are Not Permissible Under Rule 26(a)(2)(D) and are Not "Supplements" Under Rule 26(e)

Lexington and Aon argue that Horace Mann should not be allowed to avoid the requirements [*43] of Rule 26(a) by labeling the Newman and Marchel Supplements as "supplements" under Rule 26(e). Rule 26(a)(2)(D) requires a party to disclose expert witnesses "at the times and in the sequence that the court orders." Here, the district judge ordered that expert witnesses be disclosed within 14 days following the close of fact discovery, or June 20, 2013. On that June 20 date, Horace Mann disclosed Cowan as its only expert. More than a year and a half later, on December 23, 2014, Horace Mann served the Newman and Marchel Supplements. This disclosure is grossly untimely for purposes of Rule 26(a).[8] Under such circumstances, the Supplements should be stricken unless they qualify as "supplements" under Rule 26(e).

As discussed previously, Rule 26(e) imposes a duty on a party to supplement Rule 26(a)(2) expert disclosures when "the party learns that in some material respect the information disclosed is incomplete or inadequate," and when "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). [*44] Horace Mann does not specify which expert disclosure the Newman and Marchel testimony purports to supplement, but it cannot be viewed as supplementing Cowan's report. To the contrary, courts in this district generally agree that "[t]he concept of a supplemental report suggests that the supplemental opinions will be the opinions of the expert who prepared the original report, not the opinions of a different expert." *Gilbane*, 2005 U.S. Dist. LEXIS 43231, 2005 WL 838679, at *9. *See also Noffsinger*, 2011 U.S. Dist. LEXIS 60, 2011 WL 9795, at *2 (quoting same). As the *Gilbane* court explained, "a supplemental report — the purpose of which is to disclose modifications to the substance of the expert's testimony — should disclose what the testimony of the originally-disclosed expert will be, not what the testimony of a different witness will be." *Id.*

Horace Mann also cites no authority (and the Court has found none) for the proposition that it can use testimony from Newman and Marchel to "supplement" their rebuttal reports even though these experts were retained by Lexington and Aon. (*See* Doc. 184, at 13) ("One of the more

---

[8] In light of this finding, the Court need not address the parties' dispute regarding whether Horace Mann was required to provide a written report for Newman and Marchel under Rule 26(a)(2)(B).

perplexing maneuvers by Horace Mann was to supplement the report of *other party's* experts."). This is likely because Rule 26(e) expressly contemplates that the "party who has made a disclosure under Rule 26(a) [*45] [will] supplement or correct *its* disclosure," not that a party will supplement or correct *another party's* disclosure. FED. R. CIV. P. 26(e)(1) (emphasis added). On the evidence presented here, this Court recommends that the district judge reject Horace Mann's attempt to "supplement" its opponents' rebuttal expert reports.

Rather than explain how the Newman and Marchel Supplements satisfy Rule 26(e), Horace Mann insists that no such supplement was even necessary given that "[a] party may use the testimony of an expert retained by an opponent without making any disclosure." (Doc. 203, at 3). In support of this argument, Horace Mann directs the Court to cases such as *S.E.C. v. Koenig*, 557 F.3d 736 (7th Cir. 2009), where the Seventh Circuit held that a party is not required to identify an opponent's expert as a potential trial witness under Rule 26(a)(2)(A). *Id.* at 744. As the court explained, "[w]hether the adverse party wants to question an expert whose identity has already been revealed is not a subject within the scope of Rule 26(a)(2)." *Id. See also United States v. Schaudt*, No. 07 C 895, 2009 U.S. Dist. LEXIS 37312, 2009 WL 1218605, at *3 (N.D. Ill. Apr. 30, 2009) (Rule 26(a)(2) "does not require that a party disclose the witnesses of its adversary, though it may ultimately use the expert's testimony."); *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, No. 08 C 1083, 2010 U.S. Dist. LEXIS 104549, 2010 WL 3894444, at *10 (N.D. Ill. Sept. 30, 2010) (relying on *Koenig* in finding that "defense testimonial experts whom Defendants do not call are nonetheless available to Plaintiffs.").

The Court agrees that as a general matter, Rule 26(a)(2) would [*46] not necessarily preclude Horace Mann from calling Newman and Marchel in its case in chief despite the fact that Horace Mann did not disclose them as potential witnesses.[9] Nothing in that rule or the cited cases, however, supports Horace Mann's assertion that it had free rein to elicit opinions from Newman and Marchel on topics beyond the scope of their rebuttal reports and then seek to affirmatively use those alleged opinions without complying with any disclosure obligations under Rule 26. As discussed earlier, the very purpose of Rule 26 would be thwarted if parties could ask rebuttal experts questions to elicit new opinions that have nothing to do with the opinions expressed in their reports, especially when the deadline for disclosing expert opinions has long since passed.[10] Such an interpretation of Rule 26 would necessitate still further rebuttal reports and depositions, and render any court-imposed expert discovery schedule largely meaningless.

Horace Mann finally argues that "opinions disclosed in depositions need not be disclosed a second time," stressing that Rule 26(e) only mandates supplementation of material "not otherwise . . . made known . . . during the discovery process." (Doc. 203, at 4) (quoting Fed. R.

---

[9] A determination whether there may be other reasons for precluding such testimony is beyond the scope of the instant motions to strike. (*See* Doc. 206, at 5 n.2) (noting that "Aon plans on filing a motion to bar Horace Mann's expert Cowan from testifying, which [*47] if granted would obviate the need for Marchel to testify for any party because Marchel is strictly a rebuttal expert.").

[10] Horace Mann also suggests that the deposition testimony constitutes admissions by a party-opponent under Federal Rule of Evidence 801(d)(2). (Doc 181-12, at 2-3; Doc. 203, at 2) (stating that Horace Mann "could have used admissions of Aon's expert without making any disclosure" and only did so "to avoid wasteful motion practice."). This issue must be addressed by the district judge in connection with trial, but the Court does register its skepticism that a party can elicit testimony from an opposing party's rebuttal expert on subjects beyond the scope of the opinions disclosed in the rebuttal report and deem all answers to be admissions.

Civ. P. 26(e)(1)). Of course, this general principle does not speak to whether new and beyond-the-scope opinions elicited by opposing counsel during the deposition of another party's rebuttal expert qualify as Rule 26(e) supplements. Horace [*48] Mann's reliance on *Daniels v. FRB of Chi.*, No. 98 C 1186, 2005 U.S. Dist. LEXIS 47770, 2005 WL 6202341 (N.D. Ill. Apr. 15, 2005), which merely restates when the duty to supplement arises, is misplaced. Notably, the plaintiffs in *Daniels* sought to introduce a second report from their *own* expert and did so "to correct errors in the programming coding [he] used in making his first report." 2005 U.S. Dist. LEXIS 47770, [WL] at *1. Here, Horace Mann is seeking to introduce deposition testimony from *other parties' experts* to supplement either those experts' rebuttal reports or the entirely separate report from Cowan. None of this is proper. The other case Horace Mann cites, *Cooper v. City of Chi. Heights*, No. 09 C 3452, 2011 U.S. Dist. LEXIS 124191, 2011 WL 5104478 (N.D. Ill. Oct. 27, 2011), does not even address expert testimony. 2011 U.S. Dist. LEXIS 124191, [WL] at *1 (holding that the defendant was not required to supplement its Rule 26(a) disclosures to identify a lay witness who had already been mentioned in "a number of depositions" and several documents).

For all these reasons, the Newman and Marchel Supplements are not proper "supplements" under Rule 26(e), and this Court recommends that they be stricken.

## B. Scope of Newman and Marchel Testimony and Reports

This does not end the Court's inquiry because Horace Mann insists that even if it cannot supplement the reports from Newman and Marchel, it should still be allowed to rely on all of the deposition testimony cited in those supplements since it falls [*49] within the scope of both Cowan's initial report and the rebuttal experts' own reports. (Doc. 203, at 4-7; Doc. 204, at 2-5). If the testimony is in fact within the scope of those reports, then Horace Mann should indeed be allowed to use it in this case. As shown below, however, not only does much of the testimony fall beyond the scope of the reports, but Horace Mann has also mischaracterized some of Newman's and Marchel's statements.

## 1. Newman's Testimony

Newman's rebuttal report is limited to challenging Cowan's opinions regarding whether Lexington acted vexatiously and unreasonably in denying coverage to Horace Mann under the E&O policy. (Doc. 181-6, at 4, Newman Report ¶ 8). In response to Cowan's opinion that it would be improper for Lexington to continue litigating the case if the court ruled that the September 14, 2010 letter was not a "Claim," Newman stated in his report: "If this Court finds that the September 14, 2010 letter is not a 'Claim,' an issue will arise as to what, then, is the 'Claim' against Horace Mann that purportedly gives rise to coverage for Horace Mann's $7 million settlement under Lexington's policy." (*Id.* at 22, Newman Report ¶ 80) (emphasis in original). No opinion [*50] was thereafter expressed as to whether there was any other claim that would give rise to coverage, such as the March 3, 2011 email from Burley's counsel demanding that Horace Mann pay $17 million.

Though Newman testified that he had not relied on that email in forming the opinions described in his report, Horace Mann's counsel nonetheless proceeded to ask him questions about it at his deposition over objections from Lexington's counsel that this was beyond the scope of Newman's rebuttal report. (Doc. 181-7, at 28-29, Newman Dep., at 100-02) (explaining that Newman is a rebuttal expert and that Horace Mann's expert "doesn't have an opinion on this letter. So we are going into a rebuttal expert's opinion on matters that aren't being addressed by your [expert's] opinion."). Horace Mann now contends that in answering those questions, Newman "made admissions fatal to Lexington" directly concerning that March 3, 2011 email. Specifically, Newman purportedly conceded that the email was a "Claim," thereby "remov[ing] the only good-faith basis Newman thought Lexington could use to refuse to pay." (Doc. 204, at 3).

Assuming Horace Mann has properly characterized Newman's testimony, the alleged opinion is [*51] still beyond the scope of his rebuttal report. A rebuttal expert report "should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party' in its expert disclosures." *Butler v. Sears Roebuck & Co.*, No. 06 C 7023, 2010 U.S. Dist. LEXIS 67377, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010). It is "no place for presenting new arguments." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 U.S. Dist. LEXIS 10692, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005). The Court has already discussed why it was improper for Horace Mann to wait until a break in Cowan's deposition to show him the March 3, 2011 email (which Horace Mann first showed to him the day before) and then have him give opinions that were never disclosed in his report. As a result, the Court found that Cowan's deposition testimony regarding the email was neither within the scope of his report nor a proper supplement to it. (*See supra*, at 17-21). Since Newman did not rebut any opinions of Cowan on this topic, any testimony elicited by Horace Mann's counsel about that email likewise cannot fairly be viewed as falling within the scope of his rebuttal report. All such testimony should be stricken.

Aside from the March 3, 2011 email, Horace Mann identifies three other "concessions" that Newman purportedly made during his deposition that Horace Mann says are "highly material to Newman's report, the case, and this motion." (Doc. 204, at 4).

**Notice By Counterclaim** [*52] : Horace Mann's counsel asked Newman whether "notice of a claim [can] be given [to Lexington] by a pleading in a DJ [declaratory judgment] case such as a counterclaim?" (Doc. 181-7, at 39, Newman Dep., at 141-42). Newman responded, "Just in the abstract, I would think the answer is yes." (*Id.*, Newman Dep., at 142). Based on this testimony, Horace Mann sets forth the following "opinion" in the Newman Supplement: "Written notice of a claim may be given by a counterclaim served in a declaratory judgment case." (Doc. 181-12, at 11).

It is clear that Horace Mann wants to use this opinion testimony to support its position that the counterclaim filed in this case suffices as notice of a claim under the Lexington E&O policy. Yet Newman's report did not offer any rebuttal opinions on this issue, and it is beyond the scope of Cowan's and Newman's expert reports. Horace Mann cannot ask questions at a deposition in an effort to elicit new opinions that it failed to disclose. Moreover, the mere fact that Newman testified that he thinks a counterclaim would suffice as notice "in the abstract" in no way confirms the existence of a "standard practice in the industry" to that effect as Horace Mann argues. [*53]

(Doc. 204, at 4). (*See also* Doc. 181-12, at 7, 11) (identifying the statement as a "practice[], standard[], and understanding[] . . . generally known to and/or accepted by insurers in the pertinent industry.").

**Written Notice Requirement**: Newman's second alleged "concession" also cannot be viewed as an "opinion." Horace Mann's counsel asked Newman about the import of the phrase, "Except to such extent as may otherwise be provided herein," found on the first page of the policy:

Q. If there is a provision in the policy that does not require written notice, does this provision ["Except to such extent as may otherwise be provided herein"] by itself modify that to require written notice?

* * * *

A. If there is something else in the policy that does not require written notice, then this provision would not override that subsequent specific provision.

(*Id.* at 34, Newman Dep., at 122-23). Based on this testimony, Horace Mann attributes the following "opinion" to Newman in Horace Mann's Supplement to his report: "The Lexington Policy [provision] (beginning 'EXCEPT TO SUCH EXTENT . . .') *does not impose* a written notice requirement." (Doc. 181-12, at 11) (emphasis added). This is not a fair representation [*54] of Newman's testimony, and it exceeds the scope of the Cowan and Newman reports. Moreover, there is no merit to Horace Mann's assertion that Newman somehow confirmed that it is "standard practice in the industry for an insurer to understand that" no written notice is required by the cited policy language. (Doc. 204, at 4).

**Waiver**: Finally, Horace Mann's counsel asked Newman whether he would agree with the following statement: "If notice provided to an insurer is considered by the insurer to be defective, good faith requires the insurer to notify the insured of the insurer's objections within a reasonable time, and if the insurer fails to do so, it has waived any right to assert that the notice is defective?" (Doc. 181-7, at 23, Newman Dep., at 79). Newman responded, "Sounds right." (*Id.*, Newman Dep., at 80). Horace Mann then repeated this exact statement (the Horace Mann question) in the Newman Supplement. (Doc. 181-12, at 9). Horace Mann presumably seeks to use this opinion to support its theory that Lexington waived the right to argue there was defective notice of the claim, but Newman did not actually provide any testimony in that regard. As with the other alleged "concessions," [*55] moreover, the question of waiver appears nowhere in either the Cowan report or Newman's rebuttal report.

As the foregoing discussion reveals, Horace Mann's supplement for Newman does not accurately summarize all of Newman's testimony. This is also true of testimony that arguably falls within the scope of Newman's report. For example, the Newman Supplement states that he testified that "[l]egal research should be continually updated to stay current." (Doc. 181-1, at 7). In fact, the following exchange took place during the deposition:

Q. And is it true that the law as in New York changes from time to time so that research ten years ago would need to be updated to make a decision today on such an issue?

A. All research should start with the present.

(Doc. 181-7, at 17, Newman Dep., at 54). Stating that research should begin with the present is not the same as stating that research should be "continually updated." Horace Mann also says Newman testified that "[i]nsurers under ICPL [insurance company professional liability] policies

typically do not decline coverage because of late notice of mediation or trial where the mediation in the underlying case did not name the insurer as a party." (Doc. 181-12, at 8 [*56] ). But the cited page shows only the following exchange:

Q. Have you had an experience, including hearing about it or reading about it, of an insurance company under an ICPL policy declining coverage because of a late notice of a mediation or trial where the mediation or trial was in the underlying case and did not name the insurance company as a party?

A. The answer is no.

(Doc. 181-7, at 18, Newman Dep., at 58). Newman's testimony regarding his own experience in no way constitutes an affirmative "opinion" on what insurers "typically" do.

Horace Mann objects that any challenges to the accuracy of the Newman "opinions" should wait for trial or *Daubert* motions, at which time it "will have many counterarguments." (Doc. 204, at 4; Doc. 203, at 8). As Lexington notes, however, the misleading statements already "are cluttering the record" and are likely to "reappear in immediately-following motions." (Doc. 205, at 6, 8). Under such circumstances, it makes no sense to force the Court to address these same disputes in subsequent pleadings.

Moreover, the purported "counterarguments" posited by Horace Mann are themselves flawed. Horace Mann claims that "Newman's testimony on industry practice is [*57] relevant to show Lexington deviated from such practice," and that "Newman's testimony shows what Lexington would have learned had it done legal research." (Doc. 204, at 5). Though it is not the Court's responsibility to "rummage through multi-page citations to deposition testimony" to determine which statements in the Newman Supplement are in fact accurate, (Doc. 184, at 11), the Court has already exposed some misstatements relating to Newman's alleged "opinions" on industry standards. In addition, Newman's generic testimony about legal research in no way speaks to what *Lexington* would have learned in this case.

In the interest of judicial economy, this Court believes that the appropriate course of action is to not only strike the entire Newman Supplement, but also to strike any deposition testimony that goes beyond the scope of Newman's rebuttal report. This includes testimony discussed above regarding notice by counterclaim, any requirement for written notice, and waiver of the right to assert defective notice. Once again, the Court sees nothing "justified" or "harmless" about Horace Mann's deliberate and untimely insertion of these topics into Newman's deposition, and recommends [*58] that Horace Mann not be allowed to use any of the stricken evidence "on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1); *Davis*, 2014 U.S. Dist. LEXIS 43158, 2014 WL 1316945, at *4; *Rowe Int'l Corp.*, 586 F. Supp. 2d at 933 n.1. As for other deposition testimony not discussed by the parties in this motion, Horace Mann should be permitted to rely on opinions that fall within the scope of Newman's rebuttal report, but be admonished to use only the testimony itself and not Horace Mann's interpretation of the testimony or an inaccurate summary of what it believes the witness said.

## 2. Marchel's Testimony

Marchel's rebuttal report addresses whether Aon was professionally negligent in providing advice to Horace Mann about notifying Lexington of the Burley litigation. Cowan's initial report

covered 11 different topics, and Marchel responded to some but not all of them. Horace Mann claims that at Marchel's deposition, it "became clear that Marchel supported Cowan not only in result but in reasoning on most important issues." (Doc. 203, at 5). Aon objects that Horace Mann has misrepresented Marchel's testimony and attributed "opinions" to him that he never gave. Both sides believe that their supporting examples are too numerous to recount in their briefs. (Doc. 188, at 9) ("Horace Mann's [*59] misrepresentations are too numerous to list in a 15-page Motion."); (Doc. 203, at 5) ("There are too many examples to discuss within page limits."). This decision thus focuses on the seven alleged opinions the parties specifically discuss.

### a. Breach of Contract Claim

Aon accuses Horace Mann of attempting to secure testimony from Marchel to support a breach of contract claim, despite the fact that the district judge expressly denied Horace Mann leave to add such a claim to the Third-Party Complaint. (Doc. 188, at 12; Doc. 154). The Marchel Supplement includes the following alleged "opinion": "Aon assumed the obligations described in the unsigned agreements drafted by Aon and proposed to Horace Mann." (Doc. 181-12, at 17). During Marchel's deposition, Horace Mann asked whether he had any opinion on what duties Aon owed to Horace Mann. Marchel said that he "wasn't asked to give an opinion in that area." (Doc. 181-10, at 72, Marchel Dep., at 276).

Nevertheless, Horace Mann proceeded to show Marchel language from an unsigned agreement that was quoted in Appendix B to Cowan's expert report:

> ARS [Aon] will provide "basic property and casualty claims consulting." Basic property and casualty claims [*60] consulting services consist of: (a) assisting the Client in providing notice to all insurers whose coverages may apply to any circumstances, occurrences, claims, suits, demands and losses subject to provision #6 below; (b) facilitating contact between the Client and the insurer(s); (c) providing an overview of coverage that may be available to the Client under the applicable insurance policy; and (d) advising Client on requirements for payment of a claim.

(Doc. 181-1, at 89-90). Horace Mann asked Marchel if he had an opinion "whether Aon had the obligations described in that paragraph . . . and particularly in the underlying language." (Doc. 181-10, at 73, Marchel Dep., at 278). Marchel said he did have an opinion, namely, that "Aon had assumed those duties and was doing it for the client." (*Id.*).

Aon objects that Marchel's testimony is only relevant to the defunct breach of contract claim and should be stricken. Horace Mann disagrees, citing an entry from the treatise Commercial Liability Risk Management and Insurance Volume II, Second Edition 1986, stating that:

> Formal written contracts between insurance agents and their clients are the exception rather than the rule, but nearly all [*61] agents have implied duties to clients that are contractual in nature — e.g., when agents agree to obtain coverage requested by clients. Quite often, the very conduct that supports a breach of contract action will also support a cause of action for the tort of negligence. In this respect, it is difficult to distinguish the negligence exposures of insurance agents from their breach of contract exposures.

(Doc. 203, at 6; Doc. 181-10, at 104). While Horace Mann does not say so explicitly, based on this quotation it appears that Horace Mann's purpose in seeking the alleged opinion from Marchel is to demonstrate that Aon was negligent because it breached a contractual duty to comply with the obligations set forth in the unsigned agreement. In other words, Horace Mann is seeking to introduce evidence of Aon's contractual obligations to prove alleged negligence. Even assuming the district judge were to allow this, the opinion that was elicited is beyond the scope of Marchel's rebuttal report. As discussed earlier, it is too late for Horace Mann to disclose new opinions. All such testimony should be stricken.

### b. Seven Business Days to Provide Notice

The second challenged "opinion" in the Marchel [*62] Supplement is: "Brokers take no more than seven business days to provide notices after being asked to do so." (Doc. 181-12, at 16). This is based on the following deposition testimony:

Q. How many times in your career are you aware of a broker having taken more than seven business days to submit a claim after being requested to do so by a policyholder?
A. I am not aware of any.

(Doc. 181-10, at 28, Marchel Dep., at 99). The fact that Marchel is unaware of brokers taking more than seven days to submit a claim is not the same as him offering an affirmative opinion that no brokers ever do so, or that Aon acted unreasonably in that regard. Indeed, later in the deposition Marchel testified that he has "no opinion" as to "whether it was reasonable [for Aon] to wait 25 days after December 17 to give notice." (Id. at 77, Marchel Dep., at 296). Since the statement in the Marchel Supplement is beyond the scope of Marchel's report (so too late to be disclosed as a new opinion) and is not an accurate reflection of what Marchel stated, the testimony should be stricken.

### c. "Immediate" Reporting

The third "opinion" in the Marchel Supplement is: "National brokerages: . . . require that notices be reported immediately [*63] without the broker passing judgment as to what should or should not be noticed." (Doc. 181-12, at 15-16). Marchel did not opine on this issue in his rebuttal report, and testified at his deposition that such a standard would be improper:

Q. Do you know whether any national broker has a written standard requiring that notice be given "immediately" after a client requests notice be given?
A. No.
Q. Would it be a good idea to have such a standard?
A. No.
Q. Why not?
A. Because claims in and of themselves — each claim that comes in has to stand on its own legs on what's going on. They need to be evaluated. In the evaluation you look at and say is it a notice of claim; has it triggered a claim under the policy. If not, then what do we do next? Do we do it as a notice of circumstance? Is that available, yes or no? So it's an analysis that has to go through.

(Doc. 181-10, at 28, Marchel Dep., at 97-98).

Horace Mann contends that Marchel subsequently "recanted" this testimony, but that is not accurate. Horace Mann asked Marchel about a confidential document from his former employer, Marsh, stating it was Marsh's policy that "any notice of claim, loss or lawsuit . . . must be reported immediately to [*64] the insurer(s)." (Doc. 203, at 6). This led to the following exchange:

> Q. Do you recall whether this was in effect while you were at Marsh?
>
> A. Again, I would assume so.
>
> Q. Is it a sound industry practice, this standard?
>
> A. Well, let me read the whole standard.
>
> * * * * *
>
> Q. Okay. With the exception . . . that [one element of the standard] is in effect an exception to the requirement to do things immediately. With [that] qualification[], would you agree that this is a sound industry standard?
>
> A. I would, with the acknowledgment that we are missing page 3, so I don't know what's there.

(Doc. 181-10, at 58, Marchel Dep., at 214-15, 217-18). At best, Marchel partially agreed with the Marsh policy that some claims and losses should be reported right away, while noting that there may be some situations where "you may not be able to immediately report it until you talk with the client." (*Id.* at 57, Marchel Dep., at 216). Notably, the Marsh policy says nothing about reporting *potential* claims, the issue in this case. Once again, the Court does not believe that Marchel offered the "opinion" set forth in the Supplement. If he had, it would nonetheless be beyond the scope of his report, and it is too late for [*65] Horace Mann to disclose new expert opinions. The testimony should thus be stricken.

### d. Rejection of Notice of Potential Claim

The fourth challenged "opinion" in the Marchel Supplement states: "A notice of potential claim is typically rejected only (i) when provided as part of a 'laundry list' on an expiring policy that is not renewed or (ii) due to the prior acts exclusion." (Doc. 181-12, at 13) (citing Doc. 181-10, at 22-24, 40-41, Marchel Dep., at 75-81, 148-51). Horace Mann claims this opinion "supports Cowan's similar opinion . . . that notices of potential claims are not rejected except when provided, without sufficient detail, as part of a 'laundry list,' when a policy is not renewed." (Doc. 203, at 7) (citing Doc. 181-1, at 28). According to Horace Mann, since the two cited exceptions "are not present here, Marchel's concessions support Cowan's basic conclusion that notice of a potential claim given in August or September would have been accepted by Lexington." (*Id.* at 7-8).

As a preliminary matter, neither Cowan's nor Marchel's report says anything about a "prior acts" exclusion (and Cowan did not testify about it at his deposition), so the testimony that Horace Mann elicited from Marchel [*66] on this issue clearly exceeds the scope of those reports. Cowan did discuss the "laundry list" phenomenon in his report, (Doc. 181-1, at 28), but Marchel's rebuttal did not respond to this issue. In any event, Marchel did not opine that a notice of potential claim is "typically" rejected "only" in the referenced situation. Marchel testified first that he himself had knowledge of two notices of circumstance being rejected in connection with bank failures where the notices consisted of a laundry list of cursory potential claims. (Doc. 181-10, at 22-23, Marchel Dep., at 76-77) ("Q. Can you describe in general the two times that a

notice of circumstance was rejected in your experience? A. They were in banking, bank failures. . . . Q. And did they all involve what you call laundry list notice of circumstances? A. That's how the insurance company termed it, yes.").

Marchel also agreed that insurance companies are "skeptical when they get a laundry list of a company that is not going to get [its policy] renewed" (presumably reflecting the insured's effort to identify every possible circumstance that might fall within the expiring policy period), and that such a situation "can happen" but is [*67] not common. (*Id.* at 23, Marchel Dep., at 79-80). None of this testimony suffices as an opinion by Marchel that "notice of potential claims are not rejected except when provided, without sufficient detail, as part of a 'laundry list,' when a policy is not renewed." (Doc. 203, at 7). Nor does it support Cowan's assertion in that regard. Since Horace Mann has mischaracterized the cited testimony and it is beyond the scope of Marchel's rebuttal report, this Court recommends that the testimony be stricken.

### e. Settling the Case for Less

In his rebuttal report, Marchel observed that "[o]n December 15, 2010, the mediation occurred. Horace Mann brought authority to settle the case for $200,000 and [Burley's counsel] made his first monetary demand of $8 million. The mediation was not successful." (Doc. 181-9, at 10). At Marchel's deposition, Horace Mann's counsel asked whether these facts were "important to your opinion" or were "just mention[ed] . . . in passing." Marchel responded that the facts were "huge to the opinion." This exchange followed:

Q. Tell me why it's important.

A. It goes to show the state of mind of Horace Mann. They go to a mediation where the damages are multiples of what they put on the table. . . [*68] . They don't notify the carrier that a mediation is taking place, and in my opinion had Lexington been present, there is no way they would allow the mediation to go forward the way it went. They settled these things. To go up to a mediation with only $200,000 when you have $500,000 to $600,000 in medicals is ludicrous. It's not going to settle, especially when you don't have anything for pain and suffering.

Q. Do you have an opinion on what likely would have happened had Lexington been involved at that point?

A. I do.

Q. What?

A. Lexington probably would have been there in the room and talked to them on what the valuation is and looked at the medicals and said this isn't going to settle for 200. Get real.

* * * * *

If Lexington would have been involved earlier and in the mediation, there is a greater chance that it would have settled, and that's based on my experience of working with AIG who is the claims handler for Lexington on this matter.

(Doc. 181-10, at 61-62, Marchel Dep., at 230-33). Marchel also confirmed his belief that "based on my direct experience working with Lexington that if they were involved in the mediation, the outcome would have been different." (*Id.* at 62, Marchel Dep., at 233-34). [*69]

Relying on this testimony, Horace Mann sets forth the following "opinion" in the Marchel Supplement: "[h]ad Aon provided earlier notice to Lexington, Horace Mann would have settled for less since Lexington would have assisted." (Doc. 181-12, at 18). This opinion purportedly supports Cowan's conclusion that "notice of a potential claim given in August or September [2010] would have been accepted by Lexington." (Doc. 203, at 8) (citing Doc. 181-1, at 34)) ("If Aon had complied with Horace Mann's request [to give notice] in August 2010, Lexington would not have denied coverage, and Horace Mann would have avoided this current litigation.").

Since the testimony that Horace Mann elicited was certainly within the scope of Marchel's rebuttal report, the Court sees no basis for granting a request to strike the testimony and disallow its use at trial. Of course, it will be up to a jury to decide how to interpret and weigh Marchel's testimony if the jury hears it.

### f. Knowledge of a Potential Claim

The next disputed "opinion" in the Marchel Supplement flows from Marchel's deposition testimony regarding when Horace Mann knew enough facts to provide a valid notice of potential claim to Lexington. Horace [*70] Mann's counsel asked Marchel whether Aon had enough information in August and September 2010 to send a notice of circumstance to Lexington pursuant to Condition 9 of the policy. (Doc. 181-10, at 43-44, Marchel Dep., at 160-61, 164). Condition 9 sets forth four categories of information that are required to submit a notice of potential claim to Lexington: (a) name of potential claimant and description of the Wrongful Act; (b) nature and calculation of alleged damages; (c) circumstances by which the insured became aware of the Wrongful Act; and (d) the reasons why the insured believes a Claim can be reasonably expected. (Doc. 181-7, at 71). Based on this provision, Marchel responded that he would have needed more information to send a notice of potential claim to Lexington in August or September 2010:

> So if you look at 9(a), name of potential claimant, description of specific wrongful act, yes. Nature and calculation of the alleged potential damages incurred, at this time if you look at the damages in the ECL [extra-contractual liability] claim, the damages that are listed are way below the threshold, and so the reserves are low, and so somebody looking at this thinking that you have [*71] a $500,000 retention might not necessarily get all excited if you see 75,000 because there is a big difference there.
> You look at the next one, which is nature of the calculation of potential damages, again, we don't have what the potential damages are. So that would be an issue if I wanted to know what the potential damages are. The next one is the circumstance by which the insured first became aware of the wrongful act, and then the last one is the reasons why the insured believes a claim can be reasonably expected as a result of such a wrongful act.
> So D and B would be the two that I would be wondering about at this time, if I had received this and was looking at this. So when you ask me if there's enough information on here to do a notice of claim, I would go back and have these questions given what the policy requires.

(Doc. 181-10, at 44-45, Marchel Dep., at 164-66).

From this testimony, Horace Mann attributes the following opinion to Marchel in the Marchel Supplement: "[b]efore September 14, 2010, Horace Mann knew enough facts to provide a valid

notice of potential claim to Lexington." (Doc. 181-12, at 17). Horace Mann claims that this statement

> is the last step in a syllogism where two [*72] Marchel concessions provide the two premises: (1) Marchel testified that facts Horace Mann provided Aon before September 14, 2010 would suffice for Aon to report a potential claim if Aon also knew (i) alleged or potential damages, and (ii) reasons why one would expect a later "Claim" [and] (2) Marchel's Report concedes that information on both issues (i) and (ii) was available before September 14, 2010.

(Doc. 203, at 9).

With respect to the first premise in the syllogism, it is unclear whether Marchel ultimately will agree with Horace Mann that his testimony is that Aon had sufficient information to provide notice of a potential claim to Lexington in September 2010 as long as Aon also had information about damages and the reasons for reasonably expecting the claim. Even if he does agree, Horace Mann has misstated Marchel's testimony for purposes of the second premise of the syllogism as explained below.

In his rebuttal report, Marchel stated, "It is my opinion that Horace Mann should have reported this matter prior to the mediation date [December 15, 2010]. Horace Mann should have reported this matter after receipt of the September 14, 2010, letter [suggesting that Drake's counsel get [*73] Horace Mann to acknowledge its extra-contractual liability and open up the policy limits]. Horace Mann at the very least knew the following facts as of September 14, 2010." (Doc. 181-9, at 26, Marchel Report, at 24-25). The report then lists a series of events occurring between May 20, 2008 and September 14, 2010. (*Id.* at 26-27, Marchel Report, at 25-26).

At the deposition, Horace Mann's counsel asked Marchel: "With those facts Horace Mann would have had enough information to provide a notice?" Aon's counsel objected that the question was vague, and Marchel answered "Yes." (Doc. 181-10, at 68, Marchel Dep., at 260). In response to an additional question whether the facts would have sufficed for a notice of circumstance, Marchel said "It might be." (*Id.*). Shortly thereafter, Marchel stated, "Horace Mann upon receipt of the September 14 letter, at September 14, had enough information to notify a claim per Endorsement 12 . . ." (*Id.* at 69, Marchel Dep., at 263).

It is not clear to the Court how this testimony demonstrates that Aon knew the amount of potential damages as of September 14, 2010. Regardless, the number of inferences that must be made, combined with the fact that testimony must be cobbled together [*74] to put this convoluted theory together, undermines any claim that Marchel has offered an "opinion" on this issue. Horace Mann should not be permitted to argue that the testimony is in fact an opinion "on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1); *Davis*, 2014 U.S. Dist. LEXIS 43158, 2014 WL 1316945, at *4; *Rowe Int'l Corp.*, 586 F. Supp. 2d at 933 n.1. Nevertheless, since Marchel's testimony does appear to fall within the scope of his rebuttal report, Horace Mann should be allowed to rely on that testimony, with the caveat that it only use the testimony itself and not Horace Mann's interpretation of the testimony or an inaccurate summary of what it believes the witness said.

**g. Horace Mann's Provision of Requested Materials**

The last "opinion" the parties discuss from the Marchel Supplement is that "Horace Mann always provided to Aon any material that Aon or Lexington requested." (Doc. 181-12, at 18). This is based on the following deposition testimony:

Q. Do you know whether there was testimony that Horace Mann always provided to Aon any material that Aon requested or that Lexington requested through Aon?

A. Yes.

Q. You know there was such testimony?

A. Yes.

* * * * *

Q. Is it your understanding that [Dan] Sweeney [from Aon] testified that Horace Mann ever failed to give him a [*75] document that he had asked for?

A. No. If he asked for a document and they had it, they'd provide it.

(Doc. 181-10, at 65, Marchel Dep., at 247).

In this Court's view, Marchel's acknowledgment that he was aware of Sweeney's testimony that he personally had received documents from Horace Mann as requested in no way constitutes an affirmative opinion that Horace Mann always provided all requested material in a timely fashion. To the contrary, Marchel addressed in the next sentence following the above exchange Sweeney's additional testimony that Horace Mann rarely provided "claim trigger documents." (*Id.*, Marchel Dep., at 247-48). Marchel further testified that Horace Mann was "negligent" in failing to get materials to Aon "in time." (*Id.* at 68, Marchel Dep., at 258). In light of Horace Mann's misrepresentation regarding the nature of Marchel's testimony, Horace Mann should not be permitted to characterize that testimony as an opinion, be it "on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1); *Davis*, 2014 U.S. Dist. LEXIS 43158, 2014 WL 1316945, at *4; *Rowe Int'l Corp.*, 586 F. Supp. 2d at 933 n.1. Given that the testimony appears to fall within the scope of Marchel's rebuttal report, however, Horace Mann should be allowed to use the testimony itself and not Horace Mann's interpretation of [*76] the testimony or an inaccurate summary of what it believes the witness said.

The Court recognizes that there are other statements in the Marchel Supplement that the parties do not discuss in their briefs. In the interest of judicial economy, this Court believes that the appropriate course of action is to not only strike the entire Marchel Supplement, but also to strike any deposition testimony that goes beyond the scope of Marchel's rebuttal report. This includes testimony discussed above regarding Aon's alleged breach of contract, seven business days to provide notice, immediate reporting of a mistake, rejection of notice of potential claim, and settling the claim for less. Once again, the Court sees nothing "justified" or "harmless" about Horace Mann's deliberate and untimely insertion of these topics into Marchel's deposition, and recommends that Horace Mann not be allowed to use any of the stricken evidence "on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1); *Davis*, 2014 U.S. Dist. LEXIS 43158, 2014 WL 1316945, at *4; *Rowe Int'l Corp.*, 586 F. Supp. 2d at 933 n.1. As for other deposition testimony not discussed by the parties in this motion, Horace Mann should be permitted to rely on opinions that fall within the scope of Marchel's rebuttal report, but be admonished to use [*77] only the

testimony itself and not Horace Mann's interpretation of the testimony or an inaccurate summary of what it believes the witness said.

## III. Sanctions

The Court finally considers whether the district judge should award any additional sanctions besides striking Horace Mann's entire Supplement as well as all testimony Horace Mann elicited during the expert depositions that goes beyond the scope of the Cowan report and the Newman and Marchel rebuttal reports, and precluding the use of such evidence in this case. A court has "broad discretion" in imposing sanctions for violations of Rule 26(e), including ordering payment of the reasonable expenses, including attorneys' fees, caused by the violation. *Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am.*, 950 F.2d 389, 397 (7th Cir. 1991); FED. R. CIV. P. 37(c)(1)(A). Because Horace Mann was disingenuous in its stated rationale for needing the Supplement, and repeatedly either overstated the significance and meaning of testimony or affirmatively misrepresented that testimony, this Court recommends that Horace Mann be required to pay Lexington's and Aon's attorneys' fees and costs incurred in connection with their motions to strike. The Court does not recommend barring Cowan's testimony and opinions in their entirety, as suggested by Lexington [*78] and Aon. (Doc. 184, at 16; Doc. 188, at 3).

## <u>CONCLUSION</u>

For the reasons stated above, Lexington's and Aon's Motions to Strike (Docs. 184, 188) should be granted in part and denied in part. This Court recommends that the district judge strike Horace Mann's Supplement in its entirety, preclude Horace Mann from using in this case any deposition testimony that goes beyond the scope of the expert and rebuttal reports, and order Horace Mann to pay Lexington's and Aon's attorneys' fees and costs associated with these motions.

Pursuant to Fed. R. Civ. P. 72(b), specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this order is served. Failure to file objections with the Honorable Charles R. Norgle, Sr. within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation.

ENTER:

/s/ Sheila Finnegan

Sheila Finnegan

United States Magistrate Judge

Dated: August 27, 2015