UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**THE ESTATE OF LALIAH SWAYZER**, et al.
                    Plaintiffs,                                      **Case No: 16-CV-1703**
          v.
**DAVID A. CLARKE JR.**, et al.
                    Defendants.

---

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiffs, by their attorneys, JUDGE, LANG & KATERS, S.C., submit the following sur-reply in opposition to County Defendants' Motion for Summary judgment.

### INTRODUCTION

The County Defendants accuse the Plaintiffs of distorting testimony, creating sham disputes of fact, and making brazen misrepresentations to the court. (D. 489:1-5). Such unnecessary rhetoric is unfounded and likely employed by the County to distract from the material disputes of fact that preclude the County's legally deficient motion for summary judgment. The County Defendants concede that disputes of fact exist concerning the events of July 14ᵗʰ, 2016, surrounding the birth and death of Laliah Swayzer and therefore there is no basis for the dismissal of Witkowiak.

Further, the County Defendants relentlessly insist that housing Swayzer in Unit 4A was acceptable, but ignore the fact that doctors expressly ordered Swayzer to be housed in the Special Needs Unit ("SNU"), because of her co-morbid mental health and medical issues. (D. 422, ¶5). In their submissions, the County Defendants ignore the same medical orders that they ignored at the time of Swayzer's classification and unconstitutional removal from the SNU. It is abundantly clear, the treatment plan in place for Swayzer was not followed in a 4A, because by Armor's own admissions Swayzer was not seen daily by medical – in violation of the individualized treatment plan put in place by Drs. Horton and White. (D. 422, ¶¶5, 9, 62-63, 93). Despite the lengthy briefing, the

Case 2:16-cv-01703-PP-WED   Filed 12/26/19   Page 1 of 11   Document 492

County Defendants still fail to explain why medical orders were ignored and a baby died in filthy cell alone with her mother.

## I. Defendant Kimberly Witkowiak's actions were deliberately indifferent to Plaintiffs' medical needs.

Unless the testimony of Swayzer, the only witness to her own labor and the birth of Laliah, is completely disregarded on summary judgment, Witkowiak's motion for summary judgement is unreasonable. Defendants pretend that the primary plaintiff would not be allowed to tell her story on summary judgment and disregard the same testimony. (D. 489:21). The Defendants have no credible argument as to why Witkowiak should be dismissed and instead turn to disparaging and attacking the credibility of a mother who was allowed to suffer though the unassisted birth and death of her child due to County's abhorrent failures to provide care. The County admits that the Court cannot resolve issues of credibility of witnesses on summary judgement, yet continues to make this frivolous argument. *Id.* Plaintiffs' claims against Witkowiak survive summary judgment.

## II. Swayzer was transferred out of the SNU to Unit 4A in direct violation of medical orders.

The County Defendants continue to misconstrue the constitutional standards of the Eighth Amendment. They attempt to change the definition of what constitutes an objectively serious medical condition so as to downplay the outright failures of individual county defendants who violated direct medical orders by transferring Swayzer and Laliah out of the SNU. County Defendants acknowledge Swayzer was late term pregnant and had mental illnesses, but attempt to classify these conditions as "chronic" as opposed to "immediate medical needs." (D. 489:10). No such distinction exists and the County fails to provide a legal basis in their reply for this unprecedented analysis. It is undisputed that Swayzer's pregnancy was a serious medical condition "diagnosed" by the medical defendants and mandated an individualized treatment; therefore, she was placed in "special needs" to be seen daily by medical. *See* Plaintiffs' PFOF (D. 422, ¶¶ 3, 9).

Plaintiffs' sustain their burden on summary judgment and the fact that Swayzer gave birth a few days later does is clear evidence of her objectively serious medical condition.

Due to Swayzer's serious medical conditions of a late term pregnancy and mental illnesses, the medical director, Dr. Horton ordered that she be placed in the SNU. (D. 422, ¶5). Dr. Horton ordered that Swayzer be housed in the SNU because she could be monitored more closely in that unit with daily follow-up. *Id.* Moving Swayzer out of the SNU to 4A without medical clearance or consideration was a direct violation of Dr. Horton's medical orders. (D. 422, ¶¶7-9, 36, 56). The County Defendants fail to ever address Dr. Horton's order in their Reply Brief. Instead, the County argues that this blatant violation of medical orders did not matter. (D. 489:11).

The observation levels in SNU and 4A are not the same. (D. 422, at ¶¶56-57, 64). SNU patients are rounded every day but only once a week in 4A, rooms in the SNU are constructed so patients can easily been seen by officers observing  and it is easier to access and see patents in the SNU. *Id.* Dr. Horton agreed that Swayzer was not a candidate for 4A because it was safer and easy for nurses to reach her in the SNU. *Id.* at ¶57. Further, Dr. Horton testified that had she known Swayzer was improperly moved to 4A that she would have ordered Swayzer to be moved back to the SNU. *Id.* at ¶¶ 36, 56-57. These orders were ignored.  Swayzer suffered through painful and bloody labor alone.  Her newborn died.

The failure to treat a medical condition, pregnancy, along with significant mental health issues, could (and here did) result in significant injury or unnecessary and wanton infliction of pain. The Defendants seek to downplay the seriousness of their blatant disregard for medical orders by frivolously arguing such violations were meaningless. Simply because a pregnant, bi-polar and schizophrenic inmate can be housed in Unit 4A does not mean that such placement was medically or constitutionally adequate for Swayzer and Laliah, in fact the medical defendants testified it was not and their individualized treatment plan sought to prevent just such a circumstance of Swayzer

being ignored in 4A. (D. 422, ¶¶ 56-57, 62-64). The County defendants concede a litany of errors and mistakes allowed Swayzer to be inappropriately moved to 4A against doctors' orders but want to nevertheless be absolved as a matter of law for these abject failures.  Swayzer had a serious medical condition disregarded by the County Defendants.   A jury must decide culpability for a baby's death and her mother's suffering.

### A. Lt. Andrykowski was deliberately indifferent to Swayzer and Laliah's known medical needs when he transferred Swayzer out of 4A in direct violation of medical orders.

The County's entire argument that Lt. Andrykowski was not deliberately indifferent boils down to their assertion that 4A can accommodate pregnant inmates with mental health needs. (D. 489:13).   That is not the question.   Rather, did Andrykowski violate Swayzer's rights when he deliberately disregarded medical orders in place to protect Swayzer and Laliah.. Andrykowski was aware Swayzer was pregnant and housed in the SNU yet still removed her without question or investigation. (D. 422, ¶¶4, 31). Simply because 4A housed pregnant inmates does not justify a medically untrained correctional officer' decision to overrule explicit medical orders that Swayzer was to be kept in the SNU to be seen by medical daily.  Andrykowski was deliberately indifferent to those orders. Did Andrykowski's move of Swayzer to 4A, violate medical orders and Swayzer's rights to the health care, including during labor and birth, order by medical staff?  A jury must decide.  Disregard of these express medical orders substantially increased the risk to Swayzer and Laliah by altering their accesses to supervision and medical care. (See D. 422, ¶58).

Defendants also argue Andrykowski's improper transfer cannot be deliberately indifferent because he wanted to make room for a different, unidentified, suicidal inmate. *Id.* at p. 14. Defendants failed to offer information as to who this suicidal inmate was, the severity of his/her undisclosed suicidal tendencies, why the two other inmates in the SNU were not transferred over Swayzer, and why Swayzer was selected to be transferred- all done without consulting medical.

Defendants incorrectly rely on *Estate of Adams v. Christian Cnty.*, 2017 U.S. Dist. LEXIS 33456, at *17-18 (C.D. Ill. 2017). The Court in *Adams* was deciding a summary judgment motion brought by the Plaintiff, where it was necessary to view all evidence in a light <u>most favorable to the defendant non-moving party</u>. *Id.* at *18. While the Court declined to find deliberate indifference and grant the Plaintiff summary judgment, the claim was not dismissed. *Id.* at *32. This precedent has zero applicability here to support the County Defendants' motion for summary judgment.

In the present matter, either the County has a *de facto* policy that allows untrained correctional officers the to ignore doctors' orders and make judgment calls between two inmates as to who is more acute, or the Defendants broke policy and blatantly disregarded doctors' orders by transferring Swayzer out of her assigned unit without consulting medical. (D. 422, ¶¶36-37, 98). The Defendants make zero attempt to explain what prevented them from taking the simple step of contacting medical personal to consult on the housing move. Summary judgment must be denied.

B. **In addition to multiple material disputes of fact, making all reasonable inferences in favor of the Plaintiffs, Terina Cunningham, Amika Avery, and Deirdra Adams' actions were deliberately indifferent to Swayzer and Laliah's medical needs.**

Deliberate indifference arises when a state officer "does nothing" or "takes action that is so ineffectual under the circumstance that deliberate indifference can be inferred." *Amonoo v. Washetas*, 16-cv-125-slc, 2017 WL 5991837, at 11 (W.D. Wis. Dec. 1, 2017). Defendants Cunningham, Avery, and Adams were all aware that Swayzer was to be housed in the SNU. (D. 423:6-7, 10, 14-16). Each of these defendants allowed Swayzer to be transferred out of the SNU to 4A in direct violation of medical orders from Dr. Horton. Defendants argue in their reply brief that their violation of medical orders and objective failures only amount to "ordinary mistakes in a workplace." (D. 489:14).

Defendant Cunningham was informed by medical staff on July 7, 2016, that Swayzer should be housed in the SNU only. (D. 422, ¶25). Cunningham was aware that Swayzer had serious medical conditions and was supposed to be housed in the SNU per doctors' orders. (D. 422, ¶¶25-27). There

is a dispute as to whether Cunningham timely placed the special medical orders to house Swayzer in the SNU on Swayzer's classification card on July 7. *Id.* at ¶26. Cunningham stated she did timely record doctors' orders on July 7, but Defendant Avery testified that those special medical orders were not on Swayzer's classification Card on July 8. *Id.* at ¶27. Either Avery or Cunningham is lying, a fact conceded by MCSD Detective Desotell and ex-Sheriff Richard Schmidt. *Id.* at ¶52. Cunningham later admitted to internal affairs investigators she failed to timely document Swayzer's special need orders and received a ten-day suspension as a result. *Id.* at ¶25.

Cunningham failed to perform a primary duty as a classification officer, document or convey doctors' orders regarding Swayzer's care and placement. This was not a technicality or ordinary mistake. Avery then allowed the transfer of Swayzer against doctors' orders and failed to document this transfer from the SNU to 4A where Swayzer gave bloody birth alone and her baby died. (D. 422, ¶¶ 27-23, 35, 38, 59). Avery failed to "do her homework" with medical before allowing the "inappropriate move" from SNU to 4A. *Id.* at ¶105. A defendant cannot "escape liability if the evidence shows that he merely refused to verify underlying facts the he strongly suspected to exist." *Farmer v. Brennan,* 511 U.S. 843, n.8 (1994).

Avery conceded to internal affairs investigators her deadly misconduct, "Not contacting a supervisor to get more insight on why she [Swayzer] was there [SNU] in the first place." *Id.* at ¶47. Sherriff Schmidt explained, "there should have been at least at a minimum a follow-up with medical/mental health staff before the move took place." *Id.* Avery changed Swayzer's status in the computer on the LM11 Form from "medical" to "max-status", a change that she cannot make before consulting medical staff. *Id.* at ¶48. These alleged facts reveal an abject failure to perform Avery's constitutional duties to ensure an inmate with serious medical conditions be provided doctor ordered medical care.

Lastly, Defendant Adams claims that the pod sheet did not include any special orders to keep Swayzer in the SNU. Either: (1) Adams never checked the pod sheet; or (2) Adams ignored the special orders on the pod sheet; or (3) Cunningham is lying again and she did not make the computer-generated changes to the LM11. (D. 422, ¶¶ 35, 53-55, 59). Whether (1), (2) or (3) are more credible is not for the Court to decide at summary judgment. Cunningham, Avery, and Adams all failed to perform their basic duties to ensure medical orders were not violated. While these defendants paint a tapestry of confusion with their conflicting statements, the Court should reserve these disputes of fact for a jury to resolve.

Cunningham failed to document medical orders and Swayzer's housing restriction; Avery admitted she failed to check with medical before improperly transferring Swayzer to 4A in violation of policy, and Adams who was in charge of the unit, allowed this conscious disregard of medical orders to occur in direct violation of policy. The failures to document, convey pertinent medical information, and contact medical before actively transferring a mentally ill bipolar schizophrenic patient out the SNU all impeded the medical treatment doctors had ordered and resulted in Swayzer giving birth alone in a dirty cell leading to a baby's death. These deliberately indifferent actions directly contributed to Swayzer's improper placement in 4A where she was allowed to give birth without any assistance, supervision or medical care. Furthermore, the County Defendants' inconsistent testimony has frustrated the truth and only a jury can make a determination as to the credibility of these conflicting statements.

### III. Qualified Immunity

The Seventh Circuit has already rejected the County Defendants' argument as to qualified immunity. *Estate of Perry v. Wenzel*, 872 F.3d 439 (7th Cir. 2017). The Defendants' reply fails to address the Seventh Circuits' analysis:

> We engage in a two-part inquiry when determining whether qualified immunity bars suit: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017) (quoting *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (internal quotation marks omitted)).

After taking the facts in the light most favorable to Swayzer and Laliah, clear constitutional violations for failure to provide medical can be found against the individual county defendants. In July of 2016, it was clearly established that the Eight Amendment governed the rights of Swayzer and Laliah to receive medical care. Qualified Immunity does not apply.

### IV.    The Estate's claims are proper and must survive summary judgment.

Laliah Swayzer was born alive and died in her mother's arms without any assistance or medical care. (D. 422, ¶74). This is the testimony of Swayzer and has not been refuted by anyone on site because no one assisted Swayzer in giving birth or the hours she spent in labor. The Defendants present expert opinions based on review of an autopsy report as scientific fact, despite the actual unbiased medical examiner <u>not being able to determine</u> a cause of death or whether Laliah was born alive. *Id.* at ¶97.  The Defendants again make a frivolous argument asking the court to weigh the credibility of their paid experts over the testimony of the only present witness. These reports are merely theories without any degree of certainty and a jury must be allowed to cypher though the Defendants' expert opinions which are contradicted by the only witness' testimony.

The Defendants make the blatant and outright false statement that "Other than conceding that she died of a bacterial infection (Pls.' Resp. (Doc. No. 421) at 54), Plaintiffs have offered no theory whatsoever as to the child's medical condition." (D. 489:23). First, this citation is wrong. Assuming Defendants attempted to cite to page 46 of the Plaintiffs' Response, the statement is still demonstrably false. Plaintiffs never conceded that Laliah died of a bacterial infection. The autopsy

report suggests evidence that Laliah had a bacterial infection but there is no actual evidence to suggest that this infection was a cause of her death.

The Defendants procced to argue that Laliah's death was inevitable while failing to recognize the undisputed fact that when Swayzer entered the facility, her pregnancy was progressing as normal with no sign of distress. *See* Dr. Vassallo Declaration (D. 433:1-2). All reasonable inferences point to the fact <u>that if</u> Laliah had a bacterial infection, it was contracted <u>after</u> she entered the County Defendants' custody and while housed in filthy cell without any medical care. Swayzer testified that Laliah was born alive, the County defendants ignored her cries for help and failed to provide any medical care or assistance while birthing Laliah. Failing to provide medical care or supervision during the birthing process exponentially increased the risk of danger to both Swayzer and Laliah. This is a concept so simple any lay person would recognize the grave risk of giving birth unassisted in a filthy cell by a mother suffering from bi-polar disorder and schizophrenia, as opposed to under the watchful care of a trained physician, nurse, nursing assistant and/or nurse practioner.

### V.  Plaintiffs' *Monell* Claims must proceed.

The County Defendants simply changed Swayzer's housing assignment without any consideration of   her medical condition.  (D. 422, ¶35).  The staff was not trained on medical issues and did not consider those issues when determining where to house inmates. *Id.* at ¶99.  This was the result of their lack of training and a culture of indifference regarding the acute needs of late term pregnant inmates in the County's custody. The County claims they had no requisite notice of prior instances where correctional officers made medical housing decision for inmates. (D. 489:26).

The Plaintiffs have identified a previous instance where the County has failed to provide medical care to a late-term pregnant inmate who gave birth in custody without assistance. See, *Terry v. County of Milwaukee,* 357 F.Supp.3d 732 (E.D. Wisc. 2019). One of Terry's *Monell* claims against Milwaukee County regarding a shackling procedure was allowed to go to trial, but *Monell* claims

regarding Rebecca Terry giving birth at the jail without medical attention were dismissed on summary judgment. The court's reasoning for dismissing the *Monell* claims was that Rebecca Terry did not point to another case where a policy lapse resulted in another's constitutional rights being violated. *Id.* at 753. The court determined that the outcome in *Terry* was not a result of an absence of policy or protocol, and instead that the event was a random and undesired event. *Id.* at 754-755. However, post-Terry we have a worse factual situation where it is clear the County's *de facto* policy regarding pregnant inmates is still in place. County Defendants have had notice of their *de facto* polices and customs in failing to provide care for pregnant inmates and improper housing, and have now allowed yet another inmate to give unassisted birth while in their custody.

## VI.    Claims of Diane Ruffin, Charlene Ruffin, and the Plaintiffs' State Law claims must proceed.

The County argues Plaintiffs have not demonstrated a legal right to proceed on behalf of Diane and Charlene Ruffin by stating that Swayzer does not have legal custody of Diane and Charlene. (D. 489:30). The County fails to cite any case law in their reply brief as to why Swayzer's disputed custody has any bearing on these claims. The fact that the minor children were placed with Charles Ruffin as opposed to Swayzer does not foreclosure Swayzer's constitutionally protected parental rights.

The County Defendants argue that they are protected from Plaintiffs' state negligence and wrongful death claims under governmental immunity. Wis. Stat. § 893.80(4). The most generally recognized exception to this rule is that officials are liable for damages stemming from the negligent performance of a "purely ministerial duty." *Lister v. Board of Regents*, 72 Wis. 2d 282, 300-01, 240 N.W.2d 610, 621-22 (1976). Reporting medical issues, relaying special medical orders, adhering to special medical orders, and responding to cries for help are not discretionary actions. These duties were "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such

certainty that nothing remains for judgment or discretion." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71,

¶ 25, 646 N.W.2d. Following medical housing orders did not require any judgment or discretion

from the County Defendants. Therefore, no immunity attaches.

## CONCLUSION

For the reasons stated herein, the Plaintiffs respectfully request this Court deny the County

Defendants' request for Summary Judgment.

Dated at Wauwatosa, Wisconsin this 26th day of December 2019.

Respectfully Submitted,

Judge, Lang & Katers, LLC
By: s/ David J. Lang
David J. Lang (SBN: 1067557)
JUDGE LANG & KATERS, LLC.
8112 W. Bluemound Road, Ste. 101
Wauwatosa, WI 53213
P: (414) 777-0778
F: (414) 777-0776
dlang@jlk-law.com
Attorneys for Plaintiffs